1  MARTIN L. FINEMAN, State Bar No. 104413
   SUZANNE TOLLER, State Bar No. 129903
2  DAVIS WRIGHT TREMAINE LLP
   505 Montgomery St., Suite 800
3  San Francisco, California  94111-6533
   Telephone:  (415) 276-6500
4  Facsimile:  (415) 276-6599

5  T. SCOTT THOMPSON, *pro hac vice*
   JOHN R. EASTBURG, State Bar No. 247380
6  DAVIS WRIGHT TREMAINE LLP
   1919 Pennsylvania Avenue, N.W., Suite 200
7  Washington, D.C. 20006
   Telephone 202-973-4200
8  Facsimile: 202-973-4499

9  ROBERT L. DELSMAN, State Bar No. 142376
   NEXTG NETWORKS, INC.
10 2216 O'Toole Avenue
   San José, California 95131
11
   Attorneys for Plaintiff
12 NextG Networks of California, Inc.

13                IN THE UNITED STATES DISTRICT COURT

14             FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                     SAN FRANCISCO DIVISION

16

17

18 NEXTG NETWORKS OF CALIFORNIA, INC.,)  No.  CV 08 0985 MHP
   a Delaware corporation,            )
                                      )  Action Filed:  February 15, 2008
19              Plaintiff,            )
                                      )  **PLAINTIFF NEXTG'S NOTICE OF MOTION**
20      v.                            )  **AND MOTION FOR JUDGMENT ON THE**
                                      )  **PLEADINGS; MEMORANDUM**
21 THE CITY AND COUNTY OF SAN         )  **SUPPORTING MOTION FOR JUDGMENT**
   FRANCISCO AND THE DEPARTMENT OF    )  **ON THE PLEADINGS**
22 PUBLIC WORKS OF THE CITY OF SAN    )
   FRANCISCO,                         )  **[Fed. R. Civ. P. 12(c)]**
23                                    )
                Defendants.           )
24                                    )  Date: May 12, 2008
                                      )  Time: 2:00 p.m.
25                                    )  Courtroom 15, 18th Floor
                                      )  Before the Honorable Marilyn Hall Patel
26 _____)

27

28

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT .................................................................................. 1

II.   FACTUAL SUMMARY ......................................................................................... 2

    A.    NextG Is a Telecommunications Provider Seeking Access to the
        Public Rights-of-Way .................................................................................. 3

        1.    NextG's Network and Telecommunications Service............................... 3

    B.    Prior Litigation and This Court's Injunction ............................................... 4

    C.    The City's New Ordinance and its Multi-Layered, Burdensome, And
        Discretionary Requirements........................................................................ 6

III.  LEGAL STANDARD for a motion for judgment on the pleadings........................... 10

IV.   ARgument ........................................................................................................... 11

    A.    The City's Requirements, on Their Face, Violate Section 253 of the
        Federal Communications Act ...................................................................... 11

        1.    Section 253(a) Prohibits the City from Imposing Its
            Burdensome, Discretionary New Ordinance on NextG........................... 11

        2.    The City's Requirements Do Not Fall within the Authority
            Reserved by Section 253(c). ..................................................................... 17

        3.    Section 332(c)(7) Is Not A Defense To Section 253(a)
            Preemption ............................................................................................... 18

    B.    The City's Requirements Also Violate California Public Utilities
        Code § 7901 ................................................................................................ 19

V.    CONCLUSION AND REQUEST FOR RELIEF..................................................... 21

i

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No.  CV-08-0985 MHP
WDC 730166v1 0058588-000003

# TABLE OF AUTHORITIES

Page(s)

CASES

*Berkeley,*
    433 F.3d at 1258 ...........................................................................................................11, 17

*City of Auburn v. Qwest Corp.,*
    260 F.3d 1160 (9th Cir. 2001) ................................................................................. passim

*City of Rancho Palos Verdes v. Abrams,*
    544 U.S. 113 (2005)...............................................................................................................19

*Dworkin v. Hustler Magazine Inc.,*
    867 F.2d 1188 (9th Cir. 1989) ..............................................................................................10

*General Conference Corp. v. Seventh Day Adventist Church,*
    887 F.2d 228 (9th Cir. 1989) ................................................................................................10

*GTE Mobilnet v. City of San Francisco,*
    2007 WL 420089 (N.D. Cal. Feb. 6, 2007) .........................................................................13

*Hal Roach Studios v. Richard Feiner and Co.,*
    896 F.2d 1542 (9th Cir. 1990) ..............................................................................................10

*In re Infonet Servs. Corp. Secs. Litig.,*
    310 F. Supp. 2d 1106 (C.D. Cal. 2003) ................................................................................2

*In re Silicon Graphics Inc. Securities Litigation,*
    183 F.3d 970 (9th Cir. 1999) ..................................................................................................2

*MGIC Indem. Corp. v. Weisman,*
    803 F.2d 500 (9th Cir. 1986) ..................................................................................................2

*Newpath Network, LLC v. City of Irvine*
    SACV 06-550-JVS (ANx) (C.D. Cal. Mar. 10, 2008)...........................................................11

*NextG Networks of Cal., Inc. v. City of Huntington Beach*
    SACV 07-1471 ABC (RNBx) (C.D. Cal. Feb. 7, 2008)........................................................12

*NextG Networks of Calif., Inc. v. City of San Francisco,*
    2006 U.S. Dist. LEXIS 36101 ...................................................................................... passim

*NextG Networks of Calif., Inc. v. County of Los Angeles,*
    522 F. Supp.2d 1240 (C.D. Cal. 2007) ("*Los Angeles County*") ...................................... passim

*NextG Networks of California, Inc. v. City and County of San Francisco, et al.,*
    No. C 05-00658 MHP ..............................................................................................................4

ii

1    *Pac. Tel. & Tel. Co. v. City & County of San Francisco*,
      197 Cal. App. 2d 133, 17 Cal. Rptr. 687 (1961) ("*Pac. Tel. II*")...............................20

2

3    *Qwest Corp. v. City of Portland*,
      385 F.3d 1236 (9th Cir. 2004) ............................................................................11

4    *Religious Tech. Center v. Netcom On-line Pubs., Inc.*,
      907 F. Supp. 1361 (N.D. Cal. 1995) ....................................................................10

5

6    *Sprint PCS Assets, LLC v. City of La Cañada Flintridge*,
      448 F.3d 1067 (9th Cir. 2006) ............................................................................20

7    *Sprint Telephony PCS, L.P. v. County of San Diego*,
      490 F.3d 700 (9th Cir. 2007) ("*Sprint San Diego*").................................. passim

8

9    *TC Sys. Inc. v. Town of Colonie*,
      263 F. Supp. 2d 471 (N.D.N.Y. 2003)...................................................................17

10

11   *TCG New York, Inc. v. City of White Plains*,
      305 F.3d 67 (2d Cir. 2002), *cert. denied*, 538 U.S. 923 (2003)...............7, 15, 17, 18

12   *Yerkovich v. MCA, Inc.*,
      11 F. Supp. 2d 1167 (C.D. Cal. 1997) .................................................................10

13

14   **STATUTES**

15   47 U.S.C. § 253 .................................................................................... passim

16   47 U.S.C. § 253(a) ............................................................................... passim

17   47 U.S.C. § 253(c) ..............................................................................5, 11, 17, 18

18   47 U.S.C. § 332 ...........................................................................................20

19   47 U.S.C. § 332(c)(7) .................................................................................18, 19

20   Cal. Pub. Util. Code § 233 ...........................................................................20

21   Cal. Pub. Util. Code § 7901 ........................................................................ passim

22   Cal. Pub. Util. Code § 7901.1 .....................................................................20, 21

23   Code Section 234(a) ....................................................................................20

24   Communications Act of 1934 .........................................................................19

25   Fed. R. of Civ. Proc. Rule 12(b)(6)................................................................10

26   Fed. R. of Civ. Proc. Rule 12(c) ...............................................................2, 10

27

28   Fed. R. Evid. 201(b).......................................................................................2

Telecommunications Act of 1996 ....................................................................................11

**OTHER AUTHORITIES**

Department of Public Works Order No. 177,163 ........................................................1, 6

H.R. Conf. Rep. No. 458, 104th Cong., 2d Sess. 1 (1996) ...........................................11

H.R. Rep. No. 104-204, pt. 1 .........................................................................................19

Ord. No. 214-07 § 11.1(aa)-(bb), 11.9(b)(1) ("New Ordinance") ........................ passim

Order No. 177,163 § III D 4 and 5...................................................................................9

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No.  CV-08-0985 MHP
WDC 730166v1 0058588-000003

## NOTICE OF MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 2:00 p.m. on May 12, 2008, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Marilyn Hall Patel, located at Courtroom 15, 18th Floor, United States Courthouse, San Francisco California, Plaintiff NEXTG NETWORKS OF CALIFORNIA, INC. ("NextG") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(c), for an order granting its motion for judgment on the pleadings and granting NextG's request for permanent injunctive relief, prohibiting the City from requiring NextG to comply with its unlawful, burdensome, discretionary and discriminatory wireless ordinance and associated regulations and requirements and ordering the City to permit NextG immediately to construct its Nodes in the public rights-of-way, under NextG's existing, Court ordered Utility Conditions Permit ("UCP").

This motion is made on the grounds that the City's new wireless ordinance and regulations are, on their face, clearly contrary to state and federal law. Plaintiff's Motion for Judgment on the Pleadings is based on this Notice, on the accompanying Memorandum of Points and Authorities, on all pleadings in this action, judicially noticeable facts, and on such other evidence and argument as may be received by this Court at the hearing on this Motion.

Dated:  April 2, 2008.

**DAVIS WRIGHT TREMAINE LLP**

By: /s/_____
        Martin L. Fineman
Attorneys for Plaintiff
NextG Networks of California, Inc.

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

Plaintiff NextG Networks of California, Inc. ("NextG") hereby respectfully submits the following memorandum in support of its Motion for Judgment on the Pleadings.

### I.    SUMMARY OF ARGUMENT

"Under clearly established Ninth Circuit law, [federal law] effects an extremely broad preemption of state and local regulation of telecommunications services." *NextG Networks of Calif., Inc. v. City of San Francisco*, 2006 U.S. Dist. LEXIS 36101 at * 11-12 (Patel, J.) (N.D. Cal. June 2, 2006) ("*NextG San Francisco*").  The Ninth Circuit, this Court, other district courts, and the California state courts agree that California municipalities are prohibited by state and federal law from imposing complex, discretionary, and burdensome obligations on telecommunications providers as a precondition of deploying facilities for the provision of telecommunications services. *See, e.g., City of Auburn v. Qwest Corp.*, 260 F.3d 1160 (9th Cir. 2001); *Sprint Telephony PCS, L.P. v. County of San Diego*, 490 F.3d 700 (9th Cir. 2007) ("*Sprint San Diego*"); *NextG Networks of Calif., Inc. v. County of Los Angeles*, 522 F. Supp.2d 1240 (C.D. Cal. 2007) ("*Los Angeles County*").  Indeed, this Court previously held the requirements of the City and County of San Francisco ("City") violate and are preempted by Section 253(a) and exceed the statutory safe harbors. *NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101.

In clear violation of Section 253, Ninth Circuit precedent, and this Court's holding, the City has adopted a purportedly different, new "Wireless Ordinance," Ordinance No. 214-07, and associated regulations, including Department of Public Works Order No. 177,163  (collectively "New Ordinance" or "Ordinance No. 214-07") in which it simply changes some of the labels from its preempted requirements, but otherwise re-imposes essentially the same burdensome and wholly discretionary requirements as were already held unlawful by this Court.  Under the City's New Ordinance, NextG's deployment of its facilities is subject to yet another multi-layered, discretionary, burdensome process. Under the Ordinance, NextG is required to obtain *both* a general Utility Conditions Permit ("UCP") *and* a site-specific "Wireless Permit" for each individual installation.  Ordinance No. 214-07 §§ 11.9(a) & (b).  However, the Wireless Permit process is rife with the same burdensome application requirements, and standardless, wholly discretionary decisional criteria as those previously struck down by this Court. In enacting the New Ordinance, the City has blatantly ignored this Court's holding that any reasonable

1  management of the public way by the City must be nondiscriminatory and competitively neutral and

2  imposed equally on wireline and wireless telecommunications carriers. *NextG San Francisco*, 2006

3  U.S. Dist. LEXIS 36101 at * 27.  Instead the City has crafted an Ordinance narrowly directed at one

4  segment of the telecommunications industry for reasons it cannot articulate and focused on carriers

5  using equipment defined by the City as "wireless" while ignoring other carriers that utilize equipment

6  that equally or more greatly affects the use and management of the public way.

7       The City has instructed NextG, in a letter dated January 7, 2008, not to install any Nodes

8  ("wireless facilities") under the Utilities Condition Permit this Court ordered granted unless and until

9  NextG first obtains a "Wireless Permit" for each and every Node facility pursuant to the City's New

10  Ordinance. *See* Complaint, Ex. F.

11       For the reasons discussed more fully below, NextG respectfully requests that the Court grant its

12  Motion for Judgment on the Pleadings.  NextG also respectfully requests that the Court grant permanent

13  Injunctive Relief, prohibiting the City from requiring NextG to comply with its burdensome,

14  discretionary and discriminatory New Ordinance and associated regulations and requirements and

15  ordering the City to permit NextG immediately to construct its Nodes in the public rights-of-way, under

16  NextG's existing, Court-ordered UCP.

17                    **II.    FACTUAL SUMMARY**

18       While this Court is familiar with NextG's technology and services, NextG will briefly

19  summarize the facts for the Court's convenience. *See NextG San Francisco*, 2006 U.S. Dist. LEXIS

20  36101 at *2-6.  Pursuant to Rule 12(c), the following facts are established through the Complaint and

21  Answer, or are subject to judicial notice; if some are not established on the pleadings, they are not

22  ultimately necessary to the outcome of the motion.[1]

23

---

24  [1] NextG respectfully requests that the Court take judicial notice of the court documents and municipal
    ordinances and regulations discussed *infra*.  Fed. R. Evid. 201(b).  It is well established that a court may

25  take judicial notice of the records of proceedings in other courts, and of public records in general,
    without converting a pleading motion into a summary judgment motion.  *See, e.g., MGIC Indem. Corp.*

26  *v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *In re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d
    1106, 1116 n.10 (C.D. Cal. 2003) ("a court may take judicial notice of matters of public record outside

27  the complaint without converting a motion to dismiss into a motion for summary judgment").  It
    likewise is well settled that on a pleading motion, the district court may consider documents referred to

28  in the plaintiff's complaint, whether or not attached to the complaint. *See, e.g., In re Silicon Graphics*
    *Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999).

**A.    NextG Is a Telecommunications Provider Seeking Access to the Public Rights-of-Way**

**1.    NextG's Network and Telecommunications Service**

NextG's telecommunications service consists of providing transport of NextG's customers' communications (both voice and data) between points designated by the customer without alteration of the communications. NextG's customers typically are providers of retail wireless telecommunications services (also known as Commercial Mobile Radio Services, cellular, or Personal Communications Services providers). Complaint ¶¶ 15-17; *NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at *3-4.

NextG's status as a telephone corporation under state law and its status as a telecommunications carrier under federal law provide it with legal authority to install, operate and maintain its telecommunications networks along or upon the rights-of-way without discretionary permits or other requirements not imposed a non-discriminatory basis on other telecommunications carrier and telephone corporations operating in the City's public ways. 47 U.S.C. § 253; Cal. Pub. Util. Code §§ 7901, 7901.1. In 2003, the CPUC issued NextG a certificate of public convenience and necessity ("CPCN") to provide limited facilities-based and resold local exchange, access and interexchange telecommunications services in California as a telephone corporation. Complaint, Ex. A. Later, over the City's challenge, the CPUC affirmed the scope of NextG's CPCN and its applicability to NextG's Nodes (wireless facilities). On July 20, 2006, the CPUC modified its January 12, 2006 Order and denied the City's request for rehearing of the decision as modified. (*Id.*, Ex. C). And, on April 12, 2007, the CPUC granted NextG's application for expanded full facilities-based authority and modified its CPCN to permit construction of facilities that are exempt from the California Environmental Quality Act ("CEQA"). This authority was granted to NextG subject to the requirement that the CPUC's Energy Division staff confirm that the construction is exempt from CEQA and issue a "Notice to Proceed" before NextG may commence construction requiring full facilities-based authority. (*Id.*, Ex. D).

NextG's typical telecommunications service offering involves a communication signal handed off from NextG's customer to NextG that NextG then transports over its fiber optic facilities. This handoff and transport takes place at and through "Nodes" located on utility or streetlight poles located in public rights-of-way or private utility easements. A Node in NextG's network typically includes a small, low-power antenna, laser and amplifier equipment, fiber optic lines, and associated equipment

1    such as power supplies, all of which are owned, operated, controlled, managed, or maintained by NextG.

2    *NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at *3-4.

3            Upon handoff from its customer, NextG transports communications through NextG's fiber optic

4    network to a distant point that is typically, but not always, an aggregation point called a "Base Station."

5    The Base Station is usually installed in a building located on private property.  At the Base Station,

6    NextG hands the communication signal back to its customer.  All wireless transmissions are performed

7    by NextG's customers.  *See id.*  Although NextG's service and network incorporates wireless reception

8    devices, NextG is not a wireless provider.  In order to construct, operate, and maintain its facilities,

9    NextG requires access to utility poles located in the public rights-of-way.

10           **B.      Prior Litigation and This Court's Injunction**

11           In response to the City's requirements and actions related to NextG's attempts to obtain city

12   authorizations to access the public rights of way starting in 2002, NextG filed suit against the City in this

13   Court on February 11, 2005.  *NextG Networks of California, Inc. v. City and County of San Francisco, et*

14   *al.*, No. C 05-00658 MHP.  NextG asserted that the City denied NextG its rights to install facilities in the

15   public way and thereby prohibited NextG from providing service in violation of Section 253 of the

16   federal Communications Act (47 U.S.C. § 253) and California Public Utilities Code §§ 7901, 7901.1.

17   NextG sought a declaration of its rights to access the public way and an order compelling the City to

18   issue NextG a UCP and any other necessary and legitimate permits for such access.  *NextG San*

19   *Francisco*, 2006 U.S. Dist. LEXIS 36101 at *2.

20           After the filing of NextG's complaint, the City struck back with a complaint against NextG at the

21   CPUC.  *Id.* at *6.  The City asked the CPUC to resolve the following issues: (1) whether NextG holds a

22   valid CPCN to operate in California; (2) whether the services NextG provides are within the scope of its

23   CPCN; and (3) whether the CPUC has authorized NextG to install its facilities, including antennas, on

24   existing utility poles.  In requesting a stay of NextG's federal case pending the CPUC's decision on the

25   City's complaint, the City argued that the CPUC's decision would be dispositive of the issues before the

26   Court in NextG's federal action.  *Id.* at *18 n.2.  The CPUC issued a decision on the City's complaint in

27   which it resolved *each and every* issue in favor of NextG.  In rejecting the City's arguments and claims

28   entirely, the CPUC "reaffirm[ed] that the authority granted [to NextG] in D.03-01-061 includes the

1  provision of radiofrequency transport services." Complaint, Ex. B at 2. The CPUC ruled that "limited

2  facilities-based authority for carriers [such as NextG] providing radiofrequency transport services

3  includes installation in or on existing utility poles" or equipment such as NextG's microcells and

4  antennae. *Id.*

5       Subsequently, this Court ruled in favor of NextG and against the City and DPW on NextG's

6  motion for partial summary judgment. The Court held that imposition of the City's discretionary and

7  discriminatory permitting regime on NextG violated Section 253(a) and that the City's actions exceeded

8  the limited statutory safe harbors of Section 253(c). Having concluded that Section 253(a) preempts the

9  City's actions, this Court found it unnecessary to consider NextG's claims under Sections 7901 and

10 7901.1 of the California Public Utilities Code. *NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at

11 *28.

12      In its decision in favor of NextG, this Court held that the City's requirement that NextG obtain a

13 major encroachment permit violated Section 253(a) because it "'may prohibit or have the effect of

14 prohibiting' NextG from providing telecommunications services." *Id.* at *17. The Court based its

15 holding on the fact that the encroachment permit process is "very involved" in that it requires "an

16 explanation of the purpose of the facilities," "maps . . . pictures . . . drawings and specifications for the

17 equipment to be installed," "notice to all other city agencies entitled to notice," a "public hearing," and

18 then referral to the Board of Supervisors, which has "absolute discretion" and "plenary power to accept

19 or reject" the recommendation of DPW with regard to the application. The Court also found that this

20 process is unlawfully "time-consuming and expensive." *Id.* at *14-16.

21      This Court entered judgment in the form proposed by NextG. It issued a declaratory judgment

22 that the City's refusal to issue NextG a UCP as well as the City's other requirements, "including but not

23 limited to the requirement that NextG obtain a major encroachment permit," violate and are preempted

24 by Section 253(a) and exceed the statutory safe harbors. The Court issued a writ of mandamus and an

25 injunction requiring the City to "promptly grant NextG access to the public rights-of-way . . . by issuing

26 NextG such lawful permits as NextG may require, and to issue NextG a Utility Conditions Permit in the

27 form attached [to the judgment], as well as any other necessary and legitimate permits" that the City

28 "may require of all other telecommunications providers under a Utility Conditions Permit." *See*

1  Declaratory Judgment, Injunction, and Writ of Mandamus [Case No. 05-00658-MHP, Dkt # 61]

2  ("Judgment") at 2.

3  **C.     The City's New Ordinance and its Multi-Layered, Burdensome, And Discretionary Requirements**

4

5  On September 11, 2007, the City adopted Ordinance No. 214-07. NextG and other affected

6  carriers were allowed to weigh in on the proposed ordinance only once, at a public hearing before the

7  Land Use and Economic Development Committee of the City's Board of Supervisors held on August 6,

8  2007.[2] After approval before the Committee, the Ordinance was given final approval by a vote of the

9  Board of Supervisors in a meeting without a public hearing or opportunity for public comment before

10  the Supervisors.[3] On October 22, 2007, the City moved for "clarification" of the scope of the injunctive

11  relief granted to plaintiff or in the alternative to modify the judgment, requesting that the Court "clarify"

12  that the City could enforce its new Wireless Permit Ordinance against NextG consistent with the Court's

13  judgment and injunction. After a hearing on December 17, 2007, the Court rejected the City's motion.

14  *See* Order Denying Defendant's Motion to Clarify Scope of Injunctive Relief [Case No. 05-00658-MHP,

15  Dkt # 85].

16  On January 7, 2008, the City sent NextG a letter informing NextG of the New Ordinance and

17  ordering NextG to refrain from "installing any new Wireless Facilities in the public rights-of-way

18  without first obtaining Wireless Permits." Complaint Exh. F; Answer ¶ 43 (admitting Exhibit F).

19  Ordinance No. 214-07 and regulations adopted pursuant to Ordinance No. 214-07 impose

20  another multi-layered, burdensome process. Under the New Ordinance, NextG is required to obtain not

21  only a UCP, but also a "Wireless Permit" that essentially drives NextG back into the same discretionary

22  process already struck down by this Court. Ordinance No. 214-07 §§ 11.9(a) & (b) and Department of

23  Public Works Order 177,163. In the vast majority of the City, in order to receive a Wireless Permit,

24  NextG would also be subject to additional, undefined processes and review before the Planning

25

_____

26  [2] A video transcript of the August 6, 2007 meeting is available at
   http://sanfrancisco.granicus.com/ViewPublisher.php?view_id=12.

27

28  [3] *See* Meeting Minutes of the Board of Supervisors, September 11, 2007, *available at*
   http://www.sfgov.org/site/bdsupvrs_page.asp?id=68825 (reflecting that ordinance was approved on
   consent agenda before public comment period).

6

1  Department, the Recreation and Park Department, the Department of Public Health, and in some cases,

2  all of them. Ord. No. 214-07 § 11.9(b)(2); *see also* transcript of August 6, 2007 Committee meeting,

3  *available at* http://sanfrancisco.granicus.com/ViewPublisher.php?view_id=12, at 00:00:15-00:00:25

4  (City staff describing how applications are referred to other agencies). The Ordinance does not define a

5  pathway for appeals of permit denials.

6        Under Section 11.9(a) of the City's New Ordinance, all providers of "Telecommunications

7  Service" or "Personal Wireless Service" must obtain a UCP from DPW. However, the City will require

8  NextG to obtain a different form of UCP than the City requires from other telecommunications utilities,

9  such as the incumbent telephone company, a form that will incorporate the requirements of the

10  Ordinance and Regulations that are at issue here. Still, the City's New Ordinance provides that DPW

11  "shall include in a UCP such conditions, in addition to those already set forth in Applicable Law, as may

12  be required to … protect and benefit the public health, safety and welfare." Ord. No. 214-07 §

13  11.9(a)(1). Just as in the past, there is no limit to DPW's discretion to determine what will benefit the

14  public welfare. *See, e.g., TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 76 (2d Cir. 2002)

15  (ability to deny based on "public interest factors" violates Section 253(a)), *cert. denied*, 538 U.S. 923

16  (2003)).

17        In addition to a UCP, entities that need to use "Personal Wireless Service Facilities" to provide

18  their telecommunications service must also now obtain a "Personal Wireless Service Facilities Site

19  Permit" ("Wireless Permit"). Ord. No. 214-07 § 11.9(b). The Wireless Permit process is burdensome

20  and subjects the provider to a standardless, undefined, and discretionary review process before various

21  City agencies, including the process of the Planning Department which is still the same as those at issue

22  in the Court's prior holding. *Compare id. with NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at

23  *14-16.

24        As amended by Ordinance No. 214-07, Section 11.9(b)(2)(A) of the City's Administrative Code

25  requires that any Wireless Permit application proposing to install facilities "(i) on historic, historically or

26  architecturally significant, decorative, or specially designed utility poles; (ii) in a historic or locally

27  significant district; (iii) adjacent to a historic, architecturally significant or locally significant building;

28  or (iv) on a street where the City and County of San Francisco General Plan has identified the presence

7

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No. CV-08-0985 MHP
WDC 730166v1 0058588-000003

1   of valued scenic resources that should be protected and conserved" must be submitted to the Planning

2   Department.  Ord. No. 214-07 § 11.9(b)(2)(A).  This provision leaves the City open-ended discretion

3   even to define what will trigger referral to the Planning Department.  There is no objective standard

4   defining what constitutes a "locally significant" or "architecturally significant" district or building, or

5   what a "valued scenic resource" is.  Similarly, Section 11.9(b)(2)(B) requires review by the Recreation

6   and Park Department for any Wireless Permit application to install a Wireless Service Facility "adjacent

7   to a City park or open space."

8          The issue of whether an application will be referred to the Planning Department or Recreation

9   and Park Department is, itself, fraught with discretion.  Following adoption of DPW Order No. 177,163,

10  DPW has created maps that purportedly would enable a provider such as NextG to know what locations

11  would have to go to other departments for review.  *See* Defendants' Motion to Clarify Scope of the

12  Injunctive Relief Granted to Plaintiff and/or To Modify the Judgment, Exhibits E, F-1, F-2, G [Case No.

13  05-00658-MHP, Dkt ## 70-6 – 70-9].  However, the maps identifying the streets that are subject to the

14  scenic view trigger are nearly illegible and will require interpretation by DPW.  *Id.*  Thus, whether a

15  particular application will require discretionary approval by the Planning Department or Recreation and

16  Park Department is unpredictable and lies in the discretion of DPW.   The creation of the maps was,

17  itself, an exercise of complete discretion.   The locations identified on the maps that have been created

18  by DPW were based entirely on DPW's discretionary, subjective notions of what is "significant" or "an

19  important street view or orientation" or "good" view.

20         For those applications that trigger Planning Department and/or Recreation and Park Department

21  review, the City once again has broad discretion to deny applications.  Under the Ordinance, if an

22  application is referred to the Planning Department and/or the Recreation and Park Department, DPW is

23  prohibited from granting the application unless the relevant Department(s) recommends approval.  (Ord.

24  No. 214-07 §§ 11.9(b)(2)(A) & (B)).

25         The face of the Ordinance reveals that its "standards" are wholly arbitrary and discretionary.  For

26  example, in the case of applications referred to the Planning Department, the Planning Department

27  "shall not recommend approval … unless [it] determines that a Personal Wireless Service Facility in the

28  proposed location is consistent with the public health, safety, convenience and general welfare and will

8

1   not unreasonably affect, intrude upon or diminish any of the identified City resources." (Ord. No. 214-

2   07 § 11.9(b)(2)(A)). Similarly, if referred to the Recreation and Park Department, the Department "shall

3   not recommend approval . . . unless [it] determines that a Personal Wireless Service Facility in the

4   proposed location will not unreasonably affect, intrude upon or diminish a City park or open space."

5   (Ord. No. 214-07 § 11.9(b)(2)(B); Order No. 177,163 § III D 4 and 5.) These are wholly subjective,

6   undefined, and discretionary "standards." Whether a proposed installation will "unreasonably, affect,

7   intrude upon or diminish" the "resources" is impossible to predict and lies completely in the subjective,

8   aesthetic discretion of the Planning Department.

9           Moreover, there is no defined process for how the applications will be treated by either

10  Department. Presumably, hearings and additional submissions of information are possible. Moreover,

11  from the face of the Ordinance, it appears to be impossible to appeal a Planning Department or Parks

12  and Recreation Department decision not to recommend approval.

13          In addition to being burdensome and discretionary, the New Ordinance is discriminatory.

14  Telecommunications providers that provide service using technology other than what the City defines as

15  "wireless" are given a regulatory advantage and favored access to the right of way, as they are not

16  subject to the burden, costs, uncertainty, and delay inherent in the Wireless Permit requirement.

17  Furthermore, by its own definitions and scope, the New Ordinance does not impose a Wireless Permit

18  requirement on all antennas but, rather, only "commercial mobile services provided under a license

19  issued by the FCC." (Ord. No. 214-07 § 11.1(aa)-(bb), 11.9(b)(1)). Thus, the New Ordinance does not

20  impose the same obligations on all wireless facilities or services, such as other types of wireless

21  telecommunications services or unlicensed wireless services, including utility monitoring systems and

22  antennae for Wi-Fi.

23          As discussed below, the City's New Ordinance, on its face, does not comply with legal authority

24  that is squarely on point, including this Court's ruling in *NextG San Francisco*, 2006 U.S. Dist. LEXIS

25  36101. The Court's Judgment in *NextG San Francisco* clearly stated that going forward, the City may

26  require NextG to obtain, and must issue to NextG, only "lawful" permits that the City "require[s] of all

27  other telecommunications providers under a Utility Conditions Permit." Judgment at 2. Moreover, the

28  Judgment enjoined the City and DPW "from imposing on NextG permit or other access requirements

not also imposed on all other telecommunications services providers." *Id.* Yet, Ordinance No. 214-07 requires all telecommunications providers, including NextG, to obtain a UCP, but then only certain providers, that use certain wireless devices, are required to also obtain a Wireless Permit. All telecommunications providers that are subject to UCP requirements are not subject to the Wireless Permit requirement, or even its rough equivalent. The City's New Ordinance is not "lawful" and irreconcilably conflicts with the Court's prior ruling.

## III.    LEGAL STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

The standard for determining whether to grant a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is "functionally identical" to the standard governing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Yerkovich v. MCA, Inc.*, 11 F. Supp. 2d 1167, 1171-72 (C.D. Cal. 1997). The court may grant judgment on the pleadings when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. *Religious Tech. Center v. Netcom On-line Pubs., Inc.*, 907 F. Supp. 1361, 1381 (N.D. Cal. 1995) (*quoting General Conference Corp. v. Seventh Day Adventist Church*, 887 F.2d 228, 230 (9th Cir. 1989)). Materials submitted with the complaint, such as the documents submitted with NextG's Complaint, may be considered in deciding a Rule12(c) motion. *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990).

The City has made clear that it views this case as amenable to resolution on purely legal grounds. In its February 26, 2008 Opposition To Plaintiff's Administrative Motion To Relate Cases [Dkt. #88], the City said of NextG's case that it "is a straightforward challenge to the validity of a new City ordinance," that "[n]either the law nor the facts are complex," and "[t]here is established precedent . . . regarding NextG's core claim of preemption under 47 U.S.C. Section 253." *Id.* at 3. Moreover, the City recognized that the facts are not in controversy, stating "[t]he facts that are common to the two cases [referring to the prior litigation between NextG and the City and this case] . . . are limited and can be easily summarized. Otherwise, the material facts in *NextG II* will relate to the processes and procedures under the new ordinance, an easily managed set of facts which, as this Court has already stated, were not at issue in *NextG I*." *Id.* at 4.

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No. CV-08-0985 MHP
WDC 730166v1 0058588-000003

1    Here, it is clear that the City's Ordinance, on its face, violates state and federal law.  Thus,

2    judgment on the pleadings is appropriate.

3                                      **IV.    ARGUMENT**

4    **A.    The City's Requirements, on Their Face, Violate Section 253 of the Federal**
         **Communications Act**

5

6    The primary purpose of the Telecommunications Act of 1996 was to "accelerate rapidly private

7    sector deployment of advanced telecommunications and information technologies and services to all

8    Americans by opening all telecommunications markets to competition ...." H.R. Conf. Rep. No. 458,

9    104th Cong., 2d Sess. 1 (1996).  In enacting the 1996 Act, Congress gave due consideration to the

10   potential conflict between state and local government regulation of the public rights of way, and the

11   national need for deployment of advanced telecommunications and information technologies.

12   Accordingly, Congress made clear in Section 253(a) that "[n]o State or local statute or regulation, or

13   other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any

14   entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).  At the

15   same time, Congress preserved local government's limited authority to manage the public rights-of-way.

16   Thus, Section 253(c) preserves local authorities' power to "manage" carriers' use of public rights-of-

17   way on a competitively neutral and non-discriminatory basis, such as through the imposition of time,

18   place and manner restrictions.  As discussed, below, however, this power is extremely limited.

19          **1.    Section 253(a) Prohibits the City from Imposing Its Burdensome,**
                  **Discretionary New Ordinance on NextG**

20

21   The scope of the Section 253(a) preemption has been considered by a number of federal courts,

22   including this one.  The Ninth Circuit, in particular, has definitively concluded that Section 253(a) goes

23   well beyond regulations that prohibit outright the ability of an entity to provide telecommunications

24   services, reaching all regulations that "may have the effect of prohibiting the provision of such

25   services." *See, e.g., NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at * 12; *City of Auburn v.*

26   *Qwest Corp.*, 260 F.3d 1160, 1175 (9th Cir. 2001); *Qwest Corp. v. City of Portland*, 385 F.3d 1236,

27   1239 (9th Cir. 2004); *Berkeley*, 433 F.3d at 1258; *Sprint San Diego*, 490 F.3d at 703; *see also Los*

28   *Angeles County*, 522 F. Supp.2d at 1248; *Newpath Network, LLC v. City of Irvine*, SACV 06-550-JVS

1  (ANx) (C.D. Cal. Mar. 10, 2008); *NextG Networks of Cal., Inc. v. City of Huntington Beach*, SACV 07-

2  1471 ABC (RNBx) (C.D. Cal. Feb. 7, 2008).  In describing the impact of Section 253, the Ninth Circuit

3  stated in *Auburn* that "[t]he preemption is virtually absolute and its purpose is clear – certain aspects of

4  telecommunications regulation are uniquely the province of the federal government and Congress has

5  narrowly circumscribed the role of state and local governments in this arena." *Auburn*, 260 F.3d at 1175

6  (internal citation omitted).

7        In *Auburn*, the Ninth Circuit identified various features of a municipal ordinance that, in

8  combination, had the effect of prohibiting a telecommunications carrier's provision of services.  *Auburn*,

9  260 F.3d at 1176.  These features included:  (1) a lengthy application provision that required submission

10  of maps, corporate policies, and other information requested by the city; (2) a public hearing

11  requirement; (3) discretionary factors that have nothing to do with management of the right of way, (4)

12  fees in excess of the cost of maintaining the right of way; and (5) unfettered city discretion to grant,

13  deny or revoke an applicant's rights to deploy its facilities.  *Id.*  The court deemed the last feature to be

14  the most important, referring to it as the "ultimate cudgel." *Id.*

15        The Ninth Circuit recently reaffirmed its *Auburn* standards as they apply to wireless zoning

16  requirements.  In *Sprint San Diego*, the Ninth Circuit also singled out provisions that allowed the County

17  unfettered discretion to consider aesthetic matters – such as whether the proposed construction was

18  sufficiently camouflaged, "consistent with community character," and designed to have a minimum

19  "visual impact" – as violations of Section 253(a).  *Sprint San Diego*, 490 F.3d at 716.

20        Similarly, in *Los Angeles County*, analyzing a zoning ordinance that required NextG to obtain a

21  Conditional Use Permit, the court had "little trouble concluding that this process is so burdensome and

22  Byzantine as to erect a barrier to providing telecommunications services" because the county "impose[d]

23  a lengthy, detailed, and expensive application process riddled with administrative hoops...." *Los*

24  *Angeles County*, 522 F. Supp.2d at 1250; *see also NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101

25  at * 16 (previous San Francisco ordinance impermissibly burdensome in part because "following a time-

26  consuming and expensive application process, the Department and the Board of Supervisors still retain

27  absolute discretion as to whether any given telecommunications carrier will be able to install its facilities

28

1 in the public rights-of-way"); *GTE Mobilnet v. City of San Francisco*, 2007 WL 420089 (N.D. Cal. Feb.

2 6, 2007) (holding that San Francisco's encroachment permit process violated § 253(a)).

3     Applying these well-established standards to this case leads to the conclusion that the City's

4 process is impermissibly burdensome and subjective.

        **a.    The City's Requirements Are Impermissibly Burdensome**

6     The New Ordinance that the City seeks to enforce in this case is strikingly similar to the

7 requirement that the courts struck down in *Sprint San Diego*, *Auburn*, *NextG San Francisco*, *Los*

8 *Angeles County*, *Irvine*, and *Huntington Beach*.

9     As discussed above, the burdens of the City's process include multiple submissions for various

10 required approvals.  Under Section 11.9(a) of the New Ordinance, all providers of "Telecommunications

11 Service" or "Personal Wireless Service" must obtain a Utilities Conditions Permit ("UCP") from DPW.

12 The application requirements are vague, but include the requirement that applicants must "prove their

13 legal right to occupy and use the Public Rights-of-Way."  (Ord. No. 214-07 § 11.9(a)(1)).  And DPW

14 must "include in a UCP such conditions, in addition to those already set forth in Applicable Law, as may

15 be required to … protect and benefit the public health, safety and welfare."  *Id.*  Applicants must pay for

16 the privilege of navigating this arbitrary and discretionary process, in the form of "a non-refundable

17 application fee of two thousand dollars."  (Ord. No. 214-07 § 11.9(a)(2)).

18     In addition to a UCP, entities that need to use "Personal Wireless Service Facilities," as that term

19 is narrowly defined by the City, to provide their telecommunications service must also now obtain a

20 Wireless Permit.  (Ord. No. 214-07 § 11.9(b)).  The Wireless Permit process is burdensome and subjects

21 the provider to a standardless, undefined, and discretionary review process before various City agencies.

22 While little is said about the standards for granting a Wireless Permit, it is clear that the Ordinance

23 requires payment of several fees for each "Wireless Service Facility."  (Ord. No. 214-07 §

24 11.9(b)(3)(A), (B)).  In addition, Ordinance requires that applicants "compensate the applicable City

25 department for all costs related to reviewing an application for a Personal Wireless Service Facilities

26 Site Permit."  (Ord. No. 214-07 § 11.9(b)(3)(B)).  It also provides open-ended discretion to "require a

27 Person filing an application for a Personal Wireless Service Facilities Site Permit to pay a sum in excess

28 of the amount charged pursuant to this section."  (Ord. No. 214-07 § 11.9(b)(3)(D)).

1       The requirements are even more onerous in undefined "historic" or "significant" areas. As

2  amended by Ordinance 214-07, Section 11.9(b)(2)(A) requires that any Wireless Permit application

3  proposing to install facilities "(i) on historic, historically or architecturally significant, decorative, or

4  specially designed utility poles; (ii) in a historic or locally significant district; (iii) adjacent to a historic,

5  architecturally significant or locally significant building; or (iv) on a street where the City and County of

6  San Francisco General Plan has identified the presence of valued scenic resources that should be

7  protected and conserved" must be submitted to the Planning Department. There is no objective standard

8  defining what constitutes a "locally significant" or "architecturally significant" district or building, or

9  what is a "valued scenic resource." Similarly, Section 11.9(b)(2)(B) requires review by the Recreation

10  and Park Department for any Wireless Permit application to install a Wireless Service Facility "adjacent

11  to a City park or open space."

12       In addition to being vague and burdensome on its face, the Ordinance also gives

13  telecommunications providers that provide service using technology other than wireless, as well as some

14  wireless communications, the regulatory advantage of being exempted from the onerous requirements of

15  the Wireless Permit. Furthermore, the New Ordinance does not impose a Wireless Permit requirement

16  on all antennas (i.e., wireless facilities) but, rather, only "commercial mobile services provided under a

17  license issued by the FCC." (Ord. No. 214-07 § 11.1(aa)-(bb), 11.9(b)(1)). Thus, the Ordinance does

18  not impose the same obligations on all wireless services and facilities that are in competition.

19       **b.**    **The Wireless Ordinance Vests The City With Unfettered Discretion**

20       In addition to being impermissibly onerous, the Wireless Ordinance also reserves broad and

21  unfettered discretion to the City at nearly every stage of this complex process. *See NextG San*

22  *Francisco*, 2006 U.S. Dist. LEXIS 36101 at * 16 ("courts, including the Ninth Circuit in *City of Auburn*,

23  have found this sort of unfettered discretion to be especially problematic"); *Los Angeles County*, 522 F.

24  Supp. 2d at 1251 (enjoining ordinance that allowed "unfettered discretion to County officials at multiple

25  points in the approval process, including discretion to ultimately deny the application, the 'ultimate

26  cudgel' in the preemption analysis") (citation omitted).

27       For example, as discussed *supra*, there is no standard defining what constitutes a "locally

28  significant" or "architecturally significant" district or building, or what is a "valued scenic resource,"

1  such that review by the Planning Department is required.  Likewise, the issue of whether an application

2  will be referred to the Recreation and Park Department for approval is totally discretionary.  The maps

3  identifying the streets that are subject to the scenic view trigger are nearly illegible.  *See* Defendants'

4  Motion to Clarify Scope of the Injunctive Relief Granted to Plaintiff and/or To Modify the Judgment,

5  Exhibits E, F-1, F-2, G [Case No. 05-00658-MHP, Dkt ## 70-6 – 70-9].  Moreover, there are no maps

6  identifying the areas that constitute "historic, historically or architecturally significant, decorative, or

7  specially designed utility poles" or "historic, architecturally significant or locally significant

8  building[s]."  (Ord. No. 214-07, § 11.9(b)(2)(A)).  Thus, whether a particular application will require

9  discretionary approval by the Planning Department or Recreation and Park Department is subject to the

10  unfettered discretion of DPW.

11      Moreover, for those applications that trigger Planning Department and/or Recreation and Park

12  Department review, the City once again has broad discretion to deny applications.  The face of the New

13  Ordinance reveals that the "standards" are wholly subjective and discretionary.  For example, in the case

14  of applications referred to the Planning Department, the Planning Department "shall not recommend

15  approval ... unless [it] determines that a Personal Wireless Service Facility in the proposed location is

16  *consistent with the public health, safety, convenience and general welfare* and will *not unreasonably*

17  *affect, intrude upon or diminish any of the identified City resources*."  (Ord. No. 214-07 § 11.9(b)(2)(A)

18  (emphasis added)); *see Sprint San Diego*, 490 F.3d at 706.  Similarly, if referred to the Recreation and

19  Park Department, the Department "shall not recommend approval . . . unless [it] determines that a

20  Personal Wireless Service Facility in the proposed location will not unreasonably affect, intrude upon or

21  diminish a City park or open space."  (Ord. No. 214-07 § 11.9(b)(2)(B)).  These are precisely the type of

22  open-ended, arbitrary, subjective, discretionary standards that were preempted by this Court in *NextG*

23  *San Francisco* as well as other cases in the Ninth Circuit.  *NextG San Francisco*, 2006 U.S. Dist. LEXIS

24  36101 at *11-21; *Sprint*, 490 F.3d at 706 (challenged ordinance provisions required the County to find

25  that "the location, size, design, and operating characteristics of the proposed use will be compatible with

26  adjacent uses, residences, or structures" and that the proposed facility is appropriately "camouflaged,"

27  "consistent with community character," and designed to have minimum "visual impact"); *see also White*

28  *Plains*, 305 F.3d at 76 ("the right to reject any application based on any 'public interest factors . . . that

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No. CV-08-0985 MHP
WDC 730166v1 0058588-000003

1    are deemed pertinent by the City' amounts to a right to prohibit providing telecommunications

2    services"). The DPW cannot meaningfully define the "resources" that will trigger Planning Department

3    review. The Planning Department's evaluation of whether a proposed facility will "unreasonably affect,

4    intrude upon or diminish any of the identified City resources" will be a purely subjective, discretionary

5    matter, pursuant to which the City can deny an application for *any* reason as long as it is stated in the

6    cryptic and vague black hole of the "general welfare" or "unreasonable intrusion" upon an alleged view

7    or resource deemed valuable, good, or significant in the standardless taste of unnamed City staff, who

8    are under no obligation to explain or justify their aesthetic preferences.

9         In addition to the "standards," there is no apparent process for how the applications will be

10   treated by either Department, and public hearings and additional submissions of information may be

11   required. *See Sprint San Diego*, 490 F.3d at 706; *Los Angeles County*, 522 F. Supp.2d at 1251 ("These

12   public hearing requirements further complicate the already burdensome application process, as courts

13   have nearly universally held."). Moreover, there does not appear to be any way to appeal a Department

14   decision not to recommend approval. In these respects, the City's ordinance and requirements are

15   squarely on point with – and go far beyond – the ordinance struck down in *Auburn*, 260 F.3d at 1181;

16   *Sprint San Diego*, 490 F.3d at 716; *Los Angeles County*, 522 F. Supp.2d at 1257; and the other cases

17   cited above.

18        Under Ordinance No. 214-07, NextG will never have certainty regarding what process will apply

19   to its proposed installations, and there are no objective standards that NextG can satisfy to ensure its

20   applications will be granted. Just as under the City's prior process, NextG's applications will be subject

21   to the City's unfettered, subjective discretion. In addition, the New Ordinance unlawfully discriminates

22   against NextG, and companies like it, based on the fact that they provide telecommunications service

23   that involves certain wireless technologies and the use of wireless equipment disfavored by the City.

24   *See NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at *25-26 (forbidding such discrimination).

25   Applicable law is abundantly clear that the City has no role whatsoever in selecting or preferring one

26   particular technology over any other in the robust competition that Congress intended to spark among

27   providers of telecommunications services. *See, e.g., Los Angeles County*, 522 F. Supp.2d at 1253.

28

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No. CV-08-0985 MHP
WDC 730166v1 0058588-000003

1    In short, even a cursory look at the City's New Ordinance reveals that while the City has adopted

2    new labels, it has not altered its fundamental requirements that position the City as final arbiter of

3    telecommunications market entry.  Under the New Ordinance, NextG's ability to provide

4    telecommunications service can be denied or delayed at any one of multiple steps based on purely

5    subjective and arbitrary grounds.  As such, as a matter of law, the Ordinance violates Section 253(a), on

6    its face.

7    **2.    The City's Requirements Do Not Fall within the Authority Reserved by Section 253(c).**

8

9    Having established that the City's actions and requirements violate Section 253(a), the burden

10    shifts to the City to establish that the challenged provisions are within its authority under Section 253(c).

11    *TC Sys. Inc. v. Town of Colonie*, 263 F. Supp. 2d 471, 484 (N.D.N.Y. 2003).  Under Section 253(c), the

12    City may "manage" use of the public rights-of-way and require fair and reasonable compensation for use

13    of the public rights-of-way.  However, such management and compensation must be competitively

14    neutral and nondiscriminatory.  47 U.S.C. § 253(c); see, e.g., *Auburn*, 260 F.3d at 1177.  Moreover, the

15    Ninth Circuit has definitively held that Section 253(c) "saves" only those municipal requirements that

16    are "directly related" to management of the public rights of way.  *Auburn*, 260 F.3d at 1177-78; *see also*

17    *White Plains*, 305 F.3d at 81-82; *TC Sys. Inc. v. Town of Colonie*, 263 F. Supp. 2d 471, 484-85

18    (N.D.N.Y. 2003).  In *Berkeley*, the Ninth Circuit explained that proper "management" activities include

19    "coordination of construction schedules, determination of insurance, bonding and indemnity

20    requirements, establishment and enforcement of building codes, and keeping track of the various

21    systems using the rights-of-way to prevent interference between them."  433 F.3d. at 1258.  This can be

22    contrasted with demands for "information on the nature of the requested use, the uses of adjacent

23    buildings and structures, [and] the location and dimensions of all structures, yards, walls, fences, parking

24    and loading facilities," which have "little to do with managing the physical integrity of the rights-of-way

25    … and cannot be viewed as management of the rights-of-way preserved by section 253(c)." *Los*

26    *Angeles County*, 522 F. Supp.2d at 1254.

27    The City's requirements do not fall within the City's limited Section 253(c) authority.  The

28    City's procedures encompass concerns and criteria unrelated to the management of the rights-of-way.

1  For example, the City's procedures permit the City to deny or condition a permit approval on the basis

2  of location, aesthetics, and harmony with adjacent uses.  (Ord. No. 214-07 § 11.9(b)(2)(A)).  Those

3  requirements are not "coordination of construction," or the other right-of-way management activities

4  authorized by Section 253(c).  Likewise, the Ordinance allows the City to deny a permit because the

5  City thinks it will "unreasonably affect, intrude upon or diminish," in some undefined way, "any of the

6  identified City resources."  *Id.*  In *Sprint San Diego* and *Auburn*, the Ninth Circuit struck down the

7  requirements at on just this type of unfettered discretion.  *Sprint San Diego*, 490 F.3d at 716; *Auburn*,

8  260 F.3d at 1179; *see also Los Angeles County*, 522 F. Supp.2d at 1254.

9          In addition, the City's requirements are not saved by Section 253(c) because they are not

10  competitively neutral and nondiscriminatory.  As explained above, the City's New Ordinance – like its

11  old process – discriminates against certain providers who choose to provide telecommunications service

12  using wireless facilities (indeed, it further discriminates even within the "wireless" bucket by not

13  imposing a Wireless Permit requirement on all types of wireless telecommunications services or

14  unlicensed wireless services).  Only providers using certain wireless technologies are required to obtain

15  a Wireless Permit in addition to a UCP, even to attach facilities to the same utility poles.  (Ord. No. 214-

16  07 § 11.1(aa)-(bb), 11.9(b)(1)).  The City is once again attempting to treat NextG differently than the

17  incumbent telephone company.  *NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at *25-26.  By

18  allowing AT&T and other telephone corporations, competitors of NextG, to install telephone lines and

19  associated equipment similar to NextG's telephone lines and associated equipment along or upon public

20  rights-of-way without the cost, burden, and potential pitfalls of the Wireless Permit process, the City is

21  granting those providers a competitive advantage based solely on their choice of technology.  Such

22  discrimination is prohibited under Section 253(c).  *See White Plains*, 305 F.3d at 79-81; *NextG San

23  Francisco*, 2006 U.S. Dist. LEXIS 36101 at *25-26.

24          **3.      Section 332(c)(7) Is Not A Defense To Section 253(a) Preemption**

25          In its answer, the City asserts as an affirmative defense that Ordinance No.214-07 is protected

26  from preemption under Section 253(a) by Section 332(c)(7) of the Communications Act.  (City Answer,

27  Second Affirmative Defense).  The City's argument was already explicitly rejected by the Ninth Circuit

28  in *Sprint*.  Specifically, San Diego County made an identical argument – that Section 332(c)(7) grants

1    local governments authority related to wireless siting that is saved from the reach of Section 253(a).  The

2    Ninth Circuit rejected the argument that Section 332(c)(7) was an additional "exclusion" from Section

3    253(a):

4    
> Had Congress harbored a similar concern that § 253(a) could negate the
> protections allegedly extended by § 332(c)(7) it could have included a

5    
> similar exemption, but it did not do so. Because this series of exclusions
> demonstrates Congress's awareness that § 253 could affect § 332, and

6    
> because the existing exclusions address traditionally local provinces like
> the management of rights-of-way, we interpret–*expressio unius est*

7    
> *exclusio alterius*–Congress's failure to omit § 332(c)(7) from the reach of
> § 253(a) as an affirmation of § 253(a)'s applicability to state and local

8    
> wireless zoning ordinances.

9    *Sprint San Diego*, 490 F.3d at 714.

10    The Ninth Circuit's rejection of this argument is consistent with the policy of the Act.  Congress'

11    intention in adopting Section 253 and Section 332(c)(7) was to limit the ability of cities to hamper

12    deployment of telecommunications services and technologies.  As the Supreme Court recognized in the

13    context of Section 332(c)(7),

14    
> *[o]ne of the means* by which [Congress] sought to accomplish these goals
> was reduction of the impediments imposed by local governments upon the

15    
> installation of facilities for wireless communications, such as antenna
> towers.  To this end, the [1996 Act] amended the Communications Act of

16    
> 1934 to include § *332(c)(7), which imposes specific limitations on the
> traditional authority* of state and local governments to regulate the

17    
> location, construction and modification of such facilities.

18    *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (emphasis added) (internal citations

19    omitted).  Indeed, the Court went farther, stating that "Congress saw a national problem, namely an

20    'inconsistent and, at times, conflicting patchwork' of state and local siting requirements, which

21    threatened 'the deployment' of a national wireless communications system." *Id.* at 127-28 (Breyer, J.,

22    concurring) (quoting H.R. Rep. No. 104-204, pt. 1, p.94).  There was no dispute that Section 332(c)(7)

23    "creates individually enforceable rights" *in the provider*, not the city.  *Id.* at 120.  Thus, contrary to the

24    City's assertions, Section 332(c)(7) is not a grant of authority to cities, and it is not a defense to

25    preemption under Section 253(a).  It is one piece of a multi-part design to limit cities' discretion.

26    **B.    The City's Requirements Also Violate California Public Utilities Code § 7901**

27    In addition to being preempted by federal law, the City's New Ordinance violates Section 7901

28    of the California Public Utilities Code.  Section 7901 grants telephone corporations broad authority to

1    install necessary wires and fixtures, so long as they do not interfere with public use of the roads. Cal.

2    Pub. Util. Code § 7901 ("Telegraph or telephone corporations may construct lines of telegraph or

3    telephone lines along and upon any public road or highway … and may erect … necessary fixtures of

4    their lines, in such manner and at such points as not to incommode the public use of the road or highway

5    or interrupt the navigation of the waters"); *see Sprint PCS Assets, LLC v. City of La Cañada Flintridge*,

6    448 F.3d 1067, 1069 n.2 (9th Cir. 2006) (noting its decision that Section 7901 preempted a city

7    ordinance regulating wireless telecommunications facilities). The sole power reserved to municipalities

8    under California law is the reasonable control of the time, place and manner in which roads, highways,

9    and waterways may be accessed. Cal. Pub. Util. Code § 7901.1; *see Pac. Tel. & Tel. Co. v. City &*

10   *County of San Francisco*, 197 Cal. App. 2d 133, 152, 17 Cal. Rptr. 687 (1961) ("*Pac. Tel. II*").

11          NextG is a telephone corporation under California law and clearly falls within the purview of

12   Section 7901. Under Public Utility Code Section 234(a), NextG is a telephone corporation because it

13   owns, controls, operates, and manages its own instruments and appliances used to facilitate

14   communications by telephone for compensation within California. *See* Complaint, Exhibit A; Cal. Pub.

15   Util. Code § 234(a). The wireless elements incorporated into NextG's network fall squarely under

16   Section 7901, as a telephone line is defined broadly to include "all conduits, ducts, poles, wires, cables,

17   instruments, and appliances, and all other real estate, fixtures, and personal property owned, controlled,

18   operated, or managed in connection with or to facilitate communication by telephone, *whether such*

19   *communication is had with or without the use of transmission wire*." Cal. Pub. Util. Code § 233

20   (emphasis added). Moreover, the CPUC regulates NextG as a telephone corporation, recently

21   reaffirming the scope and grant of NextG's CPCN as including antennas. Complaint, Exhibit D.

22          As a telephone corporation, NextG is entitled by Section 7901 to deploy its facilities in public

23   rights-of-way subject only to the requirement that the equipment does not "obstruct and interfere with

24   ordinary travel" in the right-of-way. *Pac. Tel. II*, 197 Cal. App. 2d at 145.

25          The City clearly has interfered with NextG's rights under Section 7901 in a manner that exceeds

26   its authority under Section 7901.1. As discussed *supra*, the City's process requires NextG to make

27   various showings that are unrelated to time, place, and manner regulation of the right-of-way. *See, e.g.*,

28   Ord. No. 214-07 § 11.9(b)(2)(A). The City's extensive requirements largely address aesthetic concerns

20

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No. CV-08-0985 MHP
WDC 730166v1 0058588-000003

1   and purport to expand the City's authority well beyond the power granted in Cal. Pub. Util. Code §

2   7901.1.  Section 7901.1 only gives cities the authority to regulate the manner in which roads are

3   accessed, not to regulate the manner in which telephone companies affect the road's appearance.

4   Moreover, as discussed above, the City's requirements are not applied to all users in an equivalent

5   manner, as required by Section 7901.1.  Thus, the City's ordinances contravene state law and public

6   policy.

## V.    CONCLUSION AND REQUEST FOR RELIEF

7

8          For the reasons set forth above, and in all of NextG's moving papers and judicially noticeable

9   facts, NextG respectfully requests that the Court grant this Motion for Judgment on the Pleadings and

10  issue an order permanently enjoining the City, including DPW and all others acting in connection

11  therewith, from enforcing Ordinance No. 214-07 (as codified in Section 11.9 of the City's

12  Administrative Code) and the City's and DPW's regulations implementing Ordinance No. 214-07 and

13  any similar future ordinance or requirements.

14  Dated:  April 03, 2008.

15                                        Respectfully Submitted,

16                                        **DAVIS WRIGHT TREMAINE LLP**

17

18                                        By: /s/_____
                                                 Martin L. Fineman
                                          Attorneys for Plaintiff
19                                        NextG Networks of California, Inc.

20

21

22

23

24

25

26

27

28

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No.  CV-08-0985 MHP
WDC 730166v1 0058588-000003