DENNIS J. HERRERA, State Bar #139669
City Attorney
THERESA L. MUELLER, State Bar #172681
Chief Energy and Telecommunications Deputy
WILLIAM K. SANDERS, State Bar #154156
THOMAS J. LONG, State Bar #124776
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-6548
Facsimile: (415) 554-4757
E-Mail: thomas.long@sfgov.org

Attorneys for Defendants
THE CITY AND COUNTY OF SAN FRANCISCO and
THE DEPARTMENT OF PUBLIC WORKS OF THE
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTG NETWORKS OF CALIFORNIA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO and THE DEPARTMENT OF PUBLIC WORKS OF THE CITY OF SAN FRANCISCO,<br><br>Defendants. | Case No. CV-08-0985-MHP<br><br>**DECLARATION OF AMIT K. GHOSH IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: June 9, 2008<br>Time: 2:00 p.m.<br>Place: Courtroom 15 |

I, Amit K. Ghosh, being duly sworn, declare:

1. I am employed by the City and County of San Francisco in the Planning Department as the Chief Planner and Head of Citywide Policy Planning. I have been in that position since 1992, and I have worked for the Planning Department since 1981. My responsibilities at the Planning Department include functioning as the principal deputy to the Planning Director for Planning Policy and directing the Citywide Policy Planning Division. I submit this declaration in support of the

motion for summary judgment filed by defendants the City and County of San Francisco and the Department of Public Works ("DPW") of the City and County of San Francisco (hereinafter "City"). I have personal knowledge of the matters stated herein, and if called as a witness could testify competently thereto.

2. In addition to working for the Planning Department for over twenty years, I have a number of advanced degrees in the Urban Planning field. I have a Bachelors of Science degree in Architecture and Urban and Regional Planning from the University of Calcutta, a Masters of City Planning Degree from the Indian Institute of Technology, and a combined Ph.D in Urban Planning and Economics from the University of Southern California.

3. In or around September 2004, it first came to my attention that telecommunications carriers were seeking to install wireless facilities on utility poles in the public rights-of-way. In or around that time, I was asked to attend a meeting with plaintiff NextG Networks of California, Inc. ("NextG"). I recall that in attendance at that meeting were City employees from the Planning Department, DPW and the City Attorney's Office. It was my understanding at the time that DPW was negotiating an agreement with NextG that would have allowed NextG to install its wireless facilities in the public rights-of-way.

4. The Planning Department became involved because, under City law, before the Board of Supervisors could approve the proposed agreement between NextG and DPW the Planning Department or Planning Commission would have to make a determination that NextG's proposed use of the public rights-of-way to install wireless facilities: (a) was consistent with the San Francisco General Plan; and (b) would not have a significant effect on the environment under the California Environmental Quality Act ("CEQA").

5. In September 2004, the Planning Department began to develop siting criteria for NextG's wireless facilities to include in the proposed agreement between DPW and NextG so that the Planning Department could recommend that the Planning Commission make a finding that the proposed agreement was consistent with the General Plan and was categorically exempt from CEQA. At that time, the Planning Department reviewed documents from NextG identifying the various types

of wireless facilities that NextG intended to install on utility and street light poles in the public rights-of-way.

6. Based on the Planning Department's review of NextG's proposed facilities, the Planning Department considered where in San Francisco the installation of those types of facilities could have the most profound aesthetic impact. After careful consideration, the Planning Department identified the following areas: (a) near parks and open spaces; (b) on the waterfront; (c) near federal, state and local historic districts and landmarks; (d) near architecturally significant buildings; (e) on the 49-mile scenic drive; (f) on streets rated "excellent" for the quality of their views; (g) on "streets most significant to city pattern;" (h) on "roadways with important views for orientation;" and (i) on "streets with views of important buildings."

7. While it is my understanding that the City never finalized this agreement with NextG, the work the Planning Department did at that time to consider the aesthetic impact of these facilities contributed to Ordinance No. 214-07 and Department of Public Works Order No. 177,163.

8. All of the areas identified in Paragraph 6 above have been identified by the City as important resources in the Urban Design Element of the San Francisco General Plan.

9. The City exercises its land use authority through the San Francisco General Plan and the San Francisco Planning Code. The General Plan has been in existence since 1943 and has been adopted by the Planning Commission and approved by the Board of Supervisors. Under California Government Code § 65350, *et seq.*, all local governments are required to prepare general plans that address seven issues: land use, circulation, housing, conservation, open space, noise and safety.

10. As noted in the General Plan, the City adopted the General Plan to serve as a "guide to ensure that the qualities that make San Francisco unique are preserved and enhanced." The General Plan "is both a strategic and long term document, broad in scope and specific in nature. It is implemented by decisions that direct the allocation of public resources and that shape private development." The General Plan contains the following elements: Residence, Commerce and Industry, Recreation and Open Space, Community Facilities, Transportation, Community Safety, Environmental Protection, Urban Design, Air Quality and Arts.

11. The Urban Design Element was added to the General Plan in 1972 and was the first of its kind in the United States. The basis for the Urban Design Element was the Citywide Urban Design Plans (the "Plans") prepared by the Planning Department. The Plans, which were completed in 1970, consisted of a series of eight Preliminary Reports for the San Francisco Urban Design Study. The Urban Design Element was the result of an extensive study of the City's physical environment, including surveys and research, and extensive public review and discussions of the Plan's proposed findings.

12. As stated in the General Plan, the "Urban Design Element is concerned both with development and with preservation. It is a concerted effort to recognize the positive attributes of the city, to enhance and conserve those attributes, and to improve the living environment where it is less than satisfactory." One section of the Urban Design Element is called "City Pattern." This section recognizes that the "agreeable pattern of San Francisco's appearance is, perhaps above all, what makes this a city with feeling. The pattern is a visual framework composed of the natural base upon which the city rests, together with man's development." The pattern is comprised of five elements: (a) water; (b) hills and ridges; (c) open spaces and landscaped areas; and (d) streets and roadways; and (e) buildings and structures.

13. Ordinance No. 214-07 requires the Planning Department to review an application for a personal wireless service facilities site permit ("Wireless Permit") if the proposed personal wireless service facility would be located near the City's historic resources or on a street "where the City and County of San Francisco General Plan has identified the presence of valued scenic resources that should be protected and conserved."

14. To implement the requirements of Ordinance No. 214-07, DPW needed to specify those locations where the General Plan has identified "valued scenic resources that should be protected and conserved." Calling on our experience from working with NextG in 2004, and with EarthLink in 2007 when the City was trying to provide free WiFi service, the Planning Department recommended that DPW include in DPW Order No. 177,163 the following: "a street identified in the City and County of San Francisco General Plan as one that: (i) is most significant to City pattern;

(ii) defines City form; (iii) has an important street view for orientation; or (iv) has street views that are rated 'excellent' or 'good.'"

15. In identifying those locations, the Planning Department used two maps that are contained in the Urban Design Element of the General Plan. The first map is entitled "Street Areas Important to Urban Design and Views." A true and correct copy of this map is attached hereto as Exhibit A. The Urban Design Element recognizes that "good views are another product of the street system. A majority of the city's streets may be said to have pleasing views of the Bay, the Ocean, distant hills or other parts of the city. Where good views are not available, streets can still function as open space for use by neighborhood residents and for landscaping to bring some sense of nature to the area." This map, therefore, identifies streets that meet five separate urban design criteria: (a) "street[s] with view[s] of important building[s]; (b) "streets that define city form;" (c) "streets that extend the effect of public open space;" (d) "route of the forty-nine mile scenic drive;" and (e) streets with "important street view[s] for orientation." As stated in Preliminary Report No. 8, these streets were identified because they are streets where the Planning Department determined that "protection of views and [the] space they offer is especially critical."

16. The second map is entitled "Quality of Street Views." A true and correct copy of this map is attached hereto as Exhibit B. Preliminary Report No. 8 recognizes that "views have economic as well as historic and aesthetic significance. A major segment of San Francisco's economy – tourism – derives much of its vitality from the quantity and quality of the views the city affords." The Planning Department identified streets where views are "features that are important in attracting business firms and residents to San Francisco." This map, therefore, identifies streets that have views rated "excellent," "good," or "average."

17. As noted above, these two maps were included in the Urban Design Element of the General Plan following extensive research and discussion. The Planning Department identified the streets described in paragraph 14 above, as well as streets containing the City's historic resources, for DPW because the Planning Department determined that these parts of San Francisco could potentially be negatively affected by the installation of wireless facilities in the public rights-of-way. The Planning Department therefore recommended that proposals to site wireless facilities in these areas be

reviewed by the Planning Department to ensure that such construction would be consistent with the General Plan.

18. Because of the diverse nature of the locations that require Planning Department approval under Ordinance 214-07, the Planning Department will need to consider different factors for different applications. For instance, the Planning Department will likely consider different factors when reviewing an application to install a wireless facility on a street with a "good" view as opposed to in front of a historic building like City Hall.

19. Some of the factors that the Planning Department may consider, depending on the specific application, include the extent of other "visual clutter" in the area, the compatibility of the proposed facilities with neighboring structures, the quality and importance of any view or historic resource that may be affected, the extent to which vegetation may mask the facilities, and the size, shape, color and location on the pole of the proposed equipment.

20. The criteria specified in Ordinance No. 214-07 are the types of standards that planners use all the time. To do so, we rely on our training and experience in Urban Planning.

21. Examples of the City's use of such standards include San Francisco Planning Code § 101. Section 101 states that the very purpose of the Planning Code is "to promote and protect the public health, safety, peace, morals, comfort, convenience and general welfare."

22. Under San Francisco Planning Code § 303, the Planning Commission cannot grant a conditional use permit under this section – which is required for wireless facilities on private property in many parts of San Francisco – unless the Planning Commission determines that the proposed use: (a) "is necessary or desirable for, and compatible with, the neighborhood or the community;" (b) will not "adversely affect" the General Plan; and (c) "will not be detrimental to the health, safety, convenience or general welfare." A true and correct copy of these sections of the San Francisco Planning Code is attached hereto as Exhibit C.

23. Under San Francisco Charter § 4.105, the Planning Department must make a determination that certain types legislative acts are in "conformity with the General Plan" prior to the San Francisco Board of Supervisors passing on such matters. Among the legislative acts included in this section are any acts that would result in a "change in the use or title of property owned" by the

City. The Planning Department has interpreted this provision to include a change in use of the public rights-of-way.

24. Also under § 4.105, the San Francisco Zoning Administrator cannot grant a variance absent a finding that the proposed variance would be "consistent with the general purpose and the intent of the zoning ordinance, and in accordance with the general and specific rules of the zoning ordinance." A true and correct copy of this section of the San Francisco Charter is attached hereto as Exhibit D.

25. I am informed and believe that NextG has speculated in its Motion for Judgment on the Pleadings that the Planning Department could conduct a hearing after a Wireless Permit application is referred to the Planning Department by DPW. Nonetheless, Ordinance No. 214-07 states that the Planning Department, not the Planning Commission, would review these applications, which tells me that the Planning Department should conduct its review at the staff level without conducting any hearings. This is what the Planning Department intends to do.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, executed this 25th day of April, 2008 at San Francisco, California.

AMIT K. GHOSH