1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  THERESA L. MUELLER, State Bar #172681
   Chief Energy and Telecommunications Deputy
3  WILLIAM K. SANDERS, State Bar #154156
   THOMAS J. LONG, State Bar #124776
4  Deputy City Attorneys
   City Hall, Room 234
5  1 Dr. Carlton B. Goodlett Place
   San Francisco, California 94102-4682
6  Telephone:     (415) 554-6548
   Facsimile:     (415) 554-4757
7  E-Mail:        thomas.long@sfgov.org

8  Attorneys for Defendants
   THE CITY AND COUNTY OF SAN FRANCISCO and
9  THE DEPARTMENT OF PUBLIC WORKS OF THE
   CITY AND COUNTY OF SAN FRANCISCO

10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15  NEXTG NETWORKS OF CALIFORNIA,         Case No. CV-08-0985-MHP
    INC., a Delaware corporation,
16                                        DECLARATION OF MARK LUELLEN
                Plaintiff,                IN SUPPORT OF DEFENDANTS'
17                                        MOTION FOR SUMMARY
          vs.                             JUDGMENT
18  THE CITY AND COUNTY OF SAN
    FRANCISCO and THE DEPARTMENT          Hearing Date:  June 9, 2008
19  OF PUBLIC WORKS OF THE CITY OF        Time:          2:00 p.m.
    SAN FRANCISCO,                        Place:         Courtroom 15
20
                Defendants.
21

22
         I, Mark Luellen, being duly sworn, declare:
23
              1.  I am employed by the City and County of San Francisco in the Planning Department
24
    as the Preservation Coordinator.  I submit this declaration in support of the motion for summary
25
    judgment filed by defendants the City and County of San Francisco and the Department of Public
26
    Works ("DPW") of the City and County of San Francisco (hereinafter "City").  I have personal
27
    knowledge of the matters stated herein, and if called as a witness could testify competently thereto.
28

1          2.  I have a Master in Science Degree in Historic Preservation from the University of

2      Pennsylvania.  I have been the Preservation Coordinator since 2005, and I have worked for the

3      Planning Department since 2001.  As Preservation Coordinator, I supervise a team of planners and

4      support staff that is responsible for being the stewards of the historical resources in San Francisco.

5      The core work of the Preservation Unit includes managing the processing of discretionary permits

6      and case applications in conformance with the City's long-range planning goals, as regulated by

7      Articles 10 and 11 of the San Francisco Planning Code.  This work includes the review of building

8      permit applications that entail the alteration of historical resources for compliance with the Planning

9      Code, the Secretary of the Interior Standards, and the California Environmental Quality Act

10     ("CEQA").  In addition the Preservation Team is responsible for the creation and implementation of

11     the Comprehensive Citywide Survey of Cultural Resources, and undertaking other special projects,

12     for example writing the Preservation Element of the General Plan

13          3.  I am familiar with Ordinance No. 214-07 and Department of Public Works ("DPW")

14     Order No. 177,163 that are the subject of this litigation (hereinafter referred to as "Wireless

15     Regulations").  I am also familiar with the map that DPW has prepared of the historic, architectural,

16     and scenic resources in San Francisco identified in the Wireless Regulations.  The purpose of my

17     declaration is to demonstrate that the historic, architectural, and locally significant resources

18     identified in the Wireless Regulations and shown on the DPW map have all been recognized under

19     federal, state or local law as important resources that merit special consideration before they or their

20     surroundings may be altered by new construction.

21          4.  CEQA and the California Department of Resources CEQA Guidelines provide the

22     Planning Department with direction and guidance for evaluating properties that could be considered

23     "historical" resources when determining the potential environmental impacts from a project.  *See* Cal.

24     Pub. Res. Code § 21084.1; Title 14 Cal. Code of Reg., Chapter 3, § 15064.5.

25          5.  CEQA provides that "historical resources" may include any "object, building,

26     structure, site, area [or] place" that is "historically significant or significant in the architectural,

27     engineering, scientific, economic, agricultural, educational, social, political, military, or cultural

28     annals of California." Title 14 Cal. Code of Reg., Chapter 3, § 15064.5(a)(3).

1    6.  Consistent with the direction and guidance from the State of California, the Planning

2    Department maintains a detailed listing of all of the City's historic resources.  This listing is

3    summarized in San Francisco Preservation Bulletin No. 16, *City and County of San Francisco*

4    *Planning Department CEQA Review Procedures for Historic Resources* (draft dated March 31, 2008)

5    (hereinafter "Bulletin No. 16").  A true and correct copy of Bulletin No. 16 is attached hereto as

6    Exhibit A.

7    7.  For purposes of CEQA, the Planning Department must consider as historic resources

8    all properties either listed in the California Register of Historic Resources or formally determined to

9    be eligible for such listing by the California Historical Resources Commission.  Title 14 Cal. Code of

10    Reg., Chapter 3, § 15064.5(a)(1).  The California Office of Historic Preservation lists four different

11    registration programs:  (a) California Historical Landmarks; (b) California Points of Historical

12    Interest; (c) California Register of Historical Resources; and (d) National Register of Historic Places.

13    In the Wireless Regulations, these properties are identified under the categories of: (i) National

14    Historic Landmark District; (ii) listed or eligible National Register Historic District; (iii) listed or

15    eligible California Register Historic District; (iv) National Historic Landmark; and (v) California

16    Landmark.  In the DPW map, they are included in the categories called National and California

17    Register Listed and Eligible Buildings and Districts.

18    8.  For purposes of CEQA, the Planning Department must also take steps to identify other

19    historic resources.  Title 14 Cal. Code of Reg., Chapter 3, §§ 15064.5(a)(2)-(4).  There are a number

20    of ways the City has done this.

21    9.  Under Article 10 of the San Francisco Planning Code, the City may designate historic

22    landmarks and districts.  Using this process, the Board of Supervisors has designated 259 properties

23    as San Francisco landmarks.  They include such buildings as City Hall, Mission Dolores and the

24    Flood Building.  *See* Appendix A to Article 10.  The Board of Supervisors has also designated eleven

25    historic districts.  *See* Appendices B through L of Article 10.  They include such parts of San

26    Francisco as Jackson and Alamo Squares.  In the Regulations and on the DPW map, these properties

27    and districts that are not listed in the categories described in paragraph 7 above are identified as San

28    Francisco Landmarks and Landmark Districts.

1    10.    Under Article 11 of the San Francisco Planning Code, the City may designate

2    buildings and districts of architectural, historical, and aesthetic importance.  Using this process, the

3    Board of Supervisors has designated certain properties as: (a) "Category I and II" buildings because

4    they are "Buildings of Individual Importance" (*see* Appendices A and B of Article 11); and

5    (b) "Category III and IV" buildings because they are "Contributory Buildings" (*see* Appendices C

6    through D of Article 11).  The Board of Supervisors has also designated six "Conservation Districts."

7    *See* Appendices E through J of Article 11.  They include the Kearny-Market-Mason-Sutter and New

8    Montgomery-Second Street Conservation Districts.  In the Regulations, these properties and districts

9    that are not listed in the categories described in paragraph 7 above are included under the categories

10   of Conservation Districts and locally significant buildings.  In the DPW map, these districts and

11   buildings are included under the categories of San Francisco Conservation Districts and Significant

12   Buildings.

13   11.    Under Section 1011 of the Planning Code, the Planning Commission may recognize

14   as "Structures of Merit" structures of historical, architectural or aesthetic merit that have not been

15   designated as landmarks and are not situated in designated historic districts.  Over the past 30 years,

16   the Planning Commission has recognized and formally approved nine Structures of Merit.  They

17   include the Old Dutch Windmills in Golden Gate Park and the Levi Strauss Factory Building.  In the

18   Regulations and on the DPW map, these properties are identified as Structures of Merit.

19   12.    In addition, for over 30 years, the City has conducted or adopted a number of surveys

20   of the City's historic resources.  Most of those surveys attempt to analyze descriptive information

21   about buildings, structures, sites and objects based on architecture and date of construction.

22   13.    One of those surveys is called the "Here Today" survey, which was adopted by the

23   Board of Supervisors in Resolution No. 268-70 dated May 11, 1970.  In 1968, the Junior League

24   undertook an architectural and historical survey of San Francisco that resulted in the book, *Here*

25   *Today, San Francisco's Architectural Heritage*.  In organizing the Here Today survey, the Junior

26   League used criteria suggested by the National Trust for Historic Preservation.  These criteria

27   included: (a) the age of the building, (b) whether the building is a fine example of a particular style;

28   (c) whether the building is the work of a notable architect or builder; (d) whether the building is the

1   site of an historic event; and (d) whether the building is associated with a famous person.  In the

2   Regulations, the properties in this survey that are not listed in the categories described in paragraph 7

3   above are included under the category of locally significant buildings.  On the DPW Map, they are

4   included under the category Here Today and 1976 Arch. Surveys.

5        14.   Another survey conducted by the Planning Department is the 1976 Architectural

6   Survey.  Between 1974 and 1976 the Planning Department, assisted by an advisory committee of

7   architects and architectural historians, conducted a citywide survey of architecturally significant

8   buildings in which the Planning Department rated some 10,000 buildings for design features, urban

9   design context, and overall environmental significance. On October 27, 1977, in Resolution No. 381,

10  the Planning Commission adopted this Survey.  In the Regulations, the properties in this survey that

11  are not listed in the categories described in paragraph 7 above are identified as architecturally

12  significant buildings.  On the DPW Map, they are included under the category Here Today and 1976

13  Arch. Surveys.

14       15.   In November 1990, the San Francisco Landmarks Preservation Advisory Board

15  ("LPAB") completed a survey entitled *A Context Statement of Architectural/Historical Survey of*

16  *Unreinforced Masonry Building Construction in San Francisco from 1850 to 1940.*  The California

17  Office of Historic Preservation evaluated the survey and determined that more than 2,000 buildings

18  were eligible for inclusion in the National Register of Historic Places.  The LPAB adopted this survey

19  on February 6, 1991.  The properties in this survey that are not listed in the categories described in

20  paragraph 7 above are included in the Wireless Regulations under the category locally significant

21  buildings and on the DPW map under the category Locally Significant Buildings and Districts.

22       16.   Other surveys conducted by the Planning Department include the Central Waterfront

23  Historic Resource Survey, the North Beach Historic Resource Survey, and the Inner Mission North

24  Historic Resource Survey.  In June 2002, the Planning Commission endorsed the Central Waterfront

25  Historic Resource Survey.  In August 1999, in Resolution No. 772-99, the Board of Supervisors

26  adopted the North Beach Historic Resource Survey.  On June 15, 2006, the Planning Commission

27  certified the Inner Mission North Historic Resource Survey Areas I and II.  The properties in these

28  surveys that are not listed in the categories described in paragraph 7 above are included in the

1  Wireless Regulations under the category locally significant districts and on the DPW map under the

2  category Locally Significant Buildings and Districts.

3         17.  All of the properties and districts described above have been categorized as historic

4  resources based on expert evaluations using professionally recognized criteria.

5         18.  All of the properties and districts described above are listed in a database maintained

6  by the Planning Department.  I am informed and believe that the Planning Department provided DPW

7  with a copy of this database in order to enable DPW to prepare the DPW map that DPW will use to

8  determine which applications for wireless site permits require Planning Department review.

9         I declare under penalty of perjury under the laws of the United States that the foregoing is true

10 and correct, executed this 25th day of April, 2008 at San Francisco, California.

11

12

                                    MARK LUELLEN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

# SAN FRANCISCO
## PRESERVATION BULLETIN NO. 16

## City and County of San Francisco Planning Department
## CEQA Review Procedures for Historic Resources

The California Environmental Quality Act[1] and the Guidelines for Implementing CEQA (State CEQA Guidelines, Section 15064.5) give direction and guidance for evaluation of properties for purposes of CEQA as well as the preparation of Categorical Exemptions, Negative Declarations and Environmental Impact Reports (see Appendix A for pertinent sections of the law). This section defines in general terms what types of property would be considered an "historical resource;" such a resource may include historic buildings, structures, districts, objects or sites. The table below categorizes properties by their particular listing in historic registers and surveys that pertain to the City and County of San Francisco. Continuing consultation by Major Environmental Analysis (MEA) staff with the Planning Department's Preservation Coordinator and the Neighborhood Planning Team's Preservation Technical Specialists during the entire planning and environmental review process is vital.

"Cultural Resources" in the CEQA Checklist include historical, architectural, archeological and paleontological elements as defined resources. These procedures, however, deal only with the historical structures, sites and architectural elements under environmental review and do not address archeological or paleontological resources. It should be noted that if a property is determined not to be an historical resource using Step 1 of this guidance, an environmental evaluation and documentation based on other aspects of the proposed project that have the potential for significant impacts to the environment, such as transportation or air quality, may still be required.

For the purposes of these procedures the term "historical resource" is used when the property meets the terms of the definitions in Section 21084.1 of the CEQA Statute and Section 15064.5 of the CEQA Guidelines. "Historical Resources" include properties listed in or formally determined eligible for listing in the California Register of Historical Resources, or listed in an adopted local historic register. The term "local historic register" or "local register of historical resources" means a list of resources that are officially designated or recognized as historically significant by a local government pursuant to resolution or ordinance. "Historical Resources" also includes resources identified as significant in an historical resource survey meeting certain criteria. Additionally, properties, which are not listed but are otherwise determined to be historically significant, based on substantial evidence, would also be considered "historical resources." **The Planning Department will consider any information submitted by members of the public, or analysis by Planning Department experts, when determining whether an otherwise unlisted property may be an historical resource.**

---

[1] The California Environmental Quality Act (CEQA) (Public Resources Code Sections 21000-21178) is the foundation of environmental policy and law in the state of California. It encourages the protection of all aspects of the environment (including historic resources - Section 21084.1) by requiring agencies to prepare informational documents on the environmental effects of a proposed action before carrying out any discretionary activities.

Under CEQA, evaluation of the potential for proposed projects to impact "historical resources" is a two-step process: the first is to determine whether the property is an "historical resource" as defined in Section 15064.5(a)(3) of CEQA; and, if it is an "historical resource," the second is to evaluate whether the action or project proposed by the sponsor would cause a "substantial adverse change" to the "historical resource."  The responses to these questions will have a bearing not only on the type of environmental documentation that will be necessary but also how the property will be analyzed.

## STEP 1 – Is the Property an "Historical Resource" Under CEQA?

The first step for an environmental evaluation is to determine whether the potential property fits the definition of an "historical resource" as defined in the CEQA Statutes and Guidelines.  The table below gives direction for making this determination and is divided into three major categories based on their evaluation and inclusion of specified registers or surveys:

### Category A – Historical Resources

**Category A.1 - Resources listed on or formally determined to be eligible for the California Register.**  These properties will be evaluated as historical resources for purposes of CEQA. Only the removal of the property's status as listed in or determined to be eligible for listing in the California Register of Historic Resources by the California Historic Resources Commission will preclude evaluation of the property as an historical resource under CEQA. See page 3 for further discussion.

**Category A.2 – Resources listed on adopted local registers, and properties that have been determined to appear or may become eligible, for the California Register.**  These properties will be evaluated as historical resources for purposes of CEQA.  Only a preponderance of the evidence demonstrating that the resource is not historically or culturally significant will preclude evaluation of the property as an historical resource.  In the case of Category A.2 resources included in an adopted survey or local register, generally the "preponderance of the evidence" must consist of evidence that the appropriate decision-maker has determined that the resource should no longer be included in the adopted survey or register.  Where there is substantiated and uncontroverted evidence of an error in professional judgment, of a clear mistake or that the property has been destroyed, this may also be considered a "preponderance of the evidence that the property is not an historical resource.[2]  See page 4 for further discussion.

**Category B - Properties Requiring Further Consultation and Review.**  Properties that do not meet the criteria for listing in Categories A.1 or A.2, but for which the City has information indicating that further consultation and review will be required for evaluation whether a property is an historical resource for the purposes of CEQA.  See page 5 for further discussion.

---

[2]  For those A.2 resources which are not on an adopted local register or survey, the "preponderance of the evidence" must consist of evidence that the property (1) no longer possesses those qualities which might have made it eligible for the California Register, or (2) additional information shows that the property could never meet the California Register's criteria, or (3) error in professional judgment shows that the property could not meet the California Register Criteria.

**Category C - Properties Determined Not To Be Historical Resources or Properties For Which The City Has No Information indicating that the Property is an Historical Resource.** Properties that have been affirmatively determined not to be historical resources, properties less than 50 years of age, and properties for which the City has no information indicating that the property qualifies as an historical resource. See page 7 for further discussion.

A property may be listed in more than one register or survey and may be included in more than one of the "historical resource" categories in the table below. For purposes of determining the property's treatment as a potential "historical resource," the property's highest category ranking shall prevail (with Category A being the highest and Category C being the lowest).

| Category A – Historical Resources | |
|---|---|
| **Category A.1 – Resources listed on or formally eligible for the California Register[3][4]** | |
| National Register of Historic Places (NRSC 1 or 2) | Either listed or formally determined eligible for listing in the National Register of Historic Places (National Register). These structures would appear in a list from the California Historic Resources Inventory System (CHRIS) database as having a National Register Status Code (NRSC) of 1 or 2, and are therefore automatically listed in the California Register. Interiors of National Register properties with a NRSC of 1 and 2 are "historical resources" if the nomination form calls out the interior as a character-defining feature of the resource. All National Historic Landmarks are listed in the National Register. |
| California Register of Historical Resources[5] | By definition anything listed in the California Register of Historical Resources (California Register) or formally determined eligible for listing in the California Register is an "historical resource" for purposes of CEQA. Interiors of California Register properties are "historical resources" if the nomination form calls out the interior as a character-defining feature of the resource. Note: All properties on the California Register are listed in the CHRIS database maintained by the Office of Historic Preservation (OHP). |
| Dogpatch Survey (NRSC 1 or 2) | All resources listed in this survey with NRSC of 1 or 2 are separately designated as such in the California Register and are "historical resources." |
| Central Waterfront Survey | All resources listed in this survey with NRSC of 1 or 2 are separately designated as such in the California Register and are "historical |

---

[3] See definition of Category A.1 above.

[4] Effective August 2003, in order to simplify and clarify the identification, evaluation, and understanding of California's historic resources and better promote their recognition and preservation, the (former) National Register status codes were revised to reflect the application of California Register and local criteria and the name was changed to "California Historical Resource Status Codes."

[5] The California Register automatically includes California Historic Landmarks number 770 and higher, and all properties formally listed in, or determined eligible for listing in the National Register of Historic Places (NRSC of 1 or 2). The California Register may also include Points of Historic Interest that have been reviewed and recommended for listing by the California Historical Resources Commission, as well as other individual resources, districts, etc. that are nominated and determined to be significant by the California Historical Resources Commission. Records of San Francisco resources on the National and California Resisters are kept in the CHRIS database at the Northwest Information Center at Sonoma State University (707) 664-2494.

4

| (NRSC 1 or 2) | resources." |
|---|---|
| North Beach Survey<br>(NRSC 1 or 2) | This survey was approved by Board of Supervisors in August 1999 by Resolution No. 772-99. It is, therefore, an adopted local register under CEQA. |

| **Category A.2 – Adopted local registers, and properties that have been determined to appear eligible, or which may become eligible for the California Register[6]** | |
|---|---|
| National Register of Historic Places<br>(NRSC 3, 4, or 5) | Properties listed in the CHRIS database as having an NRSC of 3 – "Appears eligible," 4 – "May become eligible for listing in the National Register"[7] or 5 – not eligible for the National Register but of "local interest" are presumed to be "historical resources." |
| California Register of Historical Resources[8] | Properties rated with a California Historical Resource Status Code (CHRSC) of 3 or 5 are presumed "historical resources." As of August 15, 2003, the OHP has reclassified NRSC 4s as CHRSC 7Ns or 7N1s. Therefore, NRSC 4s, which predate this change, are presumed "historical resources." |
| Article 10 of the Planning Code | Article 10 contains an adopted local register of historic resources. Individual landmarks and designated historic districts are identified as significant and are presumed to be "historical resources." In historic districts, properties with ratings of Contributory and Contributory - Altered are also presumed to be historic resources. Properties designated as non-contributory and non-compatible are not of themselves presumed to be historic resources. Any construction within an historic district will be evaluated to determine its effect on the historic district as the "historical resource." Interiors of Article 10 buildings are also "historical resources" if the designating ordinance identifies the interior as a feature that should be preserved. |
| Article 11 of the Planning Code<br>(Category I, II, III and IV Buildings) | Article 11 contains an adopted local register of historic resources in the C-3 (Downtown) district. Under Article 11, Category I and II Buildings are buildings that are "judged to be Buildings of Individual Importance" Category III and IV buildings are called out as "Contributory Buildings," both are presumed to be "historical resources." Article 11 contains designated conservation districts, which are also presumed significant. Any construction within a conservation district will be evaluated to determine its effect on the district as the "historical resource." Interiors of Article 11 buildings are also "historical resources" if the designating ordinance calls out the interior as a feature that should be preserved. |

---

[6] See definition of Category A.2 on page 2.

[7] As of August 15, 2003, the OHP has reclassified NRSC 4s as CHRSC 7Ns or 7N1s. Therefore, NRSC 4s, which predate this change, are presumed "historical resources."

[8] See Footnote 2.

| Here Today | The findings of this survey were adopted by the Board of Supervisors on May 11, 1970; Resolution No. 268-70. It is, therefore, an adopted local register under CEQA. (Note: this designation covers the text and appendix of the book *Here Today* as selected from the full survey). |
| --- | --- |
| Dogpatch Survey (NRSC 3, 4 or 5) | This survey was endorsed by the Planning Commission on December 13, 2001 by Motion No. 16300. It is, therefore, an adopted local register under CEQA. All resources listed in this survey with NRSC of 3, 4[9] or 5 are presumed to be "historical resources." |
| Central Waterfront Survey (NRSC 3, 4 or 5) | This survey was endorsed by the Planning Commission on June 13, 2002 by Motion No. 16431. It is, therefore, an adopted local register under CEQA. All resources listed in this survey with NRSC of 3, 4[10] or 5 are presumed to be "historical resources." |
| North Beach Survey (NRSC 3, 4, or 5) | This survey was approved by Board of Supervisors in August 1999 by Resolution No. 772-99. It is, therefore, an adopted local register under CEQA. All resources listed in this survey with NRSC of 3, 4[11] or 5 are presumed to be "historical resources." |

| Category B – Properties Requiring Further Consultation and Review[12] | |
| --- | --- |
| National Register (NRSC 7) and California Register (CHRSC 7) | Buildings that are listed in the CHRIS database as having a NRSC/CHRSC of 7 – "Not evaluated" or which have a temporary designation NRSC/CHRSC of 7 while waiting for evaluation from the State Office of Historic Preservation will need additional investigation to determine what the underlying information/evidence is regarding its historic status. |
| General Plan-referenced Buildings | Properties identified as having historic status in the General Plan could be considered as "historical resources" because elements of the General Plan are considered "local registers of historical resources." Note: each Area Plan within General Plan has varying degrees of information regarding historic resources. Additional consultation will be required; additional research may be needed. |
| Structures of Merit | Created by Section 1011 of the Planning Code, Structures of Merit must have Planning Commission approval. These properties are recognized structures of historical, architectural or aesthetic merit, which have <u>not</u> been designated as landmarks and are <u>not</u> situated in designated historic districts. Additional consultation will be required; additional information may be needed. |

---

[9] See Footnote 6.
[10] Ibid.
[11] Ibid.
[12] See definition of Category B on page 2.

| 1976 Architectural Survey | The properties marked "AS" in the block books and in the Parcel Information Database system were assessed for architectural merit but other elements of historic significance might not have been considered. An "AS" rating is an indication that the Department has additional information on the building but not that the building is an "historical resource" under CEQA. Additional research will be required to determine whether a property identified solely as "AS" qualifies as an "historical resource." |
|---|---|
| San Francisco Architectural Heritage Surveys[13] | San Francisco Architectural Heritage (Heritage) has completed a number of surveys in selected areas of the City. These surveys provide informational materials but do not qualify as adopted local registers for purposes of CEQA. Additional research may be required to determine whether properties included in Heritage surveys qualify as "historical resources." Note: many of the properties surveyed and rated by Heritage appear in other surveys and inventories, and may be considered by CEQA as "historical resources" on the basis of those other evaluations. |
| Properties More than 50 Years Old Proposed for Demolition or Major Alteration[14] [15] | Properties more than 50 years of age and proposed for demolition or major alteration will have additional information requested. The additional research will be required to determine whether they meet the California Register criteria and qualify as "historical resources" for the purposes of CEQA. |
| Unreinforced Masonry Buildings (UMB) Survey | This survey is a compilation of previous studies with new information provided on specific properties. The determination of whether the property is an "historical resource" needs to be made from original source material and/or listings and surveys. |
| 1968 Junior League Survey (used as the basis of Here Today book) | Not all buildings surveyed in 1968 were selected to be included in the book Here Today; however, their survey forms can be reviewed at the San Francisco Main Public Library and need to be evaluated. |
| Informational Surveys | Over the years, the Planning Department and other groups interested in historic preservation have conducted a number of surveys (studies and/or inventories). These surveys, listed in Appendix D, have not been formally adopted or endorsed, but are another valuable source of information when determining if a property could be an "historical resource" under CEQA. |

[13] This category includes the Heritage rating "D – Of Minor /No Importance," and the initial research needs to ascertain if the property is in the "no importance" segment; these may very well not be historical resources under CEQA.

[14] If the proposed project includes a demolition in this category, a request for information will be sent to the project sponsor and the response will be evaluated by the quadrant's technical preservation specialist.

[15] These CEQA review procedures have adopted the definition of "demolition" contained in Planning Code Section 1005(f) and the definition of "major alteration" contained in Planning Code Section 1111.1.

| California Register (CHRSC 6) | Buildings having a NRSC/CHRSC of 6 that were surveyed before the year 2000. |
| Article 11 (Category V) | In Article 11, buildings that are "Category V - Unrated," i.e., not designated as either Significant (Category I and II) or Contributory (Category III and IV)." |

| **Category C – Properties Determined Not To Be Historical Resources/ Properties For Which The City Has No Information Indicating That The Property is an Historical Resource[16]** | |
| National Register (NRSC 6) and California Register (CHRSC 6) properties that were surveyed after year 2000 | Buildings that are listed in the CHRIS database having a NRSC/CHRSC of 6 - "Determined ineligible" for the National Register would need credible evidence/research presented by a qualified expert to be considered "historical resources." |

**Summary of Table**

Therefore, in looking at the table above:

**Category A.1** – Properties will be evaluated as historical resources. Only the removal of the property's status as listed in or determined to be eligible for listing in the California Register of Historic Resources by the California Historic Resources Commission will preclude evaluation of the property as an historical resource under CEQA.

A property listed on the California Register of Historic Resources can be removed from the California Register. The State Historical Resources Commission is empowered to remove from the California Register a resource that through demolition, alteration, or loss of integrity has lost its historic qualities or potential to yield information, or that new information or analysis shows was not eligible for the California Register at the time of its listing.

A property listed on the National Register of Historic Places can be removed from the National Register. The Keeper of the National Register is empowered to remove from the Register a resource that has ceased to meet the criteria for listing on the National Register through the loss or destruction of its historic qualities, that has been shown through additional information not to meet National Register criteria for listing, that has been shown to have been listed due to an error in professional judgment, or that has been shown to have been listed after the commission of prejudicial error in the nomination or listing process.[17]

**Category A.2** – Properties will be evaluated as historical resources. The A.2 category is primarily composed of properties that are listed in a local register of historical resources, as defined by Public Resources Code Section 5020.1(k), or identified as significant (status codes 1-5)

---

[16] See the definition of Category C on page 2.
[17] Those wishing to have a property removed from the California or National Register should contact the State Office of Historic Preservation for more information on how this may be done.

in an historical resource survey meeting the requirements of Public Resources Code Section 5024.1(g). Only a preponderance of the evidence demonstrating that the resource is not historically or culturally significant will preclude evaluation of the property as an historical resource. In the case of Category A.2 resources included in an adopted survey or local register, generally the "preponderance of the evidence" must consist of evidence that the appropriate decision-maker has determined that the resource should no longer be included in the adopted survey or register. Where there is substantiated and uncontroverted evidence of an error in professional judgment, of a clear mistake, or that property has been destroyed, this may also be considered a "preponderance of the evidence" that the property is not an historical resource.[18]

**Category B** – After further review those properties deemed significant pursuant to the criteria in Public Resources Code Section 5024.1 will be evaluated as historical resources. MEA will request that the Neighborhood Planning Team's Preservation Technical Specialists review each property in this category to determine if the property could be deemed significant pursuant to the criteria provided in Public Resources Code Section 5024.1(c). [See attached copies of statute and its accompanying California Regulation, Title 14, Section 4852.]

**Category C** – Absent additional information provided to the City, as discussed below, that a property is significant pursuant to the criteria in Public Resources Code Section 5024.1, properties in this category will not be evaluated as historical resources.

The Planning Department, particularly if a property falls in Category B above, may request additional information to assist in the determination whether that property is an historical resource for purposes of CEQA and/or to aid in the evaluation of the effects a proposed project may have on an historical resource. A *Supplemental Information Form* asking for information such as previous owners, original architect and construction history may be sent to the project sponsor. See Appendix B for a copy of the form and the guidance "How to Document a Building." In some cases, the project sponsor will be required, as a part of the environmental process, to have an *Historical Resource Evaluation Report* prepared by a qualified professional of architectural history (or a closely related field such as historic preservation) after Planning Department approval of a scope of work for the proposed project. (See Appendix C for further information on the requirements and process for these reports.)

**Context Statements**
There are a number of historical context statements that have been adopted by the Landmarks Preservation Advisory Board that are not "adopted local registers," but can be a valuable informational source when determining whether a property is an "historical resource" under CEQA. If there is such a statement for the property type or area in which the proposed project is located, the environmental planner should refer to the context statement for additional historic information.

---

[18] For those A.2 resources which are not on an adopted local register or survey, the "preponderance of the evidence" must consist of evidence that the property (1) no longer possesses those qualities which might have made it eligible for the California Register, or (2) additional information shows that the property could never meet the California Register's criteria, or (3) an error in professional judgment shows that the property could not meet the California Register criteria.

9

**Additional Information**

As noted on page 1, the Planning Department as a part of the environmental review process or at any other time, will accept any additional substantiated information that may be provided by interested parties about the eligibility of a property to be identified as an "historical resource" under CEQA, i.e., information regarding to property's ability to meet the criteria for listing in the California Register. For Category A.1, the property would have to be "delisted" from the National Register or the California Register before MEA would consider the property not to be an "historical resource." For properties in Category A.2, the information would have to show by "a preponderance of the evidence" that the presumed historical resource should not be considered as an historical resource. In the case of Category A.2 resources included in an adopted survey or local register, generally the "preponderance of the evidence" must consist of evidence that the appropriate decision-maker has determined that the resource should no longer be included in the adopted survey or register. Where there is substantiated and incontrovertible evidence of an error in professional judgment, of a clear mistake, or that property has been destroyed, this may also be considered a "preponderance of the evidence" that the property is not an historical resource.

If submitted information, after review by the Planning Department's Preservation Technical Specialist, is deemed sufficient, the property may be reevaluated as an "historical resource." The Preservation Technical Specialist shall use the MEA Summary Sheet for *Historical Resource Evaluation* when completing the reevaluation process. A property may be considered "historically significant," and therefore an "historical resource," if it meets the criteria for listing in the California Register of Historical Resources, pursuant to 15064.5(a)(3) of the CEQA guidelines.

Interested parties who are providing historical information should submit such information to the Planning Department – the MEA environmental planner or Environmental Review Officer if there is an on-going environmental application or the Preservation Coordinator if there is no current application. In any cases where there are differing opinions as to whether or not a property is an "historical resource," for purposes of CEQA, the Planning Department will evaluate the evidence before it and shall make the final determination based upon such evaluation of evidence.

## STEP 2 – Will the Project have a Substantial Adverse Change? (What Type of Environmental Document?)

After determining that a property is an "historical resource" for the purposes of CEQA, the next step is to determine if the proposed project could cause a substantial adverse change in the significance of an historical resource. CEQA defines a "substantial adverse change" as the physical demolition, destruction, relocation or alteration of the historical resource or its immediate surroundings such that the significance of an historical resource would be materially impaired. CEQA goes on to define "materially impaired" as work that materially alters, in an adverse manner, those physical characteristics that convey the resource's historical significance and justify its inclusion in the California Register of Historic Places, a local register of historical resources, or an historical resource survey.

If the resource has not been listed on any register or survey but nonetheless is found to be an historical resource, the City shall determine whether a proposed project materially impairs those physical characteristics that convey the resource's historical significance for the purposes of CEQA. Once this determination has been made, the type of environmental documentation needed for the proposed project can be determined. The environmental planner in consultation with the preservation technical specialists will determine whether the project, as defined by the project sponsor, causes a substantial adverse change in the significance of the historical resource.

It should be noted that projects involving new construction in an "Historical District," the major alteration or the demolition and replacement of a property that is *not* an historical resource but is located within an historic district will require evaluation under CEQA to determine if the project could have a substantial adverse change on the significance of the overall historic district.

A proposed project on an historical resource will be evaluated to determine if it qualifies for a categorical exemption under Class 31 (CEQA Guidelines Section 15331), if the project requires the preparation of a Negative Declaration or a Mitigated Negative Declaration, or requires the completion of an Environmental Impact Report. Normally, a project will qualify for a categorical exemption if the change or alternation is minor and if the implementation of the alteration will meet the Secretary of the Interior's Standards for rehabilitation of historic structures.

In order to qualify for a Class 31 exemption, the proposed work must be (1) limited to maintenance, repair, stabilization, rehabilitation, restoration, preservation, conservation or reconstruction of an historical resource and (2) consistent with the Secretary of the Interior's Standards for the Treatment of Historic Properties as set forth in CEQA Guidelines Section 15331. If the proposed project consists of other kind of work on or alteration to an historical resource, including an addition, it may still qualify for another categorical exemption as long as it is demonstrated that there is no substantial adverse change to the historical resource. If the proposed project does not qualify for a categorical exemption, a negative declaration (or mitigated negative declaration) will be prepared as long as it can be shown that there is no substantial adverse change to an historical resource, or that any changes can be mitigated. CEQA Guidelines Section 15064.5(b)(3) considers any adverse impacts to be mitigated if the project follows the Secretary of the Interior's Standards for the Treatment of Historic Properties. Finally, an EIR will be prepared if it cannot be demonstrated with certainty that there will be no substantial adverse change to the historical resource.

For example, an historical resource on the California Register of Historic Places will be evaluated to determine if the proposed project will demolish, destroy, relocate or alter those physical characteristics which convey the resource's historical significance and which justify its inclusion in the California Register of Historic Places. If the proposed project will not create a substantial adverse change, a categorical exemption or a negative declaration will be appropriate. If the proposed project will cause a substantial adverse change, the City must determine if this impact can or cannot be mitigated. If it can be mitigated, a mitigated negative declaration is appropriate. If it cannot be mitigated, an Environmental Impact Report must be prepared. In making a determination regarding the form of environmental documentation, the environmental planner will keep in mind that the effects of the environmental factors of the proposed project other than historical may also

determine if an EIR, a Negative Declaration or a Categorical Exemption is the appropriate environmental document.

It should be noted that as a general rule, a significant impact is considered mitigated if the property follows the Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring, and Reconstructing Historic Buildings or the Secretary of Interior's Standards for Rehabilitation and Guidelines for Rehabilitating Historic Buildings (1995) Weeks and Grimmer; and the Department's Residential Design Guidelines, which contain an illustrated section, *Special Guidelines for Alterations to Buildings of Potential Historic or Architectural Merit*. Additional mitigation measures may be appropriate for a particular project and will be considered.

All formal evaluation and determination requests from MEA staff members to the Preservation Technical Specialists needs to be logged in by the MEA staff and sent to the Preservation Coordinator. The Preservation Coordinator will track the progress of requests for historic determinations or evaluations. Day-to-day project review and consultation between MEA staff and the Preservation Technical Specialists does not need to be routed through the Preservation Coordinator.

## NOTIFICATION

Before Environmental Document is Prepared
When MEA is sending out a "Notification of a Project Receiving Environmental Review" (i.e., a Neighborhood Notice, which is sent if a Class 32 Categorical Exemption or Negative Declaration is being prepared) or a "Notice that an EIR is Required" regarding a proposed project that includes demolition or reconstruction to an existing structure that is included in Categories A.1, A.2, or B areas, the notice should be sent to the individuals and groups on the "Historic Preservation Interested Parties" list and those who have requested notice by a Block Book Notation.[19] Historic Preservation Interested Parties list will be kept current and parties will be added or deleted at their request.

After Determination of Exclusions and Categorical Exemptions
For those projects that are excluded or categorically exempt from CEQA, Chapter 31 of the City's Administrative Code (Section 31.08 (f)) requires notice to the public of "all such determinations involving the following types of projects:

---

[19]  Groups or individuals interested in specific properties may receive project notices by requesting a Block Book Notation from the Planning Department.  This notation will provide for the sending of notices on all permit and environmental review applications for a specific lot or group of lots.  There is a nominal fee for this service.  For an additional charge per lot, notice can be provided for permits on all lots of an assessor's block.

(1) any "historical resources" as defined in CEQA, including without limitation, any buildings and sites listed individually or located within districts listed:

    (i) in Planning Code Articles 10 or 11,

    (ii) in City-recognized historical surveys,

    (iii) on the California Register, or

    (iv) on the National Register of Historic Places;

(2) any Class 31 categorical exemption (Section 15331, CEQA Guidelines);

(3) any demolition of an existing structure; or,

(4) any Class 32 categorical exemption (Section 15332, CEQA Guidelines)."

This notice is provided by posting in the offices of the Planning Department (at the Planning Information Center counter, 1660 Mission Street) and by regular mail to any individuals or organizations that have previously requested such notice in writing following such determination.

# APPENDIX A

**Relevant Statutes and Regulations**

**CEQA Statute**

**§21084.1.  Historical resource; substantial adverse change**

A project that may cause a substantial adverse change in the significance of an historical resource is a project that may have a significant effect on the environment.  For purposes of this section, an historical resource is a resource listed in, or determined to be eligible for listing in, the California Register of Historical Resources.  Historical resources included in a local register of historical resources, as defined in subdivision (k) of Section 5020.1, or deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1, are presumed to be historically or culturally significant for purposes of this section, unless the preponderance of the evidence demonstrates that the resource is not historically or culturally significant.  The fact that a resource is not listed in, or determined to be eligible for listing in, the California Register of Historical Resources, not included in a local register of historical resources, or not deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1 shall not preclude a lead agency from determining whether the resource may be an historical resource for purposes of this section.[20]

**CEQA Guidelines**

**§15064.5. Determining the Significance of Impacts to Archeological and Historical Resources**

(a) For purposes of this section, the term "historical resources" shall include the following:

    (1) A resource listed in, or determined to be eligible by the State Historical Resources Commission, for listing in the California Register of Historical Resources (Pub. Res. Code SS5024.1, Title 14 CCR, Section 4850 et seq.).

    (2) A resource included in a local register of historical resources, as defined in section 5020.1(k) of the Public Resources Code or identified as significant in an historical resource survey meeting the requirements section 5024.1(g) of the Public Resources Code, shall be presumed to be historically or culturally significant.  Public agencies must treat any such resource as significant unless the preponderance of evidence demonstrates that it is not historically or culturally significant.

    (3) Any object, building, structure, site, area, place, record, or manuscript which a lead agency determines to be historically significant or significant in the architectural, engineering, scientific, economic, agricultural, educational, social, political, military, or cultural annals of California may be considered to be an historical resource, provided the lead agency's determination is supported by substantial evidence in light of the whole record. Generally, a

---

[20] State of California "Public Resources Code" Sections 21000 – 21178; the California Environmental Quality Act (as amended January 1, 2004).

resource shall be considered by the lead agency to be "historically significant" if the resource meets the criteria for listing on the California Register of Historical Resources (Pub. Res. Code SS5024.1, Title 14 CCR, Section 4852) including the following:

(A) Is associated with events that have made a significant contribution to the broad patterns of California's history and cultural heritage;

(B) Is associated with the lives of persons important in our past;

(C) Embodies the distinctive characteristics of a type, period, region, or method of construction, or represents the work of an important creative individual, or possesses high artistic values; or

(D) Has yielded, or may be likely to yield, information important in prehistory or history.

(4) The fact that a resource is not listed in, or determined to be eligible for listing in the California Register of Historical Resources, not included in a local register of historical resources (pursuant to section 5020.1(k) of the Public Resources Code), or identified in an historical resources survey (meeting the criteria in section 5024.1(g) of the Public Resources Code) does not preclude a lead agency from determining that the resource may be an historical resource as defined in Public Resources Code Sections 5020.1(j) or 5024.1.

(b) A project with an effect that may cause a substantial adverse change in the significance of an historical resource is a project that may have a significant effect on the environment.

(1) Substantial adverse change in the significance of an historical resource means physical demolition, destruction, relocation, or alteration of the resource or its immediate surroundings such that the significance of an historical resource would be materially impaired.

(2) The significance of an historical resource is materially impaired when a project:

(A) Demolishes or materially alters in an adverse manner those physical characteristics of an historical resource that convey its historical significance and that justify its inclusion in, or eligibility for, inclusion in the California Register of Historical Resources; or

(B) Demolishes or materially alters in an adverse manner those physical characteristics that account for its inclusion in a local register of historical resources pursuant to section 5020.1(k) of the Public Resources Code or its identification in an historical resources survey meeting the requirements of section 5024.1(g) of the Public Resources Code, unless the public agency reviewing the effects of the project establishes by a preponderance of evidence that the resource is not historically or culturally significant; or

(C) Demolishes or materially alters in an adverse manner those physical characteristics of a historical resource that convey its historical significance and that justify its eligibility for inclusion in the California Register of Historical Resources as determined by a lead agency for purposes of CEQA.

(3) Generally, a project that follows the *Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring, and Reconstructing Historic Buildings or the Secretary of the Interior's Standards for Rehabilitation and Guidelines for*

*Rehabilitating Historic Buildings (1995), Weeks and Grimmer* shall be considered as mitigated to a level of less than a significant impact on the historical resource.

(4) A lead agency shall identify potentially feasible measures to mitigate significant adverse changes in the significance of an historical resource. The lead agency shall ensure that any adopted measures to mitigate or avoid significant adverse changes are fully enforceable through permit conditions, agreements, or other measures.

(5) When a project will affect state-owned historical resources, as described in Public Resources Code Section 5024, and the lead agency is a state agency, the lead agency shall consult with the State Historic Preservation Officer as provided in Public Resources Code Section 5024.5. Consultation should be coordinated in a timely fashion with the preparation of environmental documents.

(c) CEQA applies to effects on archaeological sites.

(1) When a project will impact an archaeological site, a lead agency shall first determine whether the site is an historical resource, as defined in subsection (a).

(2) If a lead agency determines that the archaeological site is an historical resource, it shall refer to the provisions of Section 21084.1 of the Public Resources Code, and this section, Section 15126.4 of the Guidelines, and the limits contained in Section 21083.2 of the Public Resources Code do not apply.

(3) If an archaeological site does not meet the criteria defined in subsection (a), but does meet the definition of a unique archeological resource in Section 21083.2 of the Public Resources Code, the site shall be treated in accordance with the provisions of section 21083.2. The time and cost limitations described in Public Resources Code Section 21083.2 (c-f) do not apply to surveys and site evaluation activities intended to determine whether the project location contains unique archaeological resources.

(4) If an archaeological resource is neither a unique archaeological nor an historical resource, the effects of the project on those resources shall not be considered a significant effect on the environment. It shall be sufficient that both the resource and the effect on it are noted in the Initial Study or EIR, if one is prepared to address impacts on other resources, but they need not be considered further in the CEQA process.

(d) When an initial study identifies the existence of, or the probable likelihood, of Native American human remains within the project, a lead agency shall work with the appropriate Native Americans as identified by the Native American Heritage Commission as provided in Public Resources Code SS5097.98. The applicant may develop an agreement for treating or disposing of, with appropriate dignity, the human remains and any items associated with Native American burials with the appropriate Native Americans as identified by the Native American Heritage Commission. Action implementing such an agreement is exempt from:

(1) The general prohibition on disinterring, disturbing, or removing human remains from any location other than a dedicated cemetery (Health and Safety Code Section 7050.5).

(2) The requirements of CEQA and the Coastal Act.

(e) In the event of the accidental discovery or recognition of any human remains in any location other than a dedicated cemetery, the following steps should be taken:

(1) There shall be no further excavation or disturbance of the site or any nearby area reasonably suspected to overlie adjacent human remains until:

(A) The coroner of the county in which the remains are discovered must be contacted to determine that no investigation of the cause of death is required, and

(B) If the coroner determines the remains to be Native American:

1. The coroner shall contact the Native American Heritage Commission within 24 hours.

2. The Native American Heritage Commission shall identify the person or persons it believes to be the most likely descended from the deceased Native American.

3. The most likely descendent may make recommendations to the landowner or the person responsible for the excavation work, for means of treating or disposing of, with appropriate dignity, the human remains and any associated grave goods as provided in Public Resources Code Section 5097.98, or

(2) Where the following conditions occur, the landowner or his authorized representative shall rebury the Native American human remains and associated grave goods with appropriate dignity on the property in a location not subject to further subsurface disturbance.

(A) The Native American Heritage Commission is unable to identify a most likely descendent or the most likely descendent failed to make a recommendation within 24 hours after being notified by the commission.

(B) The descendant identified fails to make a recommendation; or

(C) The landowner or his authorized representative rejects the recommendation of the descendant, and the mediation by the Native American Heritage Commission fails to provide measures acceptable to the landowner.

(f) As part of the objectives, criteria, and procedures required by Section 21082 of the Public Resources Code, a lead agency should make provisions for historical or unique archaeological resources accidentally discovered during construction. These provisions should include an immediate evaluation of the find by a qualified archaeologist. If the find is determined to be an historical or unique archaeological resource, contingency funding and a time allotment sufficient to allow for implementation of avoidance measures or appropriate mitigation should be available. Work could continue on other parts of the building site while historical or unique archaeological resource mitigation takes place.

**Note:** Authority: Sections 21083 and 21087, Public Resources Code. Reference: Sections 21083.2, 21084, and 21084.1, Public Resources Code; *Citizens for Responsible Development in West Hollywood v. City of West Hollywood* (1995) 39 Cal.App.4th 490.

**Discussion:** This section establishes rules for the analysis of historical resources, including archaeological resources, in order to determine whether a project may have a substantial adverse

effect on the significance of the resource. This incorporates provisions previously contained in Appendix K of the Guidelines. Subsection (a) relies upon the holding in League for Protection of Oakland's Architectural and Historic Resources v. City of Oakland (1997) 52 Cal.App.4th 896 to describe the relative significance of resources which are listed in the California Register of Historical Resources, listed in a local register or survey or eligible for listing, or that may be considered locally significant despite not being listed or eligible for listing. Subsection (b) describes those actions which have substantial adverse effects. Subsection (c) describes the relationship between historical resources and archaeological resources, as well as limits on the cost of mitigating impacts on unique archaeological resources. Subsections (d) and (e) discuss the protocol to be followed if Native American or other human remains are discovered.

From: California Code of Regulations, Title 14, Chapter 3; Guidelines for California Environmental Quality Act.

## Public Resources Code Sections 5020.1 and 5024.1

5020.1. As used in this article:

(a) "California Register" means the California Register of Historical Resources.

(b) "Certified local government" means a local government that has been certified by the National Park Service to carry out the purposes of the National Historic Preservation Act of 1966 (16 U.S.C. Sec. 470 et seq.) as amended, pursuant to Section 101(c) of that act and the regulations adopted under the act which are set forth in Part 61 (commencing with Section 61.1) of Title 36 of the Code of Federal Regulations.

(c) "Commission" means the State Historical Resources Commission.

(d) "Department" means the Department of Parks and Recreation.

(e) "Director" means the Director of Parks and Recreation.

(f) "DPR Form 523" means the Department of Parks and Recreation Historic Resources Inventory Form.

(g) "Folklife" means traditional expressive culture shared within familial, ethnic, occupational, or regional groups and includes, but is not limited to, technical skill, language, music, oral history, ritual, pageantry, and handicraft traditions which are learned orally, by imitation, or in performance, and are generally maintained without benefit of formal instruction or institutional direction. However, "folklife" does not include an area or a site solely on the basis that those activities took place in that area or on that site.

(h) "Historic district" means a definable unified geographic entity that possesses a significant concentration, linkage, or continuity of sites, buildings, structures, or objects united historically or aesthetically by plan or physical development.

(i) "Historical landmark" means any historical resource which is registered as a state historical landmark pursuant to Section 5021.

(j) "Historical resource" includes, but is not limited to, any object, building, structure, site, area, place, record, or manuscript which is historically or archaeologically significant, or is significant in

the architectural, engineering, scientific, economic, agricultural, educational, social, political, military, or cultural annals of California.

(k) "Local register of historical resources" means a list of properties officially designated or recognized as historically significant by a local government pursuant to a local ordinance or resolution.

(l) "National Register of Historic Places" means the official federal list of districts, sites, buildings, structures, and objects significant in American history, architecture, archaeology, engineering, and culture as authorized by the National Historic Preservation Act of 1966 (16 U.S.C. Sec. 470 et seq.).

(m) "Office" means the State Office of Historic Preservation.

(n) "Officer" means the State Historic Preservation Officer.

(o) "Point of historical interest" means any historical resource which is registered as a point of historical interest pursuant to Section 5021.

(p) "State Historic Resources Inventory" means the compilation of all identified, evaluated, and determined historical resources maintained by the office and specifically those resources evaluated in historical resource surveys conducted in accordance with criteria established by the office, formally determined eligible for, or listed in, the National Register of Historic Places, or designated as historical landmarks or points of historical interest.

(q) "Substantial adverse change" means demolition, destruction, relocation, or alteration such that the significance of an historical resource would be impaired.

## Public Resource Code Section 5024.1

5024.1. (a) A California Register of Historical Resources is hereby established. The California Register is an authoritative guide in California to be used by state and local agencies, private groups, and citizens to identify the state's historical resources and to indicate what properties are to be protected, to the extent prudent and feasible, from substantial adverse change. The commission shall oversee the administration of the California Register.

(b) The California Register shall include historical resources determined by the commission, according to procedures adopted by the commission, to be significant and to meet the criteria in subdivision (c).

(c) A resource may be listed as an historical resource in the California Register if it meets any of the following National Register of Historic Places criteria:

(1) Is associated with events that have made a significant contribution to the broad patterns of California's history and cultural heritage.

(2) Is associated with the lives of persons important in our past.

(3) Embodies the distinctive characteristics of a type, period, region, or method of construction, or represents the work of an important creative individual, or possesses high artistic values.

(4) Has yielded, or may be likely to yield, information important in prehistory or history.

(d) The California Register shall include the following:

(1) California properties formally determined eligible for, or listed in, the National Register of Historic Places.

(2) State Historical Landmark No. 770 and all consecutively numbered state historical landmarks following No. 770. For state historical landmarks preceding No. 770, the office shall review their eligibility for the California Register in accordance with procedures to be adopted by the commission.

(3) Points of historical interest which have been reviewed by the office and recommended for listing by the commission for inclusion in the California Register in accordance with criteria adopted by the commission.

(e) If nominated for listing in accordance with subdivision (f), and determined to be significant by the commission, the California Register may include the following:

(1) Individual historical resources.

(2) Historical resources contributing to the significance of an historic district under criteria adopted by the commission.

(3) Historical resources identified as significant in historical resources surveys, if the survey meets the criteria listed in subdivision (g).

(4) Historical resources and historic districts designated or listed as city or county landmarks or historic properties or districts pursuant to any city or county ordinance, if the criteria for designation or listing under the ordinance have been determined by the office to be consistent with California Register criteria adopted by the commission.

(5) Local landmarks or historic properties designated under any municipal or county ordinance.

(f) A resource may be nominated for listing as an historical resource in the California Register in accordance with nomination procedures adopted by the commission, subject to all of the

following:

(1) If the applicant is not the local government in whose jurisdiction the resource is located, a notice of nomination in the form prescribed by the commission shall first be submitted by the

applicant to the clerk of the local government. The notice shall request the local government to join in the nomination, to provide comments on the nomination, or if the local government declines to join in the nomination or fails to act upon the notice of nomination within 90 days, the nomination may be submitted to the office and shall include any comments of the local government.

(2) Prior to acting on the nomination of a survey, an individual resource, an historic district, or other resource to be added to the California Register, the commission shall notify property owners, the local government in which the resource is located, local agencies, other interested persons, and members of the general public of the nomination and provide not less than 60 calendar days for comment on the nomination. The commission shall consider those comments in determining whether to list the resource as an historical resource in the California Register.

(3) If the local government objects to the nomination, the commission shall give full and careful consideration to the objection before acting upon the nomination.  Where an objection has been raised, the commission shall adopt written findings to support its determination concerning the nomination.  At a minimum, the findings shall identify the historical or cultural significance of the resource, and, if applicable, the overriding significance of the resource that has resulted in the resource being listed in the California Register over the objections of the local government.

(4) If the owner of a private property or the majority of owners for an historic district or single property with multiple owners object to the nomination, the commission shall not list the property as an historical resource in the California Register until the objection is withdrawn.  Objections shall be submitted to the commission by the owner of the private property in the form of a notarized statement certifying that the party is the sole or partial owner of the property, and that the party objects to the listing.

(5) If private property cannot be presently listed in the California Register solely because of owner objection, the commission shall nevertheless designate the property as eligible for listing.

(g) A resource identified as significant in an historical resource survey may be listed in the California Register if the survey meets all of the following criteria:

(1) The survey has been or will be included in the State Historic Resources Inventory.

(2) The survey and the survey documentation were prepared in accordance with office procedures and requirements.

(3) The resource is evaluated and determined by the office to have a significance rating of Category 1 to 5 on DPR Form 523.

(4) If the survey is five or more years old at the time of its nomination for inclusion in the California Register, the survey is updated to identify historical resources which have become eligible or ineligible due to changed circumstances or further documentation and those which have been demolished or altered in a manner that substantially diminishes the significance of the resource.

(h) Upon listing an historical resource or determining that a property is an historical resource that is eligible for listing, in the California Register, the commission shall notify any owner of the historical resource and also the county and city in which the historical resource is located in accordance with procedures adopted by the commission.

(i) The commission shall adopt procedures for the delisting of historical resources which become ineligible for listing in the California Register.

**From:**  California Public Resources Code; Sections 5020-5029.5

## Chapter 11.5. California Register of Historical Resources

## Section 4852. Types of Historical Resources and Criteria for Listing

The criteria for listing historical resources in the California Register are consistent with those developed by the National Park Service for listing historical resources in the National Register, but have been modified for state use in order to include a range of historical resources which better reflect the history of California. Only resources which meet the criteria as set out below may be listed in or formally determined eligible for listing in the California Register.

(a) Types of resources eligible for nomination:

(1) Building. A resource, such as a house, barn, church, factory, hotel, or similar structure created principally to shelter or assist in carrying out any form of human activity. "Building" may also be used to refer to an historically and functionally related unit, such as a courthouse and jail or a house and barn;

(2) Site. A site is the location of a significant event, a prehistoric or historic occupation or activity, or a building or structure, whether standing, ruined, or vanished, where the location itself possesses historical, cultural, or archeological value regardless of the value of any existing building, structure, or object. A site need not be marked by physical remains if it is the location of a prehistoric event, and if no buildings, structures, or objects marked it at that time. Examples of such sites are trails, designed landscapes, battlefields, habitation sites, Native American ceremonial areas, petroglyphs, and pictographs;

(3) Structure. The term "structure" is used to describe a construction made for a functional purpose rather than creating human shelter. Examples of structures include mines, bridges, and tunnels;

(4) Object. The term "object" is used to describe those constructions that are primarily artistic in nature or are relatively small in scale and simply constructed, as opposed to a building or a structure. Although it may be moveable by nature or design, an object is associated with a specific setting or environment. Objects should be in a setting appropriate to their significant historic use, role, or character. Objects that are relocated to a museum are not eligible for listing in the California Register. Examples of objects include fountains, monuments, maritime resources, sculptures, and boundary markers; and

(5) Historic district. Historic districts are unified geographic entities which contain a concentration of historic buildings, structures, objects, or sites united historically, culturally, or architecturally. Historic districts are defined by precise geographic boundaries. Therefore, districts with unusual boundaries require a description of what lies immediately outside the area, in order to define the edge of the district an to explain the exclusion of adjoining areas. The district must meet at least one of the criteria for significance discussed in Section 4852(b)(1)-(4) of this chapter.

Those individual resources contributing to the significance of the historic district will also be listed in the California Register. For this reason, all individual resources located within the boundaries of an historic district must be designated as either contributing or as noncontributing to the significance of the historic district.

(b) Criteria for evaluating the significance of historical resources. An historical resource must be significant at the local, state, or national level under one or more of the following four criteria:

(1) It is associated with events that have made a significant contribution to the broad patterns of local or regional history, or the cultural heritage of California or the United States;

(2) It is associated with the lives of persons important to local, California, or national history;

(3) It embodies the distinctive characteristics of a type, period, region, or method of construction, or represents the work of a master or possesses high artistic values; or

(4) It has yielded, or has the potential to yield, information important to the prehistory or history of the local area, California, or the nation.

(c) Integrity. Integrity is the authenticity of an historical resource's physical identity evidenced by the survival of characteristics that existed during the resource's period of significance. Historical resources eligible for listing in the California Register must meet one of the criteria of significance described in Section 4852(b) of this chapter and retain enough of their historic character or appearance to be recognizable as historical resources and to convey the reasons for their significance. Historical resources that have been rehabilitated or restored may be evaluated for listing.

Integrity is evaluated with regard to the retention of location, design, setting, materials, workmanship, feeling, and association. It must also be judged with reference to the particular criteria under which a resource is proposed for eligibility. Alterations over time to a resource or historic changes in its use may themselves have historical, cultural, or architectural significance.

It is possible that historical resources may not retain sufficient integrity to meet the criteria for listing in the National Register, but thy may still be eligible for listing in the California Register. A resource that has lost its historic character or appearance may still have sufficient integrity for the California Register if it maintains the potential to yield significant scientific or historical information or specific data.

(d) Special considerations:

(1) Moved buildings, structures, or objects. The Commission encourages the retention of historical resources on site and discourages the non-historic grouping of historic buildings into parks or districts. However, it is recognized that moving an historic building, structure, or object is sometimes necessary to prevent its destruction. Therefore, a moved building, structure, or object that is otherwise eligible may be listed in the California Register if it was moved to prevent its demolition at its former location and if the new location is compatible with the original character and use of the historical resource. An historical resource should retain its historic features and compatibility in orientation, setting, and general environment.

(2) Historical resources achieving significance within the past fifty (50) years. In order to understand the historic importance of a resource, sufficient time must have passed to obtain a scholarly perspective on the events or individuals associated with the resource. A resource less than fifty (50) years old may be considered for listing in the California Register if it can be demonstrated that sufficient time has passed to understand its historical importance.

(3) Reconstructed buildings. Reconstructed buildings are those buildings not listed in the California Register under the criteria in Section 4852 (b)(1), (2), or (3) of this chapter. A reconstructed building less than fifty (50) years old may be eligible if it embodies traditional building methods and techniques that play an important role in a community's historically rooted beliefs, customs, and practices; e.g., a Native American roundhouse.

(e) Historical resource surveys. Historical resources identified as significant in an historical resource survey may be listed in the California Register. In order to be listed, the survey must meet the following: (1) the resources meet the criteria of Section 4852 (b)(1)-(4) of this chapter; and (2) the survey documentation meets those standards of resource recordation established by the Office in the "Instructions for Nominating Historical Resources to the California Register" (August 1997), Appendix B.

 (1) The resources must be included in the State Historical Resources Inventory at the time of listing of the survey by the Commission.

(2) The Office shall review all surveys to assure the standards of resource recordation, which can be found in the "Instructions for Nominating Historical Resources to the California Register" (August 1997), Appendix B of this chapter, have been met. If the survey meets the standards, the Office shall recommend to the Commission that all resources with a significance rating of category 1 through 4, or any subcategories thereof, on DPR Form 523 be listed in the California Register. The Office shall review all category 5 determinations for consistency with the California Register criteria of significance as found in Section 4852(b) of this chapter. Office review will occur within sixty (60) days of receipt of the survey. At the end of sixty (60) days, the Office will either: (1) forward the survey for consideration by the Commission or (2) request additional information.

The status codes, established to indicate eligibility to the National Register of Historic Places, have the following meanings:

(A) Category 1--Listed in the National Register of Historic Places;

(B) Category 2--Formally determined eligible for listing in the National Register;

(C) Category 3--Appears eligible for listing in the National Register;

(D) Category 4--Could become eligible for listing in the National Register; or

(E) Category 5--Locally significant.

(3) If the results of the survey are five or more years old at the time of nomination, the documentation for a resource, or resources, must be updated prior to nomination to ensure the accuracy of the information. The statute creating the California Register requires surveys over five (5) years old to be updated.

(f) Historical resources designated under municipal or county ordinances. Historical resources designated under municipal or county ordinances which have the authority to restrict demolition or alteration of historical resources, where the criteria for designation or listing have not been officially approved by the Office, may be nominated to the California Register if, after review by Office staff, it is determined that the local designation meets the following criteria:

24

(1) The ordinance provides for owner notification of the nomination of the resource for local historical resource designation and an opportunity for public comment.

(2) The criteria for municipal or county historical resource designation consider the historical and/or architectural significance and integrity of the historical resource and require a legal description of the resource.

(3) The designating authority issues findings or statements describing the basis of determination for designation.

(4) The designation provides some measure of protection from adverse actions that could threaten the historical integrity of the historical resource.

**Authority cited:** Sections 5020.4, 5024.1 and 5024.6, Public Resources Code. Reference: Title 36, Part 60, Code of Federal Regulations; and Sections 5020.1, 5020.4, 5020.7, 5024.1, 5024.5, 5024.6, 21084 and 21084.1, Public Resources Code.

**From:** Title 14. Natural Resources, Division 3. Department of Parks and Recreation, Chapter 11.5. California Register of Historical Resources

# APPENDIX B

**Supplemental Information Form and   "How to Document a Building"**

## Supplemental Information Form for Historical Resource Evaluation
### Potential Resource - Demolition - Alteration
Proposed project is: ☐ Demolition (DBI form 6)  or  ☐ Alteration (DBI form 3/8)

> Please be complete in your responses to the questions on this form. Submittal of incomplete or inaccurate information <u>will</u> result in an additional request for information from you and potentially delay your project. If you have problems in completing this form, we would recommend that you consult with a qualified historic preservation professional.

Address: _____

Block No. _____  Lot No. _____

Date of Construction:_____  check one: ☐ Actual  ☐ Estimated

▪ Source for date, or basis for estimate:_____

Architectural Style: _____

Architect & Builder:_____

Original Owner:_____

Subsequent Owners (dates of ownership):_____

_____

Historic Name:_____Common Name: _____

Original and Subsequent Uses: _____

_____

Has the building been moved? If yes, provide date: _____

▪ Original Location: _____

## ON A SEPARATE SHEET(S), PROVIDE THE FOLLOWING INFORMATION:

**Property Description / Construction History**
▪ Provide a written description of the property, describing its architectural form, features, materials, setting, and related structures.
▪ Provide a written description of all alterations to the property. Attach copies of all available buildings permits.
▪ Provide current photographs showing all facades, architectural details, site features, adjacent buildings, the subject block face, and facing buildings.
▪ Provide historic photographs, if available.

**History**
▪ Provide a written description of the history of the property, including any association with significant events or persons. See attached Preservation Bulletin No. 16, section entitled *How to Document a Building's History,* for assistance.
▪ For reference, check for neighborhood and/or city-wide historic context statements. Some contexts are

available at the Planning Department, alongside the Landmark and Historic District files.
- A chain of title can identify persons associated with a property, and city directories can identify if the owners were residents of the building, and what their occupation was. When cross-referenced with the Biographical catalog of notable San Franciscans at the Main Library's 6th Floor History room, this research can provide further valuable information.

**Other Information**
- Attach available documents that may provide information that will help to determine whether the property is or is not an historic resource such as historic Sanborn Maps, drawings, newspaper articles and publications.

## Historic Survey Information:

The property is *(mark all that apply)*:

_____ Over fifty (50) years of age and proposed for demolition, or major alteration

_____ Listed in the 1976 Architectural Survey

_____ Listed in the 1968 Junior League Survey (the basis for *Here Today)*

_____ Listed in a San Francisco Architectural Heritage Survey

_____ Listed in the Unreinforced Masonry Building (UMB) Survey

_____ General Plan Referenced Building

_____ National Register and California Register Status Code of 7

_____ Listed in the North Beach Survey, Local Survey Codes 4, 5, or 6

_____ Rated NRSC 6 or CHRSC 6 and was surveyed prior to year 2000

_____ Is there an existing, proposed or potential historic district in the immediate vicinity to which the subject building would be a contributor?

_____ Other Informational Survey
- Name of Survey_____

_____ Other, please list _____

If you have been referred to MEA by staff, please enter name: _____

Building Permit number (if any) _____

Form prepared by:_____ Date:_____

Address:_____ Phone:_____

E-mail address: _____

What sources did you use to compile this information?  Please list; use additional sheet(s) if necessary.

_____

_____

_____

_____

# HOW TO DOCUMENT A BUILDING'S HISTORY

In order to complete the environmental evaluation of proposed project, the Planning Department will, in certain cases, request additional information from the project sponsor.  One such request could be for information regarding aspects of certain properties that may have historical significance under the California Environmental Quality Act (CEQA), either as an historical resource in and of itself or as a contributor to an existing or proposed historic district.

CEQA historic criteria are based on eligibility for the California Register.  To be eligible for the California Register, a property must be significant in at least one of the following areas:

> 1. Associated with events that have made a significant contribution to the broad patterns of local or regional history or the cultural heritage of California or the United States.
> 2. Associated with the lives of persons important to local, California or national history.
> 3. Embodies the distinctive characteristics of a type, period, region or method of construction or represents the work of a master or possesses high artistic values.
> 4. Has yielded, or has the potential to yield, information important to the prehistory or history of the local area, California or the nation.

As an example, if a building was constructed prior to the 1906 earthquake or is a building that was recognized during the Planning Department's 1976 Architectural Survey, you as the project sponsor will most likely receive a form entitled *Historical Resource Evaluation – Request for Information* from the Planning Department.  Some project sponsors prefer to hire an outside consultant to complete this work, however, it is also possible that the needed research can be done by the project sponsors themselves.

Outlined below are some of the steps required to do research and a partial listing of the local resources available to applicants/project sponsors. An appendix to this document lists General Reference Sources. These steps and resources can substantially aid individuals and interested parties preparing the responses to a request for additional information

Please be aware that over time the address or Block and Lot for a property may have changed. So before you begin your search, please obtain all address(es) and lot(s)/block(s) that have been used for your property.

1.    **Start at the beginning.**
      In 1906, most official San Francisco documents were lost to fire. The Water Department, now a part of the PUC was able to preserve their records.  This department located at 1155 Market Street is a place to check the original Water Tap turn-on applications which list the date of connections to buildings. These records may reveal the original owner, architect/builder and date of construction. Because the records are fragile and not readily available, it is suggested that researchers use the microfiche of these records at the San Francisco Main Library.  (You can take Muni or BART to the Civic Center Station.)

2.    **Building Permits**
The Department of Building Inspection (DBI) Records Management Division maintains building permits, post 1906 earthquake and fire, on microfiche for the City. Research on building permit history on microfiche can be requested from in the Microfilm Section of the Department of Building Inspection at 1660 Mission Street, First Floor at (415) 558-6080.

The Housing Inspection Services (HIS) located at 1660 Mission Street, 6th Floor of the DBI at (415) 558-6220 maintains housing inspection records of all apartment buildings and hotels in the City.

3.    **Sales Records**
The City and County of San Francisco, Office of the Assessor-Recorder at City Hall, 1 Dr. Carlton B. Goodlett Place, has records about owners and the actual room counts of buildings as well as information about the estimated date of construction.  Sales ledgers from 1906 to 1990 and Block books from 1913-1976 are on microfiche.  McEnerny cases from 1906-c.1913. Building contract notices to the general record, as well as building completion notices to the general record, extant from 1906 to the present may be helpful. Deeds of property transactions located in an Index of Real Estate Transfers from 1906 to the present, as well as Map Books from 1846 to the present, Subdivision and Homestead Maps from 1850 to the present are also available for review. All of these resources can be of use in the research and documentation process.

4.    **Primary Research**
The San Francisco History Room and other departments of the main branch of the Public Library are excellent resources for primary research on a potential historic structure. Reference materials include:
- San Francisco Block Books; Handy Block Books of San Francisco, Municipal Reports;
- Business Directories: the California and Architect and Building News (1897 to 1900), and John Synder's Index; the Architect and Engineer (1905 to 1945), the Gary Goss Index (1905 to 1928); Western Architecture and Engineering (1945 to 1961).
- Real Estate Circulars: the Daily Pacific Builder; the California Builder; Edwards Abstracts (1906 to 1977).
- San Francisco, Our Society Blue Books (1890-1931),
- Index to the Great Register of Voter Records, (1900 to 1928).

Other resources include:
- Historic Photographs;
- Newspapers & Indexes (San Francisco Call Index 1893-1903, San Francisco Newspaper Index 1904-1950, San Francisco Chronicle Index 1950-current);
- Biographical Index Cards;
- Here Today: Junior League research files;

- Anne Bloomfield's description of How to Work with the 1906-1913 Sales ledgers, located in the Office of the Assessor-Recorder;
- City Landmark and District Case Reports and context statements;
- Water Department Tap Records which are on microfiche.

The San Francisco Main Library also has a collection of Census Records (1880, 1900, 1910, 1920, 1930) and City Directories that are located on the sixth floor San Francisco History Room and City Archives.

Other sources for information include:

The National Archives
1000 Commodore Drive
San Bruno CA
(650) 876-9001

Rare Books and Family Histories
Sutro Library of the California State Library
San Francisco State University
(415) 731-4477

The Labor Archives
Sutro Library of the California State Library
San Francisco State University
(415) 564-4010

Bancroft Library
University of California at Berkeley
(510) 642-3781
Documents Collection
College of Environmental Design,
Wurster Hall, Room 232
University of California at Berkeley
(510) 642-5124

San Francisco Architectural Heritage
2007 Franklin Street
San Francisco, CA   94109
(415) 441-3000

5.    **Sanborn Maps**

Find and copy (or trace) or print from microfilm the earliest Sanborn Fire Insurance Map that shows evidence of the building's existence. Sanborn Maps show block by block what buildings were built at various times throughout the City's history. The 1886-1893, 1899-1900 and 1913-1914 Sanborn Maps are available in the San Francisco History Room of the Main Library in Civic Center. Sanborn Maps are also located within the Office of the Assessor-Recorder located at 1 Dr. Carlton B. Goodlett Place. The California Historical Society Library located at 678 Mission Street has an extensive collection on San Francisco and California history and artifacts including San Francisco Sanborn Maps. (Please note that the CHS Library is open on Wednesdays only from 10 a.m. to 4:00 p.m., by appointment).

6.    **Cultural Resources Database and Existing Survey Information**

The Planning Department maintains a Cultural Resources Database. It is integrated into the land use database of the City and contains existing survey information for the City. This database can assist applicants/project sponsors with some background material relevant to a potential historic building. The database contains summary information for all the designated individual City Landmarks as well the Historic Districts listed in Article 10 of the Planning Code. Some 435 individual buildings as well as six Conservation Districts that were designated as part of the Downtown Plan (Article 11) of the Planning Code are also listed. Buildings designated under other Area Plans of the General Plan of the City and County of San Francisco such as the South of Market, Chinatown, Rincon Hill and the Van Ness Area Plans are listed. Architectural resources contained in the Planning Department's 1976 Citywide Survey (which identified over 10,000 buildings citywide) and the Board of Supervisors adopted book entitled Here Today (which contains survey information on over 2,500 buildings) are also listed. A thematic study of Unreinforced Masonry Buildings (UMBs) that identified approximately 2,000 buildings, (many of which were determined eligible for the National Register of Historic Places) are summarized in the Cultural Resources database. Access to the database can be obtained on the public computer at the Planning Information Counter at 1660 Mission Street on the first floor.

To date, approximately 3,500 buildings in San Francisco have been listed in or have been determined eligible for the National Register of Historic Places. The State Office of Historic Preservation maintains and updates periodically the California Register of Historical Resources and the National Register of Historic Places listings. The Northwest Information Center located at Sonoma State University in Rohnert Park; CA. (707-664-2494) can provide applicants/project sponsors with information on California Register and National Register listings for the City and County of San Francisco.

Finally, a resource that appears in one or more of the above mentioned surveys might indicate that it is a potential landmark or a contributory building in an historic district. When a designation is being considered, existing survey information will be considered as one component in the overall evaluation of the resource. Lack of existing survey information does not mean the resource is not significant; it simply means that the resource or area has not been surveyed.

Many of the City's existing adopted surveys are now ten to thirty years old and are not standardized in terms of their format and content. A review, update and evaluation of the City's cultural resources are underway and will take many years to complete. In general, the Northeastern quadrant of the City has the most survey work, much of which recognized pre-1930s buildings.

As a general rule, resources that are considered historical for purposes of CEQA should be at least fifty years of age. National Register of Historic Places utilizes the fifty-year rule as a reasonable span of time that makes the professional evaluation of the resource feasible. In recent years, many properties in San Francisco have achieved significance due to the passage of time, (i.e. they are now fifty years of age or older).

Research and evaluation on these undesignated resources may indicate that these properties are, in fact, landmark sites or contributory buildings to historic districts. Many resources that are now fifty years of age or older may be significant on local, state or national levels. A thorough understanding of the architectural, historical, physical context of the resource and its integrity is essential in the evaluation of a resource that is either considered "exceptionally significant" (i.e., less than fifty years) or is now more fifty years of age and has not been surveyed.

# GENERAL REFERENCE SOURCES

A Companion to California by James D. Hart, Berkeley, CA., University of California Press, Second Edition, 1987.

A Field Guide to American Houses by Virginia and Lee McAlester, New York, Alfred A. Knopf, 1986.

Architecture in San Francisco and Northern California by David Gebhard, Roger Montgomery, Robert Winter, John Woodbridge and Sally Woodbridge, Salt Lake City, Peregrine Smith Books, 1985.

Here Today, San Francisco's Architectural Heritage. Text by Roger Olmsted and T. H. Watkins, San Francisco, CA, Chronicle Books, 1968.

Historic City Directories and Census Records are located on the 5th Floor of the San Francisco Main Library, Civic Center.

"How to Research Your San Francisco Building" by Jean Kortum, former Landmarks Board President and Member, Copyright 1992, Revised 1993 (Available at the Planning Department).

"How to Complete the National Register Registration Form," National Register Bulletin No. 16A (Available at the U.S. Government Printing Office, San Francisco, CA).

"How to Complete the National Register Multiple Property Documentation Form," National Register Bulletin No. 16B (Available at the U.S. Government Printing Office, San Francisco, CA).

In the Victorian Style, Text by Randolph Delehanty, San Francisco, CA., Chronicle Books,1991.

"Regulations for the Nomination of Properties to the California Register of Historical Resources", Office of Historic Preservation, Sacramento, CA, May 31, 1996.

"Researching an Historic Property," National Register Bulletin No. 39 (Available at the U.S. Government Printing Office, San Francisco, CA).

The Ultimate Guide, San Francisco, San Francisco, CA, Chronicle Books, 1989.

Splendid Survivors, San Francisco's Downtown Architectural Heritage. Prepared by Charles Hall Page and Associates, Inc., for the Foundation for San Francisco's Architectural Heritage, California Living Books, 1978.

Street Address File, Biographical Index Cards, Landmark Case Reports and Historic Photographs are located in the San Francisco History Room, 6th Floor of the Main Library, Civic Center.

## WEB SITES OF INTEREST

Planning Department homepage: http://www.sfgov.org/planning

California Office of Historic Preservation: http://www.ohp.cal-parks.ca.gov

California DPR 523 forms: http://ohp.parks.ca.gov/chris/publicat.html

National Register homepage: http://www.cr.nps.gov

National Register Bulletins: http://www.cr.nps.gov/nr/nrpubs.html

San Francisco Public Library – History Center:
http://sfpl.lib.ca.us/librarylocations/sfhistory/sfbuilding.htm

*(This information was compiled from various Planning Departments Preservation Bulletins published January, 2003)*

# APPENDIX C

## General Scope of Work for an Historical Resource Evaluation Report

### Scope of Work for
### San Francisco Historical Resource Evaluation Reports
(non-archeological)

Objective:  Provide information to be used in support of historical resource determinations and project historic impact assessments for purposes of the California Environmental Quality Act (CEQA).

When Planning Department staff decides that additional information is required to determine whether a structure is a historical resource under CEQA and to access impacts on a historical resource,  an *Historical Resource Evaluation Report* may be requested.  If there is more than one building or structure on the site as part of the proposed project, all structures will need to be discussed in the study; therefore, the singular case below will be plural in the case of multiple structures.

In order to be considered complete, a San Francisco Planning Department *Historic Resource Evaluation Report* should provide an historical overview of the individual resource or district under study by identifying and evaluating the potential resource within historic context(s).  The report should also evaluate the potential for impacts from the proposed  project on the historical resource. The report should synthesize all available historic information from all disciplines in a clear and concise narrative. The report should entail both documentary research and field investigation to determine and describe the integrity, authenticity, associative values, and significance of the resource under study.  Reports should be prepared to a level of detail commensurate with the significance and complexity of the structures and impacts in question.  A full report may not be needed in all cases.  In order to have the proper information and length of a requested report for any project, a "scoping meeting" should be held with Planning Department staff before work begins on the report.   In addition:

1. The report should include preparation of State of California Department of Parks and Recreation DPR 523 forms (both A and B sections) for all qualifying resources; these are a principal tool for determining if a structure is an historical resource for purposes of the CEQA, and establishes the basic historical and architectural character and significance.

2. If the proposed project is an alteration, the report should discuss the proposed project's compliance with the *Secretary of the Interior's Standards for the Treatment of Historic Properties*.

3. If the proposed project is within the boundaries of an historic district, the report should discuss the cumulative impact of the proposed and related projects to the population of resources which would remain in the district.

4.  The report should identify alternatives and mitigations for implementing the proposed project, which if incorporated in the project, would avoid or minimize significant adverse affects to the historical resource.

If the project is also subject to federal historic requirements such as Section 106 of the U.S. National Historic Preservation Act or Section 4(f) of the Transportation Act, to the extent feasible the historic evaluation should be closely coordinated, especially if a joint environmental document is being prepared.  While coordination is critical, it should also respect the fact that the uses of and requirements for historic reports for state and federal environmental documents differ and the needs of both environmental processes may need to be met.

Below is a generalized Scope of Work for preparing an Historic Resource Evaluation Report.  A report will typically require information similar to that listed below but may not require all elements, therefore, each proposed scope will need to be reviewed and individualized to meet the requirements of the specific project and resource involved. The historical consultant will be selected by the project sponsor.  The historical consultant's work effort is, however, under the direction of the assigned Planning Department staff.  All submittals by the consultant are to be made directly to the project's environmental coordinator as designated by the Department's Major Environmental Analysis section.  Any comments by the project sponsor or their representatives must be directed to Planning Department staff to ensure proper inclusion into the analysis.  During the preparation of the Historic Resource Evaluation Report as with other environmental documents, the project sponsor and their representatives are key to the provision of details concerning the project, responding to recommended changes affecting the project, and support for recommended mitigation measures and other improvements identified in the report.

To prepare a report for the San Francisco Planning Department,  primary historic consultants should meet the History, Architectural History or Historic Architecture professional qualifications as outlined by the federal government in 36 Code of Federal Regulations 61, (see Appendix B).  These qualifications, in general, are a graduate degree in history, architectural history or a closely related field, or a bachelor's degree in the same fields plus at least two years of full-time experience in architectural history related work.[21]  Having experience in the architectural history of San Francisco is helpful.

Persons not meeting the above standards may assist in preparation of the Report, provided they are supervised by a primary historic consultant who meets the standards.  The primary historic consultant must oversee all research and findings. Findings on the DPR 523 forms must be determined by the primary preservation professional.

---

[21]  The California Office of Historic Preservation (a division of the State Parks and Recreation Department) maintains a list of persons that have met the state's qualifications as historic consultants.  The office can be reached at (916) 653-6624, and can be contacted for a copy of their list of qualified historic consultants.

As noted above, a meeting between planning department staff and the consultant to individualize the scope requirements for each specific project should always be held before work on the report begins. To avoid any false starts or misunderstandings, the draft Scope of Work proposed by the consultant team must be submitted to the staff for review and approval (in writing) by the environmental planner assigned to the case <u>before</u> starting work on the report. See the attached approval form.

The requirements for each report will vary and will be refined at a "scoping" meeting between the consultant and Department staff. The report should typically be organized as follows and address the questions posed below as relevant:

1. Summary – Overview of report and conclusions.

2. Introduction - Basic brief description of what is being proposed with the project.

3. Past Historic Evaluations

    A. Discuss existing historic surveys that the structure has been listed in and what the ratings of the structure are (Refer to Planning Department's list of existing Districts and surveys and the California Historic Resource Inventory System database). Include the purpose of the survey and the methodology used to put the evaluations into a context. Are there any surveys of the area in which the building was obviously left out. Discuss the implications of being included in a survey, or left out of a survey. Include what has not yet been considered by those surveys, or may have been missed, or what has changed since those surveys were conducted.

4. Evaluate the Existing Structure or Potential Resource

    A. Evaluate the potential resource using all four of the California Register Criteria and prepare DPR 523 forms (Parts A and B) if they do not already exist. This section of the report should answer the following questions or speak to the issues listed below:

- Discuss the structure's character and history.
- What is the property type? Is this a rare or unique type? Is the structure representative of a specific type? Does it have specific historical associations?
- What aspects or elements add to or are central to its importance?
- What periods of history are relevant for the historical resource determination?
- Describe the exterior materials, exterior features, building interior, the setting of the building and its site.
- What are the historic and character defining features that make the resource significant?
- Does the potential resource satisfy any of the criteria for listing on the California Register? Why or why not?

- Explore the chain of ownership to see if there is any association with a significant person.
- Are there any associations with important events that have made a contribution to local, state or national history?
- Does the structure retain its historic integrity?  Are there any changes? If so, are the changes easily reversible?  Do the changes effect the historic architectural character of the resource?
- Include photos, both existing conditions and historic photos, if located.  (Refer to Department's evaluation forms.)

B.  Integrity  – The discussion should include an assessment of integrity in relationship to the resource's period of significance.  Discuss those of the seven aspects of integrity (location, design, setting, materials, feeling, workmanship, association) that relate most directly to the reasons the property is or is not significant (recognizing that not all seven aspects of integrity need be present for all resources).

5. Context and Relationship

What is the neighborhood context?  Discuss how the potentially significant resource relates or doesn't relate to the surrounding neighborhood. Is the potentially significant resource a part of a designated, proposed or studied historic or conservation district?  The Historical Resource may be the district itself and the building in question may be a contributor or non-contributor within that resource.  If the resource is the district, what would be the affect of demolishing a contributory or a non-contributory structure and building a new building.  Has the potential resource been evaluated as a part of a Planning Department informational survey or study?  If so, discuss the district and the potential resource's importance in relation to district.  If there is more than one structure involved, what are the interrelationships between structures?

6. Project-Specific Impacts

What changes are being proposed by the project sponsor?  What will be the overall effects on the potential resource if the proposed project is carried out?  What would happen to character-defining or important features as set out in Section 2 (C) above?
If the proposal was carried out, would the remaining features be enough to retain the historic significance?

7. Cumulative Impacts

If the potentially significant resource is in a recognized district, what changes have occurred in the District since it was designated that are visible from the resource?

How many buildings within the district visible from the potentially significant resource have been changed or demolished?  What types?  What is the status or ratings of the remaining structures in the district?

If the potential resource is outside of a recognized district, is it of a unique, rare, or increasingly at-risk type of structure, the loss of which would lead to an adverse cumulative impact?

Would the character of adjacent or nearby rated buildings or groups of buildings be adversely affected or compromised?

8.  Mitigation

Are there any ways to ameliorate the project-specific or cumulative impacts?  What alternatives should be considered that would reduce or eliminate adverse impacts?

9.  Conclusions

Provide a brief summary of the findings and recommendations.

Four copies of the first draft of the report should be provided to the environmental planner for departmental review.  The number of copies for any subsequent drafts will be determined by the environmental planner.

**Final Report**

After review is finalized, five copies of the final report must be submitted to the Planning Department.

**Attachment to Historic Report Scope of Work -- Scope Approval Form**

---

**HISTORICAL RESOURCE EVALUATION REPORT SCOPE OF WORK**
***ACKNOWLEDGMENT AND APPROVAL***

Transmittal To: _____[NAME]_____    Date: _____.

                   [FIRM]_____.

               _____.

               _____.

The proposed scope of work for the___[TITLE]_____Project, Case No._____,
dated_____ is hereby

        ◉   Approved as submitted

        ◉   Approved as revised and resubmitted

        ◉   Approved subject to comments below

        ◉   Not approved, pending modifications specified below
            and resubmitted

Signed: _____    Signed: _____
       *Planning Department*           *Preservation Technical Specialist*

Comments:

Note: A copy of this approval and the final scope of work is to be appended to the Historical Resource
Evaluation report. The Department advises consultants and project sponsors that review of the draft report may
identify issues or concerns of other City agencies not addressed in the scope of work hereby approved, and that
the scope of work may need to be modified to accommodate such additional issues.

Attachment to Historic Report Scope of Work --Primary Historic Consultant Qualifications

## Secretary of the Interior Guidelines for Historic Preservation
## (Professional Qualifications Standards)

The entire guidelines for the Secretary of the Interior's Standards for Historic Preservation Projects, not included here because of their length, may be obtained separately from the National Park Service.

This partial excerpt deals with professional qualifications best suited to the preparation of Historical Resource Evaluation Reports. Evaluation reports should always be prepared by persons qualified by education, training and experience in the application of the criteria. Where feasible, evaluation should be preformed in consultation with other individuals experienced the applying the relevant criteria in the geographical area under consideration.

**Professional Qualifications Standards**

The following requirements are those used by the National Park Service, and have been previously published in the Code of Federal Regulations, 36 CFR Park 61. The qualifications define minimum education and experience required to perform identification, evaluation, registration, and treatment activities. In some cases, additional areas or levels of expertise may be needed, depending on the complexity of the task and the nature of the historic properties involved. In the following definitions, a year of full-time professional experience need not consist of a continuous year of full-time work but may be made up of discontinuous periods of full-time or part-time work adding up to the equivalent of a year of full-time experience.

**Architectural History**

The minimum professional qualifications in architectural history are a graduate degree in architectural history, art history, historic preservation, or closely related field, with coursework in American architectural history, or a bachelor's degree in architectural history, art history, historic preservation or closely related field plus one of the following:

1. At least two years of full-time experience in research, writing, or teaching in American architectural history or restoration architecture with an academic institution, historical organization or agency, museum, or other professional institution; or

2. Substantial contribution through research and publication to the body of scholarly knowledge in the field of American architectural history.

**History**

The minimum professional qualifications in history are a graduate degree in history or a closely related field, plus one of the following:

1. At least two years of full-time experience in research, writing, teaching, interpretation, or other demonstrable professional activity with an academic institution, historic organization or agency, museum, or other professional institution; or

2. Substantial contribution through research and publication to the body of scholarly knowledge in the field of history.

**Historic Architecture**

The minimum professional qualifications in historic architecture are a professional degree in architecture or a State license to practice architecture, plus one of the following:

1. At least one year of graduate study in architectural preservation, American architectural history, preservation planning, or closely related field; or

2. At least one year of full-time professional experience on historic preservation projects.

Such graduate study or experience shall include detailed investigations of historic structures, preparation of historic structures research reports, and preparation of plans and specifications for preservation projects.

## APPENDIX D

## INFORMATIONAL SURVEYS

This list is incomplete but includes surveys that are on file in the Planning Department's preservation library as of 3/2002.

A.    Buena Vista North (proposed District, endorsed by PC) (1990) BVN Assn.*
B.    *Chinatown (1994) District initiated by Board of Supervisors**
C.    Eureka Valley Survey (1975) SFSU*
D.    Fire Stations Survey (1991) Bloomfield*
E.    Haight - Ashbury Survey (1974) SFSU*
F.    Inner Richmond District survey (1990) Heritage*
G.    North of Market (1985) DCP
H.    Polk/Procter Sea Cliff (proposed District) (1989) Neighborhood Group LPAB
I.    Refugee Shacks Inventory (1986) Society for the Preservation of SF Refugee Shacks
J.    Union Street District (1981) Union Street Assoc*
K.    Van Ness Avenue District, Fire Line (1985) Platt*


Note: Items indicated by an asterisk (*) are not incorporated into Parcel Information.

Note: Items in *Italic* text are named surveys that used the DPR 523 forms and methodology.