EXHIBIT A



STREET VIEW OF IMPORTANT BUILDING
(landmark, proposed landmark, other historic or culturally-significant building)

STREETS THAT DEFINE CITY FORM

STREETS THAT EXTEND THE EFFECT OF PUBLIC OPEN SPACE

ROUTE OF FORTY-NINE MILE SCENIC DRIVE

IMPORTANT STREET VIEW FOR ORIENTATION

**STREET AREAS IMPORTANT
TO URBAN DESIGN AND VIEWS**

EXHIBIT A

PACIFIC OCEAN

SAN FRANCISCO BAY

——— STREET VIEW OF IMPORTANT BUILDING
(landmark, proposed landmark, other historic or
culturally-significant building)

■ ■ ■ ■ ■ STREETS THAT DEFINE CITY FORM

· · · · · · · · STREETS THAT EXTEND THE EFFECT OF PUBLIC OPEN SPACE

——— ROUTE OF FORTY-NINE MILE SCENIC DRIVE

▓▓▓▓▓ IMPORTANT STREET VIEW FOR ORIENTATION

**STREET AREAS IMPORTANT
TO URBAN DESIGN AND VIEWS**



EXHIBIT B



EXCELLENT
GOOD
AVERAGE



**QUALITY OF STREET VIEWS**

EXHIBIT C

# SAN FRANCISCO PLANNING CODE

## SEC. 101. PURPOSES.

This City Planning Code is adopted to promote and protect the public health, safety, peace, morals, comfort, convenience and general welfare, and for the following more particularly specified purposes:

(a)  To guide, control and regulate future growth and development in accordance with the Master Plan of the City and County of San Francisco;

(b)  To protect the character and stability of residential, commercial and industrial areas within the City, and to promote the orderly and beneficial development of such areas;

(c)  To provide adequate light, air, privacy and convenience of access to property, and to secure safety from fire and other dangers;

(d)  To prevent overcrowding the land and undue congestion of population;

(e)  To regulate the location of buildings and the use of buildings and land adjacent to streets and thoroughfares, in such manner as to obviate the danger to public safety caused by undue interference with existing or prospective traffic movements on such streets and thoroughfares.

## SEC. 303. CONDITIONAL USES.  [EXCERPT ONLY]

(a)  General. The City Planning Commission shall hear and make determinations regarding applications for the authorization of conditional uses in the specific situations in which such authorization is provided for elsewhere in this Code. The procedures for conditional uses shall be as specified in this Section and in Sections 306 through 306.6, except that Planned Unit Developments shall in addition be subject to Section 304, medical institutions and post-secondary educational institutions shall in addition be subject to the institutional master plan requirements of Section 304.5, and conditional use and Planned Unit Development applications filed pursuant to Article 7, or otherwise required by this Code for uses or features in Neighborhood Commercial Districts, and conditional use applications within South of Market Districts, shall be subject to the provisions set forth in Sections 316 through 316.8 of this Code, in lieu of those provided for in Sections 306.2 and 306.3 of this Code, with respect to scheduling and notice of hearings, and in addition to those provided for in Sections 306.4 and 306.5 of this Code, with respect to conduct of hearings and reconsideration.

(b)  Initiation. A conditional use action may be initiated by application of the owner, or authorized agent for the owner, of the property for which the conditional use is sought. For a conditional use application to relocate a general advertising sign under subsection (l) below, application shall be made by a general advertising sign company that has filed a Relocation Agreement application and all required information with the Planning Department pursuant to Section 2.21 of the San Francisco Administrative Code.

(c)  Determination. After its hearing on the application, or upon the recommendation of the Director of Planning if the application is filed pursuant to Sections 316 through 316.8 of this Code and no hearing is required, the City Planning Commission shall approve the application and authorize a conditional use if the facts presented are such to establish:

(1)  That the proposed use or feature, at the size and intensity contemplated and at the proposed location, will provide a development that is necessary or desirable for, and compatible with, the neighborhood or the community:

(A)  In Neighborhood Commercial Districts, if the proposed use is to be located at a location in which the square footage exceeds the limitations found in Planning Code § 121.2(a) or 121.2(b), the following shall be considered:

(i)  The intensity of activity in the district is not such that allowing the larger use will be likely to foreclose the location of other needed neighborhood-servicing uses in the area; and

(ii)  The proposed use will serve the neighborhood, in whole or in significant part, and the nature of the use requires a larger size in order to function; and
(iii)  The building in which the use is to be located is designed in discrete elements which respect the scale of development in the district; and
(2)  That such use or feature as proposed will not be detrimental to the health, safety, convenience or general welfare of persons residing or working in the vicinity, or injurious to property, improvements or potential development in the vicinity, with respect to aspects including but not limited to the following:
(A)  The nature of the proposed site, including its size and shape, and the proposed size, shape and arrangement of structures;
(B)  The accessibility and traffic patterns for per-sons and vehicles, the type and volume of such traffic, and the adequacy of proposed off-street parking and loading;
(C)  The safeguards afforded to prevent noxious or offensive emissions such as noise, glare, dust and odor;
(D)  Treatment given, as appropriate, to such aspects as landscaping, screening, open spaces, parking and loading areas, service areas, lighting and signs; and
(3)  That such use or feature as proposed will comply with the applicable provisions of this Code and will not adversely affect the Master Plan; and
(4)  With respect to applications filed pursuant to Article 7 of this Code, that such use or feature as proposed will provide development that is in conformity with the stated purpose of the applicable Neighborhood Commercial District, as set forth in zoning control category .1 of Sections 710 through 729 of this Code; and

SEC. 305. VARIANCES. [EXCERPT ONLY]
(a)  General. The Zoning Administrator shall hear and make determinations regarding applications for variances from the strict application of quantitative standards in this Code. He shall have power to grant only such variances as may be in harmony with the general purpose and intent of this Code and in accordance with the general and specific rules contained herein, and he shall have power to grant such variances only to the extent necessary to overcome such practical difficulty or unnecessary hardship as may be established in accordance with the provisions of this Section. No variance shall be granted in whole or in part which would have an effect substantially equivalent to a reclassification of property; or which would permit any use, any height or bulk of a building or structure, or any type or size or height of sign not expressly permitted by the provisions of this Code for the district or districts in which the property in question is located; or which would grant a privilege for which a conditional use procedure is provided by this Code; or which would change a definition in this Code; or which would waive, reduce or adjust the inclusionary housing requirements of Sections 315 through 315.9. The procedures for variances shall be as specified in this Section and in Sections 306 through 306.5.

EXHIBIT D

# SAN FRANCISCO CHARTER

## SEC. 4.105. PLANNING COMMISSION.

GENERAL. The Planning Commission shall consist of seven members nominated and appointed pursuant to this section. Four of the members shall be nominated by the Mayor, and three of the members shall be nominated by the President of the Board of Supervisors. Charter Section 4.101 shall apply to these appointments, with particular emphasis on the geographic diversity of City neighborhoods. Vacancies shall be filled by the appointing officer.

Each nomination of the Mayor and the President of the Board of Supervisors is subject to approval by the Board of Supervisors, and shall be the subject of a public hearing and vote within 60 days. If the Board fails to act on the nomination within 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors, the nominee shall be deemed approved. The appointment shall become effective on the date the Board adopts a motion approving the nomination on or after 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors.

Members may be removed by the appointing officer only pursuant to Section 15.105.

In order to stagger the terms, three members shall initially serve two-year terms, and four members shall initially service four-year terms. The initial two and four-year terms of office shall be instituted as follows:

1.   The respective terms of office of members of the Planning Commission who hold office on the first day of July, 2002, shall expire at 12 o'clock noon on that date, and the four members appointed by the Mayor and the three members appointed by the President of the Board of Supervisors shall succeed to said offices at that time.

2.   The Clerk of the Board of Supervisors shall determine by lot which two of the four Mayoral appointees shall serve an initial two-year term, and which one of the three appointees of the President of the Board of Supervisors shall serve an initial two-year term. The remaining appointees shall serve four-year terms. All subsequent terms shall be four years.

The Commission shall provide the Mayor with at least three qualified candidates for Director of Planning, selected on the basis of administrative and technical qualifications, with special regard for experience, training and knowledge in the field of City planning. The Commission may contract with consultants for such services as it may require subject to the fiscal provisions of this Charter.

GENERAL PLAN. The Commission shall periodically recommend to the Board of Supervisors for approval or rejection proposed amendments to the General Plan. If the Board of Supervisors fails to act within 90 days of receipt, the proposed General Plan or amendments shall be deemed approved. The General Plan which will initially consist of the Master Plan in effect immediately prior to the effective date of this Charter shall consist of goals, policies and programs for the future physical development of the City and County that take into consideration social, economic and environmental factors. In developing their recommendations, the Commission shall consult with commissions and elected officials, and shall hold public hearings as part of a comprehensive planning process. The Planning Department, in consultation with other departments and the City Administrator, shall periodically prepare special area, neighborhood and other plans designed to carry out the General Plan, and periodically prepare implementation programs and schedules which link the General Plan to the allocation of local, state and federal resources. The Planning Department may make such other reports and recommendations to the Mayor, Board of Supervisors and other offices and governmental units as it may deem necessary to secure understanding and a systematic effectuation of the General Plan.

In preparing any plans, the Planning Department may include plans for systems and areas within the Bay Region which have a planning relationship with the City and County.

REFERRAL OF CERTAIN MATTERS. The following matters shall, prior to passage by the Board of Supervisors, be submitted for written report by the Planning Department regarding conformity with the General Plan:

1. Proposed ordinances and resolutions concerning the acquisition or vacation of property by, or a change in the use or title of property owned by, the City and County;
2. Subdivisions of land within the City and County;
3. Projects for the construction or improvement of public buildings or structures within the City and County;
4. Project plans for public housing, or publicly assisted private housing in the City and County;
5. Redevelopment project plans within the City and County; and
6. Such other matters as may be prescribed by ordinance.

The Commission shall disapprove any proposed action referred to it upon a finding that such action does not conform to the General Plan. Such a finding may be reversed by a vote of two-thirds of the Board of Supervisors.

All such reports and recommendations shall be issued in a manner and within a time period to be determined by ordinance.

PERMITS AND LICENSES. All permits and licenses dependent on, or affected by, the City Planning Code administered by the Planning Department shall be approved by the Commission prior to issuance. The Commission may delegate this approval function to the Planning Department.

ENFORCEMENT. The Planning Department shall administer and enforce the City Planning Code.

ZONING AMENDMENTS. The Commission may propose for consideration by the Board of Supervisors ordinances regulating or controlling the height, area, bulk, set-back, location, use or related aspects of any building, structure or land. An ordinance proposed by the Board of Supervisors concerning zoning shall be reviewed by the Commission. Applications for the reclassification of property may be made by interested parties and must be reviewed by the Commission.

Notwithstanding the Commission's disapproval of a proposal from the Board of Supervisors or the application of interested parties, the Board of Supervisors may adopt the proposed ordinance; however, in the case of any proposal made by the application of interested parties, any such adoption shall be by a vote of not less than two-thirds of the Board of Supervisors.

No application of interested parties proposing the same or substantially the same ordinance as that disapproved by the Commission or by the Board of Supervisors shall be resubmitted to or reconsidered by the Commission within a period of one year from the effective date of final action upon the earlier application.

ZONING ADMINISTRATOR. The director of planning shall appoint a Zoning Administrator from a list of qualified applicants provided pursuant to the Civil Service provisions of the Charter. The Zoning Administrator shall be responsible for the determination of all zoning variances. The administrator shall have the power to grant only those variances that are consistent with the general purpose and the intent of the zoning ordinance, and in accordance with the general and specific rules of the zoning ordinance, subject to such conditions and safeguards as the Zoning Administrator may impose. The power to grant variances shall be applied only when the plain and literal interpretation and enforcement of the zoning ordinance would result in practical difficulties, unnecessary hardships or where the results would be inconsistent with the general purpose of the zoning ordinance. Decisions of the Zoning Administrator regarding zoning variances may be appealed to the Board of Appeals.

Before any such variance may be granted, there shall appear, and the Zoning Administrator shall specify in his or her findings, the facts in each case which shall establish:

(a)  That there are exceptional or extraordinary circumstances or conditions applying to the property involved or to the intended use of the property that do not apply generally to the property or class of uses in the same district or zone;

(b)  That owing to such exceptional or extraordinary circumstances the literal enforcement of the zoning ordinance would result in practical difficulty or unnecessary hardship not created by or attributable to the applicant or the owner of the property;

(c)  That such variance is necessary for the preservation and enjoyment of a substantial property right of the applicant, possessed by other property in the same zone and vicinity;

(d)  That the granting of the variance will not be materially detrimental to the public welfare or injurious to the property or improvements in such zone or district in which the property is located; and

(e)  That the granting of such variance will be in harmony with the general purpose and intent of the zoning ordinance and will not adversely affect the general plan.

The determination of the Zoning Administrator shall be final except that appeals therefrom may be taken, as hereinafter provided, to the Board of Appeals, exclusively and notwithstanding any other provisions of this Charter, by any person aggrieved or by any office, agency, or department of the City and County. An appeal from a determination of the Zoning Administrator shall be filed with the Board of Appeals within ten days from the date of such determination. Upon making a ruling or determination upon any matter under his or her jurisdiction, the Zoning Administrator shall thereupon furnish a copy thereof to the applicant and to the Director of Planning. No variance granted by the Zoning Administrator shall become effective until ten days thereafter. An appeal shall stay all proceedings in furtherance of the action appealed from.

CONDITIONAL USE. The Commission shall have the power to hear and decide conditional use applications. An appeal may be taken to the Board of Supervisors from a decision of the Commission to grant or deny a conditional use application. The Board of Supervisors may disapprove the decision of the Commission by a vote of not less than two-thirds of the members of the Board.