MARTIN L. FINEMAN, State Bar No. 104413
SUZANNE TOLLER, State Bar No. 129903
DAVIS WRIGHT TREMAINE LLP
505 Montgomery St., Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

T. SCOTT THOMPSON, *pro hac vice*
JOHN R. EASTBURG, State Bar No. 247380
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20006
Telephone 202-973-4200
Facsimile: 202-973-4499

ROBERT L. DELSMAN, State Bar No. 142376
NEXTG NETWORKS, INC.
2216 O'Toole Avenue
San José, California 95131

Attorneys for Plaintiff
NextG Networks of California, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTG NETWORKS OF CALIFORNIA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO AND THE DEPARTMENT OF PUBLIC WORKS OF THE CITY OF SAN FRANCISCO,<br><br>Defendants. | No. C 08-00985 MHP<br><br>**DECLARATION OF DAVID M. CUTRER, Ph.D. IN SUPPORT OF NEXTG'S OPPOSITION TO THE CITY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: June 9, 2008<br>Time: 2:00 p.m.<br>Place: Courtroom 15<br>Before the Honorable Marilyn Hall Patel<br><br>Action Filed: February 15, 2008 |

I, David M. Cutrer, declare and state as follows:

1. I am the Chief Technology Officer and Co-Founder of NextG Networks, Inc., which is the parent company the Plaintiff in the above-captioned action, NextG Networks of California, Inc. ("NextG").

2. This Declaration is being submitted in support of NextG's Opposition to the City's Motion For Summary Judgment.

3. I hold a Ph.D. and Masters degrees in Electrical Engineering from the University of California at Berkeley, and a Bachelor of Science degree in Electrical Engineering and Applied Physics from the California Institute of Technology.

4. Prior to co-founding NextG, I was co-founder, Chief Technology Officer, and Vice President of Engineering for LGC Wireless, Inc. I have been involved in the telecommunications industry, and particularly the wireless telecommunications industry, for over 10 years. Through my academic and employment experience, I have over 12 years of experience with the design, construction, and operation of both wireline and wireless telecommunications systems.

5. In my role at NextG, I am intimately familiar with the technical and economic aspects of NextG's network and provision of telecommunications services.

6. In the declaration of Daniel McKenna In Support of Defendant's Motion For Summary Judgment, Mr. McKenna asserts that of the 30 Nodes previously installed by NextG that the City was able to locate, "DPW could have approved 20 without any referral to either [the Planning Department or Recreation and Park Department]. DPW would have referred the other ten to the Planning Department because they are located on streets with excellent views." The City's argument stemming from Mr. McKenna's assertion appears to be an attempt to argue that its new Wireless Permit requirement will not have a significant impact because it would not apply to *all* of NextG's Node deployments. While I have not attempted to assess the accuracy of Mr. McKenna's estimate that only 10 of 30 Nodes previously installed by NextG would require referral to Planning under the new Ordinance, I am certain that even having a few Nodes of a proposed network referred to the Planning Department or Recreation and Parks Department would have a significant negative impact on NextG's ability to deploy and provide telecommunications service in the City.

2

CUTRER DECLARATION
WDC 738756v1 0058588-000003

7. NextG Networks has invented and developed a new telecommunication service offering based on using fiber-optic cable and small antennas mounted in the public rights-of-way (ROW), on infrastructure such as lamp posts and utility poles. Using this fiber network and ROW infrastructure, NextG Networks has effectively "split" a traditional cell site, keeping only the necessary pieces in the remote antenna location, and allowing the rest of the cell site equipment to be placed in a centralized facility.

8. NextG Networks offers a telecommunications service offering that is based on the use of fiber-optic cables to transport radio frequency (RF) signals to and from small antennas mounted in the public ROW and to a centralized location. This "RF-transport" telecommunications service, takes wireless spectrum from a microcellular optical repeater unit and coverts the spectrum into an optical signal (this takes place at the "Node" that is located in the ROW on a utility pole). This signal is then transported to multiple locations within a metro area using fiber optics. From the remote "Node" locations, the fiber transports the signals to a centralized switching location. From there, the signals are transported back out to remote Node locations or alternatively to public telecommunications networks.

9. At the remote location where the antenna is located, the optical signal is converted back into a radio signal and delivered to a small antenna for broadcast. The RF-to-optical conversion is done by a small unit located near the remote antenna.

10. The NextG telecommunications service and associated network solution discussed above is dependent on the deployment of a uniform network of fiber optic lines to a contiguous grid of low antennas with no gaps in the service area. Indeed, the networks that NextG constructs are extremely sophisticated, technologically, and cannot function as intended if one or more Nodes is missing or even moved seemly insignificant distances.

11. Design, planning, and deployment of NextG's networks, including the proposed network in the City, is a significant, multistep undertaking. Many of the steps are interrelated and dependent upon other steps occurring first. For example, in the "Node planning" group of tasks, NextG must undertake steps that include: Preliminary RF Design; Drive Tests; Data Collection; Data Reduction; Client review of final design; and Design approval. Beyond Node planning, there are a number of steps that must occur. The tasks after Node Planning include, but are not limited Utility Coordination;

Securing encroachment permits; Node Construction; Delivering Electric Utilities; and Turn-up, Test, and Optimization

12. All of those steps are only related to the actual Nodes. At the same time, NextG must engineer and install fiber, both aerially and/or underground, to reach the Nodes. The engineering and installation of the fiber is, itself, a multistep process, involving route selection, design, and field surveys, among others, with each step dependent on other factors.

13. Under the City's Ordinance, any one or more of NextG's Nodes could be referred to Planning or Recreation and Parks. The result of which would be to place NextG's entire network at risk. If even one or more of the Nodes are delayed or denied, that would have a profound effect on the other Nodes and the workings of the network. At a minimum, if there were any change in one or more of the Node locations, then NextG would have to completely re-design both the Node locations for the entire network – to assure a contiguous RF grid – and the fiber portion of the network, both of which would require new designs, surveys, field inspections, and utility locates, among other things.

14. Moreover, because of the interrelated nature of NextG's network and construction, if one or more (or in Mr. McKenna's example 33%) of NextG's Nodes is placed at risk of being delayed or denied altogether, that would have a significant negative impact on NextG's ability to deploy the rest of the network until it was certain of the outcome of the Nodes that had been referred to the Planning Department or Recreation and Parks Department.

4

CUTRER DECLARATION
WDC 738756v1 0058588-000003

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this Declaration was executed by me on May 16, 2008 in San Jose, California.

_____
David M. Cutrer

CUTRER DECLARATION
WDC 738756v1 0058588-000003