1  MARTIN L. FINEMAN, State Bar No. 104413
   SUZANNE TOLLER, State Bar No. 129903
2  DAVIS WRIGHT TREMAINE LLP
   505 Montgomery Street, Ste. 800
3  San Francisco, California  94111
   Telephone:  (415) 276-6500
4  Facsimile:  (415) 276-6599

5  T. SCOTT THOMPSON, *pro hac vice*
   DAVIS WRIGHT TREMAINE LLP
6  1919 Pennsylvania Avenue, N.W.
   Suite 200
7  Washington, D.C. 20006
   Telephone 202-973-4200
8  Facsimile: 202-973-4499

9  Attorneys for Plaintiff
   NextG Networks of California, Inc.
10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14 NEXTG NETWORKS OF CALIFORNIA, INC., )  No.  C 08 0985-MHP
   a Delaware corporation,              )
15                                      )  DECLARATION OF NICOLE
                                        )  MASON IN SUPPORT OF
                     Plaintiff,         )  PLAINTIFF'S OPPOSITION TO
16                                      )  DEFENDANTS' MOTION FOR
                                        )  SUMMARY JUDGMENT
17      v.                              )
                                        )
18 THE CITY OF SAN FRANCISCO and THE    )  Hearing Date:  June 9, 2008
   DEPARTMENT OF PUBLIC WORKS OF THE    )  Time:          2:00 p.m.
19 CITY OF SAN FRANCISCO,               )  Place:         Courtroom 15
                                        )
20                   Defendants.        )
   ─────────────────────────────────────

21

22 I, Nicole Mason, declare and state as follows:

23      1.  I am a Director of Government Relations for NextG Networks of California, Inc. ("NextG").

24 I make this Declaration in support of NextG's Opposition to Defendant City's Motion for Summary

25 Judgment ("Motion") in the above captioned action.  Unless otherwise indicated, I know the following

26 of my own personal knowledge, and if called as a witness in this action, I could and would testify

27 competently to these facts under oath.

28      2.  As a Director of Government Relations, I report directly to the Senior Vice President of the

1   Regulatory Department.  In my position, I am responsible for representing NextG in all dealings with

2   public agencies.  The primary function of the position is to secure any necessary and appropriate

3   authorizations from local governments to enable NextG to install infrastructure in the public rights-of-

4   way and conduct business as a telecommunications company.  I am also responsible for the ongoing

5   relationship with the jurisdictions after the network is deployed.

6       3.   I have been personally involved in NextG's deployment of telecommunications facilities and

7   services in the City and County of San Francisco ("City").  I have also been personally involved on

8   behalf of NextG in the City's consideration and adoption of Ordinance No. 214-07, and in the City

9   Department of Public Works' ("DPW") development and adoption of regulations implementing

10  Ordinance No. 214-07 (DPW Order No. 177,163).  On behalf of NextG, I have submitted comments to

11  the City during the consideration of what ultimately was adopted as Ordinance No. 214-07 and

12  subsequently to DPW, regarding the regulations implementing Ordinance No. 214-07.

13      4.   Under Section 11.9(a), as amended by Ordinance No. 214-07, all providers of

14  "Telecommunications Service" or "Personal Wireless Service" must obtain a Utilities Condition Permit

15  ("UCP") from DPW.  The City has indicated that it will require NextG to obtain a different form of UCP

16  than the City requires from other telecommunications utilities, such as the incumbent telephone

17  company.  A true and correct copy of an e-mail from the City's Attorney, Mr. Sanders regarding the

18  UCP that will be required for NextG is attached hereto as Exhibit A.

19      5.   The  City adopted Ordinance No. 214-07 on September 11, 2007.  Although the City did not

20  notify NextG of its proposed new ordinance initially, NextG obtained a copy of the ordinance in draft

21  form on or about June 19, 2007, and immediately sent comments to the City Attorney setting forth the

22  reasons why the proposed ordinance would violate both Section 253 and this Court's Order and

23  Injunction against the City.  Prior to the Ordinance's consideration by the City's Board of Supervisors, it

24  was considered by the Board of Supervisor's Committee on Land Use and Economic Development

25  ("Committee").  On August 2, 2007, I sent a letter to the members of the Committee, providing detailed

26  comments on the proposed ordinance.  A copy of my letter is attached as Exhibit B.

27      6.   On August 6, 2007, I, along with Mr. Delsman of NextG, appeared at a public hearing of the

28  Committee and provided comments in addition to those submitted in my August 2, 2007 letter.  In our

Declaration of Nicole Mason
WDC 738846v1 0103871-000024

oral comments, Mr. Delsman and I explained to the Committee how the proposed order was inconsistent with Section 253 of the Communications Act, Sections 7901 and 7901.1 of the California Public Utilities Code, and the court's holding in *NextG Networks of California, Inc. v. City and County of San Francisco*. This was the only opportunity provided to NextG and other affected carriers to weigh in on the proposed ordinance.

7.  On December 5, 2007, I took several photographs of attachments to utility poles in different areas of San Francisco, including attachments by NextG as well as other wireless and non-wireless attachments to utility poles.

8.  The photograph attached hereto as Exhibit C shows a typical utility pole (PG&E pole # 186) located between Geary Blvd and Fulton Street and their intersections with 9th and 17th Avenues in the Richmond District of San Francisco. There are no NextG or other wireless attachments to the pole.

9.  The photograph attached hereto as Exhibit D shows a street view in the Seacliff area approximately 3 blocks up from Great Hwy at or near 45th Avenue between Point Lobos Avenue and Fulton Street in San Francisco, containing several utility poles. NextG has an attachment on the second pole on the right, up the hill. There are no wireless or NextG attachments on any of the other utility poles shown in the photograph.

10. The photograph attached hereto as Exhibit E shows a pole located between Geary Blvd and Fulton Street and their intersections with 9th and 17th Avenues in the Richmond District of San Francisco containing a NextG installation. The two small boxes attached to the pole at least eight feet above the ground are related to NextG's installation. The single cross-arm that sticks out to the left holds a NextG antenna. I note that NextG is required to place the antennas on such cross arms as a result of California Public Utility Commission regulations, not as a result of NextG's choice. The two cross arms higher up the pole are electric company attachments, as is the transformer canister that is attached just below the top of the pole.

11. The photograph attached hereto as Exhibit F shows a utility pole located between Geary Blvd and Fulton Street and their intersections with 9th and 17th Avenues in the Richmond District of San Francisco containing two electric company cross arms, and two electric transformer canisters, both directly outside a residential window. There are no wireless attachments to the pole in Exhibit D.

1        12. The photograph attached hereto as Exhibit G shows the various pole attachments and "street

2    furniture" on a street corner in a purportedly "undergrounded" district of the City.  To the best of my

3    knowledge, all of the poles in this photograph are owned by the City.  The tangle of wires is overhead

4    lines for municipal buses.  The area shown in this photograph is next to San Francisco City Hall.

5        13. The photograph attached hereto as Exhibit H shows an intersection of Geary Blvd and 3rd

6    Avenue in the Richmond District of San Francisco.  On the left side of the photograph is a utility pole

7    rising up above the building.  On that utility pole is a NextG Node installation.  Like the photograph in

8    Exhibits B & C, the antenna portion of NextG's installation is the small canister-like objected located on

9    the single-sided cross arm approximately 2/3 of the way up the pole.  The pole also contains 3 cross

10    arms of increasing size that extend on both sides of the pole, as well as two electrical transformer

11    canisters.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Nicole Mason
WDC 738846v1 0103871-000024

1      14. I declare under penalty of perjury under the laws of the United States of America

2    and the State of California that the foregoing is true and correct and that this Declaration was executed

3    by me on May 15, 2008.

4

5                                                    _____

6                                                    Nicole Mason

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Nicole Mason
WDC 738846v1 0103871-000024

## Thompson, Scott

| | |
|---|---|
| **From:** | Fineman, Martin |
| **Sent:** | Tuesday, January 29, 2008 12:29 PM |
| **To:** | Thompson, Scott; nmason@nextgnetworks.net |
| **Subject:** | FW: NextG UCP |
| **Attachments:** | 00462488.DOC |

**From:** William Sanders [mailto:William.Sanders@sfgov.org]
**Sent:** Tuesday, January 29, 2008 9:26 AM
**To:** rdelsman@nextgnetworks.net; Toller, Suzanne; Fineman, Martin
**Subject:** NextG UCP

Hi All:

On a number of occasions (including at the hearing on the city's recent motion), NextG informed me that, consistent with the district court's judgment,  the City can require NextG to agree to a new Utility Conditions Permit ("UCP") after the term of NextG's existing UCP expires on July 7, 2008.

I am attaching herewith a proposed new UCP for NextG.   The model for the draft UCP is the version that DPW will issue to any carrier that has CPUC authority similar to NextG's (mostly other DAS providers).   DPW has slightly different versions for CLECs with mitigated neg. decs, personal wireless service providers, and state video providers.

The draft contains a few changes specific to NextG.  They are all redlined.   Important among them is that: (i) the new UCP won't become effective until July 8, 2008, regardless of when it is executed; and (ii) NextG reserves its right to challenge the legality of the provisions contained in the UCP (while waiving any claim for damages).

Please let me know if NextG is willing to sign this now.

William K. Sanders
Deputy City Attorney
City and County of San Francisco
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4682
E-mail: william.sanders@sfgov.org
Tel:  415-554-6771
Fax: 415-554-4757

# CITY AND COUNTY OF SAN FRANCISCO
## UTILITY CONDITIONS PERMIT FOR THE
## CONSTRUCTION, INSTALLATION, AND MAINTENANCE OF
## FACILITIES WITHIN THE PUBLIC RIGHTS-OF-WAY
## BY A CERTIFICATED TELEPHONE CORPORATION

This Utility Conditions Permit ("Permit") is granted by the City and County of San Francisco ("City") to NextG Networks of California, Inc., U-6754-C, a Delaware corporation ("Permittee").

This Permit is granted with reference to the following facts and circumstances.

A. Permittee is certificated by the CPUC to provide Telecommunications Services in California.

B. Permittee has been granted full-facilities-based authority by the CPUC to engage in the physical modification of and/or construction of buildings, towers, conduits, poles and trenches in California.

C. Permittee is providing the Telecommunications Services certificated by the CPUC on a common carrier basis.

D. Permittee intends to construct, install and maintain Facilities within the dedicated Public Rights-Of-Way for the sole purpose of providing Telecommunications Services.

E. City has the authority under federal and state law to prescribe terms and conditions for the use of the Public Rights-Of-Way, including its use for the construction, installation and maintenance of Facilities used to provide Telecommunications Services.

F. The Public Works Code provides that no Person may excavate in the Public Rights-Of-Way without obtaining an excavation permit.

G. The Public Works Code further provides that the Department may not issue an excavation permit unless the applicant has the legal authority to occupy and use the Public Rights-Of-Way for the purposes identified in the excavation permit application.

H. The Administrative Code provides that the Department may not issue a Personal Wireless Service Facilities Site Permit unless the applicant has obtained a Utility Conditions Permit.

I. The Department is issuing this Permit pursuant to the authority contained in Section 11.9 of the Administrative Code.

J.   In addition to other Applicable Law, this Permit shall govern Permittee's right to use the Public Rights-Of-Way.  This Permit does not supersede Permittee's obligation to obtain excavation permits, Personal Wireless Service Facilities Site Permits, or any other permits or Approvals required by City, any Agency, or Applicable Law.

## Section 1   Definitions.

**1.1  Meaning of Capitalized Terms.**  For purposes of this Permit, the following terms, phrases, words, abbreviations their derivations, and other similar terms, when capitalized, shall have the meanings given herein.

**1.1.1**   "Administrative Code" means the City and County of San Francisco Administrative Code.

**1.1.2**   "Agency" means any governmental agency or quasi-governmental agency other than City, including but not limited to the FCC and the CPUC.

**1.1.3**   "Applicable Law" means all applicable federal, state, and City laws, ordinances, codes, rules, regulations, orders, standard plans and specifications, as the same may be amended or adopted from time to time.

**1.1.4**   "Approval," "Approve" or "Approved," when used with reference to City approval, mean the prior written approval of the Director unless another person or method for approval is specified herein or under Applicable Law. When used in reference to any Agency, they mean the final approval of that Agency as provided under Applicable Law.

**1.1.5**   "CEQA" shall mean the California Environmental Quality Act, California Public Resources Code Section 21000 *et seq.*

**1.1.6**   "CPUC" shall mean the California Public Utilities Commission.

**1.1.7**   "City Business Day" means any Monday through Friday that is not observed as an official holiday by the City.

**1.1.8**   "Day" means any calendar day, unless a City Business Day is specified.  For the purposes hereof, if the time in which an act is to be performed falls on a Saturday, Sunday, or any Day observed as an official holiday by City, the time for performance shall be extended to the following City Business Day. For the purposes hereof, the time in which an act is to be performed shall be computed by excluding the first Day and including the last.

**1.1.9**   "Department" means the City and County of San Francisco Department of Public Works.

**1.1.10** "Director" means the Director of the Department or his or her designee.

**1.1.11** "Effective Date" means July 8, 2008. Until the Effective Date, Permittee may continue to construct, install, maintain, locate, move, occupy, operate, place, protect, reconstruct, reinstall, relocate, remove, and replace Facilities within the Public Rights-Of-Way pursuant to the Utility Conditions Permit issued by the Department on July 7, 2006..

**1.1.12** "Facilities" includes any physical element used in connection with, or designed to be used in connection with, the provision of Telecommunications Services by Permittee, whether or not located in the Public Rights-Of-Way, including, without limitation, pedestals, cabinets, ducts and conduits (whether empty or occupied), transformers, equipment, drains, handholds, lines, line extensions, service drops, manholes, poles, power supplies and generators, splice boxes, surface location markers, vaults, tunnels, amplifiers, power guards, nodes, cables, and fiber optics (whether active or dark), including such Facilities lawfully or unlawfully installed prior to the Effective Date of this Permit or after its expiration or termination. Facilities shall include Personal Wireless Service Facilities, except that this Permit shall not be construed to authorize Permittee to construct, install or maintain Personal Wireless Service Facilities without first obtaining Personal Wireless Service Facilities Site Permits.

**1.1.13** "FCC" shall mean the Federal Communications Commission.

**1.1.14** "Fee" means any assessment, license, charge, fee, imposition, tax, deposit, penalty or levy imposed by City or any other Agency.

**1.1.15** "Graffiti" means any inscription, word, figure, marking or design that is affixed, marked, etched, scratched, drawn or painted on any building, structure, fixture or other improvement, whether permanent or temporary, including by way of example only and without limitation, signs, banners, billboards and fencing surrounding construction sites, whether public or private, without the consent of the owner of the property or the owner's authorized agent, and which is visible from the Public Rights-Of-Way. "Graffiti" shall not include: (a) any sign or banner that is authorized by, and in compliance with, the applicable requirements of the Public Works Code, the San Francisco Planning Code or the San Francisco Building Code; or (b) any mural or other painting or marking on the property that is protected as a work of fine art under the California Art Preservation Act (California Civil Code Section 987 *et seq.*) or as a work of visual art under the Federal Visual Artists Rights Act of 1990 (17 U.S.C. Section 101 *et seq.*).

**1.1.16** "Hazardous Material" means any material that, because of its quantity, concentration or physical or chemical characteristics, is deemed by any federal, state or local governmental authority to pose a present or potential hazard

to human health or safety or to the environment. Hazardous Material includes, without limitation: (a) a "hazardous substance" or "pollutant" or "contaminant" pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 9601 *et seq.*) or California Health and Safety Code Sections 25281 and 25316; (b) a "hazardous waste" as defined in California Health and Safety Code Sections 25115-25117 or listed pursuant to California Health and Safety Code Section 25140; (c) asbestos or asbestos containing materials whether or not such materials are part of any Facilities to be constructed on, in or about the Public Rights-Of-Way by or on behalf of Permittee, or are naturally occurring substances on, in, or about the Public Rights-Of-Way; and (d) petroleum, including crude oil or any fraction thereof, and natural gas or natural gas liquids.

**1.1.17** "Person" means any individual, group, company, partnership, association, joint stock company, trust, corporation, society, syndicate, club, business, or governmental entity. Person shall not include City.

**1.1.18** "Personal Wireless Service" means commercial mobile radio services, unlicensed wireless services, and common carrier wireless exchange access services.

**1.1.19** "Personal Wireless Service Facilities" means antennas, node enclosures, and the equipment within node enclosures that are constructed and installed in the Public Rights-Of-Way and are used to provide, or to facilitate the provision of, Telecommunications Services provided by the Permittee to Personal Wireless Service providers and other customers.

**1.1.20** "Personal Wireless Service Facilities Site Permit" means a permit to construct a Personal Wireless Service Facility that is issued by the Department pursuant to Administrative Code § 11.9(b) and Department of Public Works Order No. 177,163.

**1.1.21** "Planning Department" means the City and County of San Francisco Planning Department.

**1.1.22** "Public Rights-Of-Way" means the area in, on, upon, above, beneath, within, along, across, under, and over the public streets, sidewalks, roads, lanes, courts, ways, alleys, spaces, and boulevards within the geographic area of the City in which City now or hereafter holds any property interest, which is dedicated to public use, and which, consistent with the purposes for which it was dedicated, may be used for the purpose of constructing, installing and maintaining Facilities to provide Telecommunications Services to customers.

**1.1.23** "Public Works Code" means the City and County of San Francisco Public Works Code.

**1.1.24**  "Telecommunications Services" means any service regulated by the CPUC and/or the FCC and provided by Permittee in its capacity as a Telephone Corporation.

**1.1.25**  "Telephone Corporation" means an entity that is a public utility regulated by the CPUC under California Public Utilities Code Sections 216 and 234, that has obtained a certificate of public convenience and necessity ("CPCN") from the CPUC pursuant to California Public Utilities Code Section 1001, and that has dedicated its Facilities for use by the public.

**1.2**    **Meaning of Certain Words Used Herein.**  When not inconsistent with the context, words used in the present tense include the future tense; words in the plural number include the singular number; and words in the singular number include the plural number.  The words "shall" and "will" are mandatory.  "May" is permissive.  However, as applied to official action, the words "shall" and "will" shall be directory in effect. Unless otherwise expressly stated, words not defined herein shall be given their common and ordinary meaning.  References to governmental entities (whether persons or entities) refer to those entities or their successors in authority.  Unless otherwise expressly stated, if specific provisions of law referred to herein are renumbered or amended, then the reference shall be read to refer to the renumbered or amended provision.

**Section 2  Permittee's Authority to Obtain this Permit.**

**2.1  Permittee is Certificated to Provide Telecommunications Services.** Permittee is a Telephone Corporation certificated by the CPUC to provide facilities-based Telecommunications Services in California pursuant to the following CPUC decisions **[attach a copy of the decisions]:**

⊠  Facilities-based local exchange Telecommunications Services, pursuant to CPUC Decision Nos. 03-01-061, 06-01-006, and 07-04-045.

⊠  Facilities-based InterLATA Telecommunications Services, pursuant to CPUC Decision Nos. 03-01-061, 06-01-006, and 07-04-045.

⊠  Facilities-based IntraLATA Telecommunications Services, pursuant to CPUC Decision Nos. 03-01-061, 06-01-006, and 07-04-045.

**2.2  Permittee is Authorized to Construct Facilities.**

**2.2.1**  In CPUC Decision Nos. 03-01-061 and 06-01-006, the CPUC, as the lead agency for CEQA, determined that Permittee's construction of facilities in or on existing building or structures would not have a significant effect on the environment.  Pursuant to CPUC Decision No. 07-04-045, the CPUC will conduct

further environmental review of some of Permittee's other activities, and may determine that certain of those activities are categorically exempt from CEQA.

**2.2.2**    In the event the CPUC, as the lead agency, subsequently determines that any of Permittee's proposed construction activities could have any significant adverse effects on the environment, or otherwise requires Permittee to undergo further CEQA review before engaging in certain construction activities, Permittee will not engage in any such construction activities until one of the following has occurred: (a) the CPUC has determined that Permittee's proposed construction activities are exempt from CEQA; or (b) the CPUC has Approved Permittee's formal application for full CEQA review for any proposed construction activities that the CPUC previously determined were not exempt from CEQA.

**2.2.3**    In the event the CPUC subsequently determines that the City should act as the lead agency for Permittee's construction activities, or should the City determine a need to conduct a separate environmental review of certain of Permittee's construction activities, where required by the Department Permittee shall submit an application to the Planning Department for review in accordance with CEQA.  Permittee shall be responsible for paying the costs and fees for environmental review by the Planning Department, including without limitation any environmental impact report.

**2.2.4**    If the CPUC or the Planning Department determine that Permittee's application to construct any Facilities will cause significant adverse environmental effects that have not been mitigated, the Department retains absolute discretion to: (a) modify the application, or any part thereof, to mitigate significant adverse environmental impacts; (b) select feasible alternatives that avoid significant adverse environmental impacts of the application, or any part thereof; (c) require the implementation of specific measures to mitigate the significant adverse environmental impacts of the application, or any part thereof, as identified upon environmental evaluation in compliance with CEQA; (d) reject the application, or any part thereof, as proposed if the economic and social benefits of the application, or any part thereof, do not outweigh otherwise unavoidable significant adverse impacts; or (e) Approve the application, or any part thereof, upon a finding that the economic and social benefits of the application, or any part thereof, outweigh otherwise unavoidable significant adverse impacts.

**2.3    Representations and Warranties of Permittee.**  Permittee represents and warrants to City that the following information is true and correct as of the Effective Date:

**2.3.1**    Permittee has exercised the authority granted to it by the CPUC and is offering the Telecommunications Services identified in Section 2.1 on a common carrier basis.

**2.3.2**    Permittee has complied with any and all applicable tariffing requirements imposed on Permittee by the CPUC.

**2.3.3**    Permittee has complied with any and all applicable construction or other requirements imposed on Permittee by the CPUC.

**2.3.4**    The CPUC has not revoked Permittee's authority to provide Telecommunications Services.

**2.3.5**    Permittee is not authorized and has not sought authorization to use the Facilities to offer or provide any services other than the Telecommunications Services identified in Section 2.1.

**2.4    Permittee Shall Notify City of Any Material Changes.**  Permittee understands that City has relied upon the statements contained in this Section in granting the Permit and that the City would not have granted the Permit but for Permittee providing City with the information contained therein.  Permittee shall notify City immediately of any event that makes such statements no longer true, accurate and/or complete.

**Section 3    Term, Permit Fee, Renewal, and Termination.**

**3.1    Term.**  This Permit shall be in effect and binding on Permittee on the Effective Date and shall be valid for two years after the Effective Date, unless earlier terminated pursuant to Section 3.5 or other Applicable Law or renewed pursuant to Sections 3.3-3.4.

**3.2    Permit Fee.**  At the time Permittee submits an executed Permit to the Department for Approval by the Director, Permittee shall enclose a check drawn to the Department in the amount of $2,000.

**3.3    Renewal of Permit.**  City may renew this Permit for one additional two-year period upon request in writing received by City within 30 Days prior to the expiration date of this Permit as set forth in Section 3.1.  Permittee shall inform City at that time of any material change in the information contained in Section 2 and shall remit a renewal fee in the amount of $2,000 or such other amount as authorized by Applicable Law.

**3.4    City Will Notify Permittee of Renewal or Rejection.**  In the event Permittee timely requests renewal of this Permit, City shall notify Permittee in writing whether this Permit has been renewed or rejected.  Nothing herein shall be construed to require City to renew this Permit.  City shall have the authority to reject Permittee's request for renewal in the event Permittee notifies City of any material change in the information contained in Section 2 that would have warranted City's refusal to grant this

Permit in the first place.  Any permit issued pursuant to Permittee's renewal application shall be subject to any additional conditions that City in its sole discretion may require.

**3.5   Termination for Breach of a Material Condition.**  City may terminate this Permit for Permittee's breach of any material condition of this Permit.  The material conditions of this Permit shall include, but not be limited to, the requirement that Permittee: (a) be certificated by the CPUC to provide Telecommunications Services; (b) use the Facilities only to provide Telecommunications Services; (c) obtain all required permits from City; (d) remove, relocate, adjust, support and/or underground the Facilities upon demand by City; (e) restore the Public Rights-Of-Way to a safe and satisfactory condition; (f) indemnify and defend City; (g) procure and maintain in effect specified insurance and a deposit or bond; (h) comply with Applicable Law including CEQA; (i) pay any penalty imposed by the Director; (j) give any information, notice or document to City required under this Permit; (k) pay, collect or remit any Fee; (l) participate in Department programs and join a regional notification center; (m) obtain Personal Wireless Service Facilities Site Permits; (n) transfer this Permit only with City's consent; (o) sell or lease the Facilities only to Persons that are authorized to use the Public Rights-Of-Way; and (p) remove Graffiti from its Facilities located in the Public Rights-Of-Way..

**3.6   Notice of Termination.**  City shall give Permittee written notice that City intends to terminate this Permit for Permittee's breach of any material term or condition of this Permit.  City may terminate this Permit if Permittee fails to cure such breach within 15 Days of receipt of City's notice or termination or, if such breach cannot reasonably be cured within 15 Days, Permittee fails promptly to commence such cure within such 15-Day period and to diligently take such steps as necessary to complete such cure.

**3.7   Permittee's Obligations Survive the Expiration or Termination of this Permit.**  Any and all of Permittee's obligations under this Permit that, by their nature, would reasonably be expected to be complied with or performed by Permittee after the expiration or termination of this Permit, shall survive and be enforceable after the expiration or termination of this Permit.  The obligations that shall survive the expiration or termination of this Permit shall include, but not be limited to, the requirement that Permittee: (a) remove, relocate, adjust, support and/or underground the Facilities upon demand by City; (b) restore the Public Rights-Of-Way; (c) indemnify and defend City; (d) pay any penalty imposed by the Director; (e) pay, collect or remit any Fee; and (f) join a regional notification center.

**Section 4   Authorization and Conditions.**

**4.1   Permittee is Authorized to Construct Facilities in the Public Rights-Of-Way.**  Subject to the provisions of this Permit and other Applicable Law, pursuant to Section 11.9(a) of the Administrative Code, City hereby authorizes Permittee to construct, install, maintain, locate, move, occupy, operate, place, protect, reconstruct,

reinstall, relocate, remove, and replace Facilities within the Public Rights-Of-Way for the sole purpose of providing Telecommunications Services on a common carrier basis. This Permit does not supersede Permittee's obligation to obtain individual excavation permits, Personal Wireless Service Facilities Site Permits, or any other permits required by City or any Agency. Nothing in this Permit is intended to imply that the City will issue any permits and/or Approvals.

**4.2    Permittee's Authority is Subordinate to City's Occupancy Rights.**
Notwithstanding any other provision of this Permit, all privileges expressly or impliedly granted by this Permit shall be subordinate to any prior lawful occupancy and the continuing right of City to use and occupy the Public Rights-Of-Way, or any part thereof exclusively or concurrently with any other Person, and further subject to the public easement for streets and any and all other deeds, easements, dedications, conditions, covenants, restrictions, encumbrances, franchises and claims of title that may affect the Public Rights-Of-Way. Permittee may not place Facilities in the Public Rights-Of-Way in a manner or in any locations that are inconsistent with the requirements of the Public Works Code, Administrative Code, the rules, regulations, orders, and standard plans and specifications issued by the Department, other Applicable Law, or in such a way as to interfere with or incommode public use of the Public Rights-Of-Way.

**4.3    Permittee Shall Obtain All Necessary Permits and/or Approvals.**
Permittee shall not commence any work within the Public Rights-Of-Way until all necessary permits and/or Approvals have been issued. Specifically, before starting each construction project or other activity in the Public Rights-Of-Way, Permittee shall apply for and obtain excavation permits Article 2.4 of the Public Works Code, Personal Wireless Service Facilities Site Permits under Section 11.9(b) of the Administrative Code, and/or all other required regulatory permits and/or Approvals in accordance with Applicable Law including CEQA. Nothing in this Permit is intended to imply that City will issue any permits and/or Approvals. Permittee shall pay all Fees required as a condition precedent to the issuance of any such permits and/or Approvals in accordance with the applicable rates and charges then in effect. In addition, City may impose such terms and conditions on a permit or Approval as are necessary, consistent with Applicable Law, including, without limitation, conditions imposed for the purpose of protecting and/or preserving the Public Rights-Of-Way and any structures in the Public Rights-Of-Way, and the protection of the public or the continuity of pedestrian or vehicular traffic over the Public Rights-Of-Way.

**4.4    Permittee Shall Make Reasonable Efforts to Limit Construction in the Public Rights-Of-Way.** In order to limit construction in the Public Rights-Of-Way, prior to filing an application for an excavation permit or a Personal Wireless Service Facilities Site Permit Permittee shall make reasonable efforts to determine whether any Persons have unused Facilities (including Personal Wireless Service Facilities) in the vicinity of the locations in the Public Rights-Of-Way where Permittee seeks to install Facilities that may be purchased or leased by Permittee at a reasonable cost. In addition,

Permittee shall fully comply with the coordination of excavation provisions contained in Section 2.4.11 of the Public Works Code.

**4.5    Permittee Shall Comply with Applicable Law and Mitigation Measures.** All work performed in the Public Rights-Of-Way by Permittee and/or its agents shall comply with the terms and conditions of this Permit, any other permits or Approvals, and other Applicable Law, including, but not limited to, the Administrative Code, Public Works Code, City's Fire Code, City's Business and Tax Regulations Code, and CPUC General Orders 95 and 128. Permittee and/or its agents shall also comply with all mitigation measures required under CEQA ensuring that Permittee's work will not have any significant adverse effects on the environment that are now or hereafter contained in Permittee's CPCN, any negative declaration issued pursuant to CEQA, any CPUC order or decision, any permit or Approval issued by City to Permittee relative to its use of the Public Rights-Of-Way, and other Applicable Law.

**4.6    Permittee Shall Provide City with an Emergency Response Plan.** Prior to conducting any work in the Public Rights-Of-Way, Permittee shall provide to City a current emergency response plan identifying staff who have authority to resolve, 24 hours a Day, seven Days a week, problems or complaints resulting from the Facilities. Permittee shall notify City immediately of any changes to the staff to be notified in case of an emergency.

**4.7    Permittee Shall Collect and Remit Taxes.** Where required under Applicable Law, Permittee shall collect and remit to City the utility users tax, pursuant to Article 10 of City's Business and Tax Regulations Code, and the emergency response fee, pursuant to Article 10A of City's Business and Tax Regulations Code. Permittee shall provide such records to City as City may require to confirm compliance with this requirement.

**4.8    Permittee Shall Only Provide Telecommunications Services.** Permittee shall use the Facilities to provide Telecommunications Services only. Use of the Facilities for any other purpose including, but not limited to, the provision of any cable or video services shall constitute a violation of the material conditions of this Permit unless and until City or other applicable federal or state agency authorizes such additional use pursuant to the terms of any separate permit, franchise or agreement required under federal, state or City law.

**4.9    Permittee Shall Comply with Applicable Law Regulating Hazardous Materials.** Permittee shall comply with Applicable Law regulating Hazardous Materials. Without limiting the generality of the foregoing, Permittee shall not use, generate, transport, store, emit, discharge or dispose of Hazardous Materials on, under or about the Public Rights-Of-Way, nor will it transport or permit the transport of Hazardous Materials to or from the Public Rights-Of-Way, except for: (a) standard building materials and equipment that do not contain asbestos or asbestos-containing materials, lead or polychlorinated biphenyl (PCBs); (b) gasoline and other fuel products used to

transport and operate vehicles and equipment; and (c) Hazardous Materials that do not require a permit or license from, or that need not be reported to, a governmental agency, provided that such Hazardous Materials are used in the ordinary course of Permittee's business and in strict compliance with Applicable Law.

**4.10    Permittee Shall Participate in Department Programs.**  Permittee shall participate in the Department's Pavement Management Program and the Committee for Utility Liaison on Construction and Other Projects established by Section 5.63 of the Administrative Code, or any successor organization established by the Department, in the manner prescribed by the Department.  Permittee shall take all reasonable precautions to protect all other facilities located under the street.

**4.11    Permittee Shall Obtain Membership in a Regional Notification Center.**  In accordance with the provisions of Chapter 3.1 of Division 5 of Title I of the California Government Code (Section 4216 *et seq.*), Permittee as an operator of a subsurface installation shall obtain and maintain membership in a regional notification center (e.g., Underground Service Alert - Northern California), and shall otherwise comply with the provisions of the referenced chapter, division and title.  Permittee shall furnish written proof of such membership to the Department prior to issuance by the City of an excavation permit.  Repeal of any Applicable Law requiring such membership shall not negate Permittee's obligation to maintain such membership.

**4.12    Permittee Shall Maintain Plans and Record Drawings of Facilities.** Permittee shall maintain current, accurate and complete plans and record drawings showing, in detail, the exact location, depth, and size of any Facilities constructed or installed in the Public Rights-Of-Way.  Upon demand from the Department, such plans and record drawings shall be delivered to the Department in a form to be determined by the Department pursuant to the following timeframes: (a) immediately in the event of an emergency; (b) within five City Business Days for requests of ten or fewer records; or (c) within ten City Business Days for requests of more than ten records.

**4.13    Permittee Shall Cooperate with City.**  In the event City reasonably believes that Permittee is violating the terms and conditions of this Permit, any provision of the Administrative Code, the Public Works Code or other Applicable Law, Permittee shall cooperate fully with City and provide City such information as City may reasonably require to verify Permittee's compliance or lack thereof.

**4.14    Personal Wireless Service Facilities Site Permits Required.** Notwithstanding the authority granted to Permittee under Section 4.1, Permittee may not construct, install or maintain Personal Wireless Service Facilities in the Public Rights-of-Way without first obtaining Personal Wireless Service Facilities Site Permits.

**Section 5   City's Continuing Authority.**

    **5.1   City's Authority to Require Permittee to Remove, Relocate, Adjust, and/or Support the Facilities to Accommodate City Needs.** City reserves the right to occupy the Public Rights-Of-Way, or any part thereof, which is now occupied or is in the future to be occupied by Permittee's Facilities. When required to ensure the public health, safety or welfare, or when made necessary by any lawful change of grade, alignment or width of any street, or by any work to be performed under governmental authority of City, Permittee shall at its own cost and expense: (a) temporarily or permanently remove or relocate the Facilities, or any part thereof, to such other locations in the Public Rights-Of-Way as may be designated or Approved in writing and in advance by City; or (b) adjust and/or support the Facilities in such manner as may be designated or Approved in writing and in advance by City. City may not unreasonably withhold Approval of any plan for removal, relocation, adjustment and/or support of the Facilities ordered pursuant to this Section. Such removal, relocation, adjustment and/or support shall be completed within the time prescribed by City. If Permittee fails to remove, relocate, adjust and/or support the Facilities in the manner and time prescribed by City, City may take all reasonable, necessary, and appropriate action to remedy Permittee's failure to comply and may charge the reasonable costs actually incurred, including but not limited to administrative costs, to Permittee.

    **5.2   City's Authority to Require Permittee to Remove the Facilities Upon the Expiration or Termination of this Permit.** Upon the expiration or termination of this Permit, City may require Permittee to permanently remove the Facilities, or any part thereof, at Permittee's own cost and expense. Such removal shall be completed within the time prescribed by City. If Permittee fails to remove the Facilities in the manner and time prescribed by City, City may take all reasonable, necessary, and appropriate action to remedy Permittee's failure to comply and may charge the reasonable costs actually incurred, including but not limited to administrative costs, to Permittee.

    **5.3   City's Authority to Determine that Permittee's Facilities are Abandoned.** Permittee shall notify City, or City may determine pursuant to Sections 11.33(a)-(b) or 11.33(f) of the Administrative Code, that the Facilities, or any part thereof, are abandoned. At City's sole option, Permittee shall: (a) convey such abandoned Facilities to City at no cost to City by executing such documents of title as will convey all right, title, and interest in the Facilities, or any part thereof, to City free and clear of liens and/or adverse claims of title; and/or (b) promptly remove all or a portion of the abandoned Facilities and restore City property as required by City and consistent with Applicable Law, at Permittee's expense. If Permittee fails to remove the abandoned Facilities within a reasonable period of time after receiving such a demand from City, City may take all reasonable, necessary, and appropriate action to remedy Permittee's failure to comply and may charge the reasonable costs actually incurred, including but not limited to administrative costs, to Permittee. Permittee shall assume all liability for abandoned Facilities unless and until Permittee conveys title to such

Facilities to another Person consistent with the requirements of this Permit or other Applicable Law or City takes title to such Facilities pursuant to this Section.

**5.4    City's Authority to Require Permittee to Restore the Public Rights-Of-Way.**  Whenever the removal, relocation, adjustment and/or support of the Facilities is required under Sections 5.1-5.3, Permittee shall, after such work is complete, at its own cost and expense and at no cost to City, promptly repair, restore and return the Public Rights-Of-Way in which the Facilities are located to a safe and satisfactory condition.  If Permittee fails to restore the Public Rights-Of-Way in accordance with this Permit and Applicable Law, City shall have the option to perform or cause to be performed such restoration in such manner as City deems expedient and appropriate on behalf of Permittee and charge the actual costs incurred, including but not limited to administrative costs, to Permittee.

**5.5    Permittee Shall Reimburse City for its Costs.**  Upon the receipt of a demand for payment by City, Permittee shall reimburse City for any costs the City incurs under Sections 5.1-5.4, or the cost of such work may be deducted from the Permittee's deposit under Section 2.4.46(c) of the Public Works Code.

**5.6    City's Authority to Require Permittee to Comply with City's Street Furniture Policy.**  If required, Permittee shall also comply with Department Order No. 175,388, establishing certain requirements for the installation of surface-mounted facilities in the Public Rights-Of-Way.  Permittee acknowledges that City, by issuing this Permit, has not relinquished City's authority to adopt a new street furniture policy or to enforce that policy with respect to Permittee's Facilities, including Facilities installed on utility poles.

**5.7    City's Authority to Require Permittee to Underground its Facilities.**  Permittee shall not install overhead Facilities in the Public Rights-Of-Way within Legislated Underground Districts, pursuant to Section 911 of the Public Works Code or in areas where utility services are provided by rear yard feeds.  Upon receipt of a demand from City pursuant to Applicable Law, Permittee shall, at no cost to City, remove its overhead Facilities.  To the extent its overhead Facilities can be placed underground, Permittee also may elect to replace any of those overhead Facilities with underground Facilities in accordance with Applicable Law.

**Section 6    Liability, Indemnification, Insurance, and Deposits.**

**6.1    Compliance with City's Public Works Code.**  The liability, indemnification and insurance provisions contained in Sections 2.4.23(a)-(c) of the Public Works Code and the deposit provisions contained in Section 2.4.40 of the Public Works Code shall apply to this Permit and are incorporated by reference as though fully set forth herein.

**6.2    Termination for Lapse of Insurance Coverage.**  Permittee's compliance with Section 6.1 shall in no way relieve or decrease Permittee's indemnification obligations under this Permit or any of Permittee's other obligations hereunder. Notwithstanding anything to the contrary in this Permit, this Permit shall terminate immediately, without notice to Permittee, upon the lapse of any required insurance coverage.

## Section 7  Penalties.

**7.1    Penalties.**  Permittee may be liable for administrative, civil and/or criminal penalties for failure to comply with any of the terms and conditions of this Permit or Applicable Law, including, but not limited to, Sections 2.4.80 *et seq.* of the Public Works Code and Sections 11.73 *et seq.* of the Administrative Code.

**7.2    All Remedies Cumulative.**  All remedies for violations of this Permit or other Applicable Law, including the Administrative Code and the Public Works Code, are cumulative unless otherwise expressly stated.  The exercise of one remedy shall not foreclose use of another, nor shall the exercise of a remedy or the payment of any penalty relieve a Permittee of its obligations to comply with this Permit or other Applicable Law. Remedies may be used singly or in combination.  In addition, City may exercise any rights it has at law or in equity.  Nothing in this Permit limits City's authority to revoke any permit issued to Permittee based on any violation by Permittee of the terms and conditions of such permit or this Permit.

## Section 8  Transfer of Permit and Sale or Lease of Facilities.

**8.1    No Transfer of Permit.**  This Permit is a privilege that is personal and specific to Permittee.  Neither this Permit nor any of the privileges conferred under it may be sold, conveyed, assigned, encumbered, or otherwise transferred by Permittee without the express written consent of City.  Any attempt to sell, convey, assign, encumber or otherwise transfer this Permit or the privileges conferred it under without first obtaining City's consent may result in the City's termination of this Permit.  The City reserves the right to withhold its consent in the event that the proposed transferee has not obtained all necessary Agency and City permits and/or Approvals to use the Public Rights-Of-Way to provide State Video Services or other services including, but not limited to, a certificate of public convenience and necessity, a utility conditions permit, a franchise, or an encroachment permit.

**8.2    Permittee May Allow Another Person to Buy, Lease, Operate, Control, or Use the Facilities.**  Notwithstanding the provisions of Section 8.1, Permittee may allow another Person to buy, lease, operate, control or use a portion or portions of the Facilities provided that Permittee does not sell or lease its Facilities to any Person that has not obtained all necessary Agency and City permits and/or Approvals to use the Public Rights-Of-Way to provide Telecommunications Services or other services

including, but not limited to, a CPCN, a utility conditions permit, a franchise, or an encroachment permit.

**Section 9    Miscellaneous Provisions.**

**9.1    City's Reservation of Authority.**  Unless expressly stated otherwise herein, nothing in this Permit is intended to constitute a waiver in favor of Permittee of any construction, excavation, or Facility placement requirement, or any Fee, tax, charge, or assessment that may be required or allowed by Applicable Law including, but not limited to, a Fee for use of the Public Rights-Of-Way.  Except where rights and privileges are expressly waived by City, they are reserved, whether expressly enumerated or not.  City shall have the plenary authority to regulate Permittee and its Facilities as may now or hereafter be lawfully permissible pursuant to its police powers and municipal powers authority.

**9.2    Activities at Permittee's Expense.**  Any act that Permittee is or may be required to perform under this Permit, the Public Works Code, Administrative Code, or other Applicable Law shall be performed at Permittee's expense and without cost to City, unless expressly provided to the contrary under Applicable Law.

**9.3    No Real Property Interest Conveyed.**  Nothing in this Permit, nor any use hereunder, shall be deemed to grant, convey, create, or vest in Permittee a real property interest in any portion of the Public Rights-Of-Way or City property including, but not limited to, any fee or leasehold interest in land, easement, or franchise, except that nothing herein shall affect any possible liability for possessory interest taxes pursuant to Section 9.5.

**9.4    Permittee's Facilities are Permittee's Personal Property.**  All Facilities installed by Permittee in the Public Rights-Of-Way are Permittee's personal property and are subject to removal upon notice from City or upon the expiration or termination of this Permit.  Permittee's Facilities are not subject to a lien under Article XIV, Section 3 of the California Constitution or under Division 3, Part Four, Title XV, Chapter 2 of the California Civil Code.

**9.5    Possessory Interest Tax.**  Permittee, on behalf of itself and any permitted successor, lessee, or assign, recognizes and understands that this Permit may create a possessory interest subject to property taxation and that Permittee, its successor, lessee, or assign may be subject to the payment of such taxes.  (California Constitution, Article XIII, Section 1; California Revenue and Taxation Code Sections 104, 107, 201.)  If such a possessory interest is created, then the following shall apply:

**9.5.1**   Permittee and any permitted successors and assigns may be subject to real property tax assessments on the possessory interest.

**9.5.2**   The creation, extension, renewal, or assignment of this Permit may result in a "change in ownership" for purposes of real property taxes, and therefore may result in a revaluation of any possessory interest created by this Permit.  Permittee accordingly agrees on behalf of itself and its permitted successors and assigns to report on behalf of the City to the County Assessor the information required by California Revenue and Taxation Code Sections 480.5 and 480.6.

**9.5.3**   Other events (see, e.g., California Revenue and Taxation Code Section 64) also may cause a change of ownership of the possessory interest and result in the revaluation of the possessory interest.  Permittee accordingly agrees, on behalf of itself and its permitted successors and assigns, to report, as required by Applicable Law, any information related to a possible change in ownership to the County Assessor, the State Board of Equalization or other public agency.

**9.5.4**   Permittee agrees to provide such other information as may be requested by the City to enable the City to comply with any reporting requirements for possessory interests that are imposed by Applicable Law.

**9.6   Sunshine Ordinance.**  The City's Sunshine Ordinance (Administrative Code, Chapter 67) and the State Public Records Law (California Government Code Section 6250 *et seq.*), apply to this Permit and any and all records, information, and materials submitted to the City hereunder are public records subject to public disclosure.

**9.7   Integrated Pest Management Program.**  Permittee shall comply with all applicable provisions of City's Integrated Pest Management Program pursuant to Chapter 3 of the City's Environment Code in the event that Permittee applies pesticides to City property or the Public Rights-Of-Way.

**9.8   Prohibition on Tobacco Product Advertising.**  Permittee shall comply with the City's prohibition on tobacco product advertising, as set forth in Chapter 4, Section 4.20 of the Administrative Code.  Permittee shall not advertise cigarettes or tobacco products on any property owned by or under the control of the City.  This prohibition includes the placement of the name of a company producing, selling or distributing cigarettes or tobacco products or the name of any cigarette or tobacco product in any promotion of any event or product.

**9.9   Graffiti Removal.**  Graffiti is detrimental to the health, safety and welfare of the community in that it promotes a perception in the community that the laws protecting public and private property can be disregarded with impunity.  This perception fosters a sense of disrespect of the law that results in an increase in crime; degrades the community and leads to urban blight; is detrimental to property values, business opportunities and the

enjoyment of life; is inconsistent with the City's property maintenance goals and aesthetic standards; and results in additional Graffiti and in other properties becoming the target of Graffiti unless it is quickly removed from public and private property. Graffiti results in visual pollution and is a public nuisance. Graffiti must be abated as quickly as possible to avoid detrimental impacts on the City and its residents, and to prevent the further spread of Graffiti. Permittee shall remove all Graffiti from any Facilities in the Public Rights-Of-Way within 48 hours of the earlier of Permittee's: (a) discovery or notification of the Graffiti; or (b) receipt of notification of the Graffiti from the Department.

**9.10  Construction of this Permit.**  The provisions of this Permit shall be governed and construed by and in accordance with California law and the City Charter. Paragraph captions shall be for reference only and shall not be considered in construing this Permit.

**9.11  Order of Precedence.**  To the extent the provisions of this Permit and any other permit required to be obtained by Permittee from City are in conflict, the provisions which impose the higher or greater legal duty or obligation upon Permittee shall take precedence.

**9.12  Severability.**  If any provision of this Permit, or any part of any provision, is for any reason held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the validity or enforceability of any other provision of this Permit.

**9.13  Permittee's Reservation of Rights/Waiver of Liability for Damages.**

**9.13.1**  Nothing in this Permit shall be construed as a waiver of Permittee's rights under state and federal law to seek declaratory and injunctive relief, or any other legal or equitable remedy, regarding the City's authority to require this Permit or any permits related thereto, including but not limited to Personal Wireless Service Facilities Site Permits and, except as set forth in Section 9.13.2, Permittee reserves all rights accordingly.

**9.13.2**  Notwithstanding Permittee's reservation of rights under Section 9.13.1, Permittee, for itself and any partners, successors, administrators, executors, trustees, beneficiaries, assigns, directors, shareholders, officers, agents, servants, attorneys, and other representatives and employees hereby releases, acquits, and forever discharges the City, and its respective officers, agents, servants, attorneys, and employees, elective and/or appointive boards, commissioners, consultants, and other representatives of and from any and all monetary damages, costs, expenses, attorneys' fees, and debts whatsoever, in law or in equity, known or unknown, suspected or unsuspected, that Permittee ever had, now has, or in the future may have, against the City, and its respective officers, agents, servants, attorneys, and employees, elective and/or appointive boards, commissioners, consultants, and other representatives, arising from or in

any way connected with any and all claims, liabilities, causes of action, rights of action and demands for relief Permittee might have against City concerning the City's authority to require this Permit or any permits related thereto, including but not limited to Wireless Services Facilities Site Permits. Permittee acknowledges that it has read and fully understands the statutory language of § 1542 of the Civil Code of the State of California, and on that basis Permittee expressly and specifically waives all rights and benefits under said statute (and any similar provision), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

**Section 10    Notices.**

    **10.1    Notices.**  All notices which shall or may be given pursuant to this Permit shall be in writing and transmitted through the United States mail, by means of private delivery systems, or by facsimile transmission, if a hard copy of the same is followed by delivery through the United States mail or by private delivery systems, as follows:

<u>**CITY**</u>:    City and County of San Francisco
    Department of Public Works
    875 Stevenson Street, Room 460
    San Francisco, CA 94103
    Attn: BSM Manager
    Tel:  (415) 554-5810
    Fax: (415) 554-5843
    E-mail:  barbara.moy@sfdpw.org

Copy:    Office of the City Attorney
    City Hall, Room 234
    1 Dr. Carlton B. Goodlett Place
    San Francisco, CA 94102-4682
    Attn:  Energy and Telecommunications Team
    Tel:  (415) 554-4700
    Fax:  (415) 554-4757
    E-mail: theresa.mueller@sfgov.org

<u>**PERMITTEE**</u>:  Robert L. Delsman
Vice President, Government Relations &
Regulatory Affairs
2219 O'Toole Avenue
San Jose, CA 95131
Telephone:  (408) 954-1580
Facsimile:  (408) 338-5397
E-mail:  rdelsman@nextgnetworks.net

Copy:  Suzanne Toller
Davis Wright Tremaine, LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599
E-mail: suzannetoller@DWT.com

**10.2  Changes to Person to Receive Notices.**  Permittee shall notify City immediately of any changes to the person to receive notices from City under this Permit.

Permittee represents and warrants to City that it has read and understands the contents of this Permit, has had an opportunity to review and discuss it with counsel of its choosing, and agrees to comply with and be bound by all of its provisions.

**CITY & COUNTY OF SAN FRANCISCO:**

**PERMITTEE:**
NextG Networks of California, Inc.

_____
Edward D. Reiskin
Director, Department of Public Works

_____
Robert L. Delsman
Vice President, Government
Relations & Regulatory Affairs

Date:_____

Date:_____

APPROVED AS TO FORM:
DENNIS J. HERRERA, City Attorney

By:_____
        Deputy City Attorney

Date:_____



**NextG Networks, Inc.**  2216 O'Toole Avenue, San Jose, CA 95131  •  Telephone 408.954.1580  •  Fax 408.383.5397

**NextG Networks**

*EMPOWERING NEXT GENERATION*
*WIRELESS NETWORKS*

August 2, 2007

Supervisor Sophie Maxwell
Supervisor Gerardo Sandoval
Supervisor Jake McGoldrick
Members, Land Use and Economic Development Committee
Board of Supervisors, City and County of San Francisco
Room 263
City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, CA  94102-4689

> *Re:    August 6, 2007 Agenda Item 070904, Proposed Ordinance for Issuance of*
> *Permits to Install Certain Telecommunications Facilities in Public Rights-of-Way.*

Dear Supervisors:

I am writing on behalf of NextG Networks of California, Inc. ("NextG") regarding the above-referenced Agenda Item, which is scheduled for consideration at the Committee's August 6, 2007 meeting.  Agenda Item 070904 is a proposed ordinance that would create a new regime for permitting the installation of certain communications facilities in public rights-of-way, specifically "Personal Wireless Service Facilities" as defined therein ("Proposed Ordinance").  As discussed below, the Proposed Ordinance would contravene federal and state law protecting the rights of telecommunications carriers to access public rights-of-way, and be specifically inconsistent with a Court Order recently issued to the City.  Accordingly, NextG urges the Committee not to refer the Proposed Ordinance to the Board of Supervisors in its current form.

NextG constructs fiber-based distributed antenna system ("DAS") networks that provide landline signal transport of wireless carriers' signals and result in improved coverage and capacity for wireless carriers' networks and the citizens and public safety officers who rely on them for mobile communications.  NextG holds a certificate of public convenience and necessity issued by the California Public Utilities Commission to operate as a full facilities-based telecommunications carrier.  Although NextG offers telephone service to providers of Commercial Mobile Radio Services ("CMRS"), and components of its facilities could constitute "Personal Wireless Service Facilities" under the definitions in the proposed ordinance, NextG itself is not a wireless carrier and does not provide "Personal Wireless

Services." However, the Proposed Ordinance would apply to infrastructure used to *facilitate* the provision of Personal Wireless Services, which arguably could include NextG's facilities. NextG therefore has a compelling interest in this matter.

Both the United States Congress and the California Legislature expressly have stated a strong policy in favor of the rapid deployment of competitive, advanced telecommunications networks and services. In furtherance of that policy, federal and state law impose certain limitations on local control over access to public rights-of-way by providers of telecommunications services. In particular, Section 253 of the federal Communications Act (47 U.S.C. § 253) prohibits local entities from erecting barriers that prohibit or have the "effect of prohibiting" the ability of any entity to provide telecommunications services. At the state level, Section 7901 of the California Public Utilities Code grants telephone corporations the right to install facilities along public rights-of-way without the need for discretionary local permits.

Under Section 253, any local "entry procedures" that impose burdensome requirements on telecommunications companies or vest significant discretion in local governmental decision-makers to grant or deny essential permits constitute an "effective prohibition" in violation of Section 253(a). For example, in *Sprint Telephony PCS, L.P. v. County of San Diego*, __ F.3d __, 2007 WL 1695330 (9th Cir. 2007), the Ninth Circuit recently held that San Diego County's permitting ordinance for wireless facilities constitutes an effective prohibition and is preempted by Section 253. The Court's analysis focused on the ordinance's burdensome submission requirements, as well as the "open-ended discretion" it granted the county to approve or deny permits. The Court found this discretion to be embodied in vague standards empowering the county to decide whether a proposed facility is "camouflaged," "consistent with community character" and designed for "minimum visual impact." 2007 WL 1695330 at *14. The lower court's analysis, affirmed by the Ninth Circuit, highlighted the fact that the ordinance allowed the county to impose open-ended permit conditions based upon the "broad goals of public health, safety and welfare . . . ." *Sprint Telephony PCS, L.P. v. County of San Diego*, 377 F.Supp.2d 886, 895-896 (S.D. Cal 2005). Several other Court decisions are consistent in striking down, as violating Section 253, permitting regimes with discretionary elements.

Like the San Diego County provisions invalidated in *Sprint Telephony*, the Proposed Ordinance would grant the City and County of San Francisco (the "City") impermissible, open-ended discretion to grant or deny permits to install wireless facilities in the public right-of-way. As under the invalid San Diego Ordinance, the City could impose any conditions it believes will "protect and benefit the public health, safety and welfare." (Sec. 11.9(b)(1)). For proposed installations in historic or "significant" districts, the City would be required to determine that the installation would be "consistent with the public health, safety, convenience and general welfare and/or will not unreasonably affect, intrude upon or diminish any of the identified City resources." (Sec. 11.9(b)(2)(A)) These vague, undefined standards closely parallel those in the San Diego County provisions, which the Courts found to involve such "considerable discretion" that they violated Section 253.

The Proposed Ordinance is problematic for other reasons as well. The Ordinance does not appear to apply in the same manner to the incumbent local exchange carrier, AT&T California, or to other entities such as electric utilities installing similar equipment in the

right-of-way. Such entities only require a non-discretionary permit, however, by its terms, the Ordinance imposes the non-discretionary UCP and an additional discretionary permit requirement on only certain types of communications carriers and facilities, namely wireless carriers and facilities as such is defined by the Ordinance. NextG notes that this Ordinance would allow certain types of antennas (e.g. those used by electric utilities) to be installed in the right of way with just the non-discretionary UCP. Under Section 253(c), however, a local government's "management" of carriers' use of the public rights-of-way must be "competitively neutral and non-discriminatory." Different permit requirements applied to some communications companies and facilities but not others is not competitively neutral management of the right of way, but is discriminatory and inhibits the ability of new and competing communications companies to provide service.

In addition, the Proposed Ordinance would require the payment of hefty permit fees: a non-refundable $2,000.00 Utility Conditions Permit application fee (to compensate the City for "establishing" an applicant's right to access the right-of-way), a $75.00 "wireless" permit application fee for each site, a $150.00 inspection fee for each site, additional fees when other City entities are involved as well as any other fee the City in its discretion may require to cover "unusual" costs. (Sec. 11.9(a)(2), 11.9(b)(3)). There is no justification for such fees, especially the extra fees imposed on only some communications facilities. In particular, a carrier's right to access the right-of-way is apparent on the face of its federal or state license. Verifying that right should not require such significant "compensation" to the City. In holding that Section 253 preempted the City's application of its discretionary major encroachment permit requirement to NextG, the Court found those permit requirements to be overly burdensome, noting in part that such a permit requires an "$800 processing fee as well as $4,000 to cover [the City's] reasonable administrative costs and attorney's [sic] fees." *NextG Networks of California Inc. v. City of San Francisco*, 2006 WL 1529990 at *5. The one-time and per-site fees set forth in the Proposed Ordinance easily could exceed those amounts. Section 7901 of the California Public Utilities Code limits right of way permit fees (i.e. "compensation") to the costs associated with such management, and the total of these proposed fees exceed the fees (costs) typical for a standards-based permit review.

Similar to Section 253, Section 7901 of the California Public Utilities Code grants telephone corporations the right to install lines and related equipment in or along public rights of way throughout the State without the need for any discretionary permits issued by localities. Under Section 7901.1, localities may exercise reasonable control over the time, place, and manner in which rights-of-way are accessed, provided they apply such control "to all entities in an equivalent manner." As discussed above, the Proposed Ordinance would grant the City open-ended discretion in issuing permits to install certain facilities in the right-of-way and would not apply to all entities in an equal manner. Accordingly, the Proposed Ordinance would contravene Public Utilities Code Sections 7901 and 7901.1 for much the same reason it would violate Section 253.

Because the Proposed Ordinance is fundamentally inconsistent with federal and state law protecting the rights of telecommunications carriers to access public rights-of-way, NextG urges the Committee not to refer the Proposed Ordinance to the Board of Supervisors

in its current form.  To the extent the City intends to adopt permitting provisions for installations in public rights-of-way, NextG respectfully submits that the City must develop clear and objective standards and apply those standards to all parties equally.

Sincerely,

Nicole B. Mason
Director, Government Relations & Regulatory Affairs
NextG Networks of California, Inc.

cc:     Gabriel Cabrera
        Mary Red











