1  MARTIN L. FINEMAN, State Bar No. 104413
   SUZANNE TOLLER, State Bar No. 129903
2  DAVIS WRIGHT TREMAINE LLP
   505 Montgomery St., Suite 800
3  San Francisco, California  94111-6533
   Telephone:  (415) 276-6500
4  Facsimile:  (415) 276-6599
   Email:  martinfineman@dwt.com
5
   T. SCOTT THOMPSON, *pro hac vice*
6  JOHN R. EASTBURG, State Bar No. 247380
   DAVIS WRIGHT TREMAINE LLP
7  1919 Pennsylvania Avenue, N.W., Suite 200
   Washington, D.C. 20006
8  Telephone 202-973-4200
   Facsimile: 202-973-4499
9  Email:  scottthompson@dwt.com

10 ROBERT L. DELSMAN, State Bar No. 142376
   NEXTG NETWORKS, INC.
11 2216 O'Toole Avenue
   San José, California 95131
12 Telephone: 510-845-9681
   Facsimile: 510-845-7135
13 Email: rdelsman@nextgnetworks.net

14 Attorneys for Plaintiff
   NextG Networks of California, Inc.
15

16            IN THE UNITED STATES DISTRICT COURT

17         FOR THE NORTHERN DISTRICT OF CALIFORNIA

18                  SAN FRANCISCO DIVISION

19

20 NEXTG NETWORKS OF CALIFORNIA, INC.,)   No.  CV 08 0985 MHP
   a Delaware corporation,            )
21                                    )   **PLAINTIFF NEXTG'S REPLY**
                  Plaintiff,          )   **MEMORANDUM IN SUPPORT OF ITS**
22                                    )   **MOTION FOR JUDGMENT ON THE**
          v.                          )   **PLEADINGS**
23                                    )
   THE CITY AND COUNTY OF SAN         )
24 FRANCISCO AND THE DEPARTMENT OF    )   Date: June 9, 2008
   PUBLIC WORKS OF THE CITY OF SAN    )   Time: 2:00 p.m.
25 FRANCISCO,                         )   Courtroom 15, 18th Floor
                                      )   Before the Honorable Marilyn Hall Patel
26                  Defendants.       )
                                      )   Action Filed:  February 15, 2008
27                                    )
                                      )
28                                    )
                                      )

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................................ 1

II.     NEXTG'S MOTION MUST AND CAN BE RESOLVED BASED SOLELY ON THE
        UNCONTESTED LEGAL ISSUES AND THE FACE OF THE CITY'S ORDINANCE ............ 2

III.    THE CITY'S NEW ORDINANCE VIOLATES SECTION 253(**a**) ............................................. 4

        A.      The "Heavy Burden" Proffered By The City Is Inconsistent With
                Established Ninth Circuit Precedent ........................................................... 4

        B.      The New Ordinance Places The City As Subjective And
                Discretionary Arbiter Of Market Entry In Violation Of Section
                253(a) ................................................................................................................ 5

                1.      The City's Standards For "Protected Locations" Are
                        Equivalent To Those Struck Down By The Ninth Circuit,
                        This Court, And Many Other Courts. ........................................... 5

IV.     The City's Requirements Are Not Saved By Section 253(b), 253(c), or Section 332(c)(7) ........ 10

        A.      The City's Requirements Do Not Fall within the Authority Reserved
                by Section 253(b) or (c). ................................................................................. 11

        B.      Section 332(c)(7) Is Not A Safe Harbor From Preemption. ............................. 12

V.      The CITY DID NOT ADDRESS NEXTG'S SHOWING THAT New Ordinance Violates
        Unambiguous State Law ............................................................................................. 15

VI.     CONCLUSION .......................................................................................................... 15

i

PLAINTIFF NEXTG'S MOTION FOR JUDGMENT ON THE PLEADINGS
NextG v. City of San Francisco, No. CV-08-0985 MHP
DWT 9364175v1 0069831-000004

# TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*City of Auburn v. Qwest Corp.*, 260 F.3d 1160 (9th Cir. 2001)............................................. passim

*City of Rancho Palos Verdes v. Abrams,*
   544 U.S. 113 (2005)....................................................................................................13

*Cool Fuel, Inc. v. Connett,*
   685 F.2d 309 (9th Cir. 1982) .........................................................................................1

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228 (9th Cir. 1989) ................................................................................3

*GTE Mobilnet v. City of San Francisco,*
   2007 WL 420089 (N.D. Cal. Feb. 6, 2007) ......................................................................6

*MetroPCS, Inc. v. City and County of San Francisco,*
   400 F.3d 715 (9th Cir. 2005) ........................................................................................5

*NCTA v. Gulf Power Co.,*
   534 U.S. 327 (2002).....................................................................................................14

*NextG Networks of Cal., Inc. v. Los Angeles County,*
   522 F. Supp. 2d 1240 (C.D. Cal. 2007) ............................................... 6, 7, 9, 11, 12

*NextG Networks of Calif., Inc. v. City of San Francisco,*
   2006 U.S. Dist. LEXIS 36101 (N.D. Cal. June 2, 2006) ............................................ passim

*Newpath Networks, LLC v. City of Irvine,*
   SACV 06-550-JVS (C.D. Cal. Mar. 10, 2008) .................................................................. 5

*Qwest Communications v. City of Berkeley,*
   433 F.3d 1253 (9th Cir. 2006) ...........................................................................6, 11, 12

*Qwest Corp. v. City of Portland,*
   385 F.3d 1236 (9th Cir. 2004) ........................................................................................8

*Salerno v. United States,*
   481 U.S. 739 (1987)......................................................................................................5

*Southwestern Bell Wireless, Inc. v. Johnson County Bd. of County Comm'rs,*
   199 F.3d 1185 (10th Cir. 1999), *cert. denied*, 530 U.S. 1204 (2000).....................................12

*Sprint Telephony PCS, L.P. v. County of San Diego,*
   490 F.3d 700 (9th Cir. 2007) ..................................................................................5, 6, 13

*T-Mobile USA, Inc. v. City of Anacortes,*
   2008 U.S. Dist. LEXIS 37481 (W.D. Wa. May 6, 2008) ....................................................9, 13

*TC Sys. Inc. v. Town of Colonie,*
   263 F. Supp. 2d 471 (N.D.N.Y. 2003) .......................................................................................11

*TCG New York, Inc. v. City of White Plains,*
   305 F.3d 67 (2d Cir. 2002), *cert. denied,* 538 U.S. 923 (2003) .....................................9, 11, 12

*Verizon Wireless (VAW) LLC v. City of Rio Rancho,*
   476 F. Supp. 2d 1325 (D.N.M. 2007) .....................................................................................8, 13

### FEDERAL STATUTES

47 U.S.C. § 224(f)(1) ....................................................................................................................14

47 U.S.C. § 253 ..................................................................................................................... passim

47 U.S.C. § 253(a) ................................................................................................................. passim

47 U.S.C. § 253(b) ........................................................................................................................12

47 U.S.C. § 253(e) ........................................................................................................................13

### STATE STATUTES

California Public Utilities Code § 7901 ...................................................................................1, 15

California Public Utilities Code § 7901.1 ......................................................................................1

### RULES

Fed. R. Civ. P. Rule 12(c) .........................................................................................................2, 3

### OTHER AUTHORITIES

*12th Annual Wireless Competition Report,*
   23 F.C.C.R. 2241, 2008 FCC LEXIS 1045 (2008) ...................................................................14

*Petition of the State of Minnesota for a Declaratory Ruling,*
14 FCC Rcd. 21697 (Dec. 23, 1999) .............................................................................................3

*City and County of San Francisco v. NextG Networks of Calif.,*
   *Inc.,* Decision 06-01-006 at 7-9 (CPUC Mar. 9, 2005)...............................................................7

1    Plaintiff NextG Networks of California, Inc. ("NextG") respectfully submits the following Reply

2   Memorandum in Support of its Motion For Judgment On The Pleadings ("NextG's Motion" or "Mot.").

3   **I.    SUMMARY OF ARGUMENT**

4    NextG's Motion demonstrated that the City's new requirements – consisting of Ordinance No.

5   214-07 (as codified in Section 11.9 of the City's Administrative Code), DPW Order No. 177,163, and

6   accompanying maps (collectively, the "New Ordinance") – are facially invalid under Section 253 of the

7   federal Communications Act (47 U.S.C. § 253) and California Public Utilities Code §§ 7901, 7901.1.

8   While NextG included a factual recitation largely to provide context for its legal argument, its Motion

9   made clear that the facts beyond the content of the New Ordinance and those established in the

10  pleadings or through judicial notice were not necessary to the outcome of the motion.  (Mot. at 2.)  The

11  City has responded by introducing a host of irrelevant (and inaccurate) factual issues through its own

12  Motion For Summary Judgment – which it widely incorporates by reference as if it were the City's real

13  opposition[1] – and by quibbling with the contextual facts described by NextG, claiming that they

14  constitute "[t]he foundation of NextG's motion."  (Defendants' Opposition to Plaintiff's Motion for

15  Judgment on the Pleadings ("Opp.") at 11).  The City's response does not rebut NextG's demonstration

16  that it is entitled to judgment as a matter of law based on the face of the City's New Ordinance.

17    The factual issues identified by the City are irrelevant to the *facial* challenge to the Ordinance.

18  The key relevant facts are admitted:  the City has adopted the New Ordinance, and NextG's construction

19  will be subject to the New Ordinance. (Opp. at 5; Complaint, Ex. F).  How the City may have developed

20  its maps or how DPW may refer applications, while potentially *additional* grounds for finding the New

21  Ordinance preempted, are not crucial to a finding that the New Ordinance is preempted on its face.

22

23  [1] The City asserts that "NextG had the option to file a cross-motion for summary judgment on May 2,
    2008, an option that NextG declined, thereby foregoing the opportunity to present evidence to
24  supplement its Complaint in support of an affirmative motion for relief."  (Opp at 3).  This is inaccurate.
    NextG stipulated to a briefing schedule, but did not forgo its right to move for summary judgment in the
25  future.  Moreover, NextG contested the City's factual allegations, to the extent that they are relevant, in
    its Opposition to the City's Motion for Summary Judgment.  Moreover, a court considering a summary
26  judgment motion can consider all the proffered evidence and grant summary judgment in favor of the
    *non-moving party*, as long as the moving party has had an opportunity to address the issues.  *See Cool*
27  *Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) (citing cases and treatise).  Thus, the Court
    remains able to grant summary judgment for NextG if is considers the evidence entered during the
28  summary judgment briefing to be necessary to its disposition.

The City has failed to overcome the only issue relevant to NextG's Motion – whether the New Ordinance is preempted because it imposes complex, discretionary, and burdensome obligations on telecommunications providers. *See, e.g., City of Auburn v. Qwest Corp.* ("*Auburn*"), 260 F.3d 1160 (9th Cir. 2001). For this reason, discussed more fully below, NextG respectfully requests that the Court grant its Motion for Judgment on the Pleadings.

## II.    NEXTG'S MOTION MUST AND CAN BE RESOLVED BASED SOLELY ON THE UNCONTESTED LEGAL ISSUES AND THE FACE OF THE CITY'S ORDINANCE

Apparently leery of debating the permissibility of its regulation on its face, the City now invites the Court to convert NextG's Rule 12(c) motion into a summary judgment motion by defending with declarations and other external evidence that seek to cloud the issues. The City also identifies seven statements made by NextG that allegedly are not established on the pleadings. But as demonstrated below, the statements are "not ultimately necessary to the outcome of the motion," and often are legal conclusions rather than assertions of fact.

- First, the fact that the City has produced new maps – even if they were easily readable – does not mitigate the discretion granted the Planning and Parks Departments by the Ordinance. (*See* Opp. at 11-12).

- Second, even if the City were able to contradict NextG's statement that the designation of "protected locations" is based on the Department of Public Works' ("DPW") discretion (*id.* at 12), it would be irrelevant to the discretion applied to applicants within the "protected location" framework. Some number of applications will be referred to the Planning or Parks Departments, and as a result, they will be subject to the City's unfettered discretion to deny based on wholly subjective, uncertain criteria.

- Third, the City denies that the onerous regulations relevant to "protected locations" apply in "the vast majority of the City." (*Id.* at 12-13). The City claims that "only" one-third of NextG's previously-constructed Nodes would fall within "protected locations." (Opp. at 8). But if the City's procedure as it governs "protected locations" violates Section 253, it is irrelevant whether 33% or 90% of NextG's nodes will be illegally held up by the New Ordinance. It is not the number or proportion of NextG's locations affected that controls whether the City's Ordinance is preempted.

Some number of them may or will be, and thus, the Ordinance is subject to Section 253. Indeed, simply reviewing the maps themselves, as the City invites the Court to do (Opp. at 16), makes clear that a significant portion of the City consists of "protected locations."

- Fourth, the City asserts that while Ordinance No. 214-07 does not define a pathway for appeals, DPW Order No. 177,163 does allow for appeals in the case of *approvals or denials.* (*Id.* at 13). This is true, but it hardly helps the City's case. Indeed, the appeal process subjects NextG to *yet another* discretionary, burdensome process, even if its permit application has been granted by the City.

- Fifth, the City objects to NextG's assertion that "[h]earings before the Planning and Rec/Park Departments are possible," saying that "[a]s this allegation is controverted and not supported by any admissible evidence, it must be treated as false under both Rule 12(c) and Rule 56." (*Id.*) However, NextG's assertion manifestly is not an assertion of fact. Rather, it is a conclusion of law, drawn from the plain text of the New Ordinance, which contains no language prohibiting or limiting hearings.[2] Whether the City promises that it will not exercise the discretion allowed under the Ordinance is beside the point. The plain text of the Ordinance controls.

- Sixth, the City objects to NextG's assertion that "[i]n order to construct, operate and maintain its facilities, NextG requires access to utility poles located in the public rights-of-way." (*Id.*) The City's assertion is irrelevant. First, Section 253 does not apply only where a telecommunications provider has no other option but to use the public right-of-way. The availability of alternative methods for providing telecommunications service is not a defense. *See, e.g., Petition of the State of Minnesota for a Declaratory Ruling,* 14 FCC Rcd. 21697, at ¶¶ 25-27 (Dec. 23, 1999) (availability of alternative construction options not a defense to Section 253 preemption). Second, NextG is

---

[2] Similarly, the City claims that because the City denies, the Court must deem false NextG's argument that DPW will exercise discretion in deciding which applications trigger "protected location" review. (Opp. at 2.) But the content and meaning of the New Ordinance is a question of statutory interpretation, not a factual one. Indeed, the City conflates legal conclusions with factual assertions throughout its Opposition. While it is true that "[f]or purposes of a Rule 12(c) motion, all controverted allegations in the pleadings of the moving party are treated as false," (Opp. at 10,) this applies to "allegations of *fact.*" *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989) (emphasis added). On matters of law – such as the interpretation of the City's New Ordinance – the City cannot end the inquiry simply by disagreeing with NextG.

authorized by the State, through its Certificate of Public Convenience and Necessity (CPCN), to place its telecommunications facilities in the public rights-of-way. (Complaint, Ex. A). The existence of NextG's CPCN is not and could not be disputed. It is irrelevant whether the City can dream up ways of installing telecommunications networks entirely on private property. NextG is explicitly authorized by the State of California to construct its facilities in the public right-of-way, (Compl. Exh. B), and Section 253 preempts the City's ability to impose requirements that "may . . . have the effect of prohibiting the ability of *any entity* to provide *any* . . . telecommunications service." 47 U.S.C. § 253(a) (emphasis added).

- Seventh, the City argues that it is "a matter of opinion" whether NextG's antennas are small. This may be true, but it is irrelevant. (*See* Opp. at 13). The City's defense is to ask the Court to engage in the same type of impermissible aesthetic judgments that the City wants to make. The Court can view the pictures and descriptions of NextG's equipment and decide for itself whether it considers them "small," especially compared with traditional wireless towers or the other utility structures on the poles. However, for purposes of determining whether the City's Ordinance is preempted, on its face, under the established precedent of the Ninth Circuit, the issue is irrelevant.

Freed of the City's factual smoke screen, this case becomes very straightforward – the City's Ordinance, on its face, imposes the same discretionary requirements that the Ninth Circuit and other courts have held preempted under Section 253(a). *See, e.g., NextG Networks of Calif., Inc. v. City of San Francisco*, 2006 U.S. Dist. LEXIS 36101 at *12 (N.D. Cal. June 2, 2006); *Auburn*, 260 F.3d at 1175.

## III.    THE CITY'S NEW ORDINANCE VIOLATES SECTION 253(a)

### A.    The "Heavy Burden" Proffered By The City Is Inconsistent With Established Ninth Circuit Precedent

As a threshold issue, the City claims that "[t]o prevail on its facial challenge to the Regulations, NextG must show that there is no set of circumstances under which the Regulations would be valid." (Opp. at 14). This misstates the burden under controlling precedent.

The City describes this preemption challenge as if it were a First Amendment "facial" challenge, but the burden here is very different. Here, the standard of review of the City's Ordinance has been

1    established by Congress in Section 253(a).  As the Ninth Circuit has repeatedly held, the applicable

2    standard is whether the City's requirements "may" have the effect of prohibiting any entity's ability to

3    provide any telecommunications service.  *See, e.g., Auburn*, 260 F.3d at 1175.  Thus, the argument that

4    the plaintiff must demonstrate that there is no set of circumstances in which the local requirement could

5    be lawful is inconsistent with the standard created by Congress.  Indeed, the City's argument would

6    reverse Section 253(a), eliminating the "may ... have the effect" language and creating a very limited

7    preemption applicable only in cases where the provider could demonstrate that there was no way it

8    would ever be able to provide service under the city's requirements.  *See Newpath Networks, LLC v.*

9    *City of Irvine*, SACV 06-550-JVS at 3 n.2 (C.D. Cal. Mar. 10, 2008) (rejecting the standard advanced by

10    the City) (copy attached hereto).  For those reasons, *Salerno v. United States*, 481 U.S. 739 (1987),

11    which the City cites, is not applicable because it involved a constitutional challenge to an act of

12    Congress.  Unlike the situation in *Salerno*, here the standard by which the City's legislative act is judged

13    has been defined by Congress, and it explicitly prohibits City requirements that "may . . . have the

14    effect" of prohibiting NextG's ability to provide telecommunications service.  47 U.S.C. § 253(a).

15        The City also argues that because this case "concerns Wireless Facilities" the logic of *MetroPCS,*

16    *Inc. v. City and County of San Francisco*, 400 F.3d 715 (9th Cir. 2005), applies to mean that "only when

17    a locality applies the regulation to a particular permit application and reaches a decision …can a court

18    determine the TCA has been violated." (Opp. at 15).  However, *MetroPCS* was not interpreting Section

19    253, and the court did not find that facial challenges to zoning statutes face some special burden.

20    Indeed, and more on point, *Auburn* "concerned Wireless Facilities" and applied a facial analysis under

21    Section 253.  260 F.3d at 1174-76.  As discussed below, Section 332(c)(7) provides standards applicable

22    when a city makes a "decision" on an individual siting application, but Section 253 sets forth the

23    standard governing facial challenges.

    **B.**    **The New Ordinance Places The City As Subjective And Discretionary Arbiter Of**
24            **Market Entry In Violation Of Section 253(a)**

25

26            **1.**    **The City's Standards For "Protected Locations" Are Equivalent To Those**
            **Struck Down By The Ninth Circuit, This Court, And Many Other Courts.**

27        NextG's Motion laid out, in detail, how the Ninth Circuit and other courts have struck down

28    ordinances very like the City's.  (Mot. at 11-17).  The Motion relied, *inter alia*, on *Sprint Telephony*

1  *PCS, L.P. v. County of San Diego* ("*Sprint San Diego*"), 490 F.3d 700 (9th Cir. 2007), *petition for*

2  *rehearing en banc granted*, --- F.3d ----, 2008 WL 2051371 (9th Cir. May 14, 2008). That case can no

3  longer be cited because of the Ninth Circuit's May 14, 2008 decision to rehear the case *en banc*.

4  However, NextG's Motion also made clear that *Sprint San Diego* is just one of a series of cases that

5  clearly forbid regulations like the New Ordinance. Even absent a Ninth Circuit decision in *Sprint San*

6  *Diego*, there is clear Ninth Circuit precedent governing NextG's claims. *See NextG San Francisco*,

7  2006 U.S. Dist. LEXIS 36101 at *16-18.

8       The Ninth Circuit's *Auburn* decision identified various features of a municipal ordinance that, in

9  combination, had the effect of prohibiting a telecommunications carrier's provision of services. *Auburn*,

10  260 F.3d at 1176. These features included: (1) a lengthy application provision that required submission

11  of maps, corporate policies, and other information requested by the city; (2) a public hearing

12  requirement; (3) discretionary factors that have nothing to do with management of the right of way, (4)

13  fees in excess of the cost of maintaining the right of way; and (5) unfettered city discretion to grant,

14  deny or revoke an applicant's rights to deploy its facilities. *Id.* The court deemed the last feature to be

15  the most important, referring to it as the "ultimate cudgel." *Id.*; *see also Qwest Communications v. City*

16  *of Berkeley*, 433 F.3d 1253, 1258 (9th Cir. 2006). Likewise, in *NextG Networks of Cal., Inc. v. Los*

17  *Angeles County*, 522 F. Supp. 2d 1240, 1250 (C.D. Cal. 2007), the court had "little trouble concluding

18  that this process is so burdensome and Byzantine as to erect a barrier to providing telecommunications

19  services" because the county "impose[d] a lengthy, detailed, and expensive application process riddled

20  with administrative hoops...."

21       Indeed, this court and others found requirements very much like the one at issue now preempted

22  under *Auburn* and *Berkeley* before the *Sprint San Diego* panel decision was issued. *NextG San*

23  *Francisco*, 2006 U.S. Dist. LEXIS 36101 at * 16 (previous San Francisco requirements preempted in

24  part because they allowed "absolute discretion as to whether any given telecommunications carrier will

25  be able to install its facilities in the public rights-of-way"); *GTE Mobilnet v. City of San Francisco*, 2007

26  WL 420089 (N.D. Cal. Feb. 6, 2007) (holding that San Francisco's process violated § 253(a)). Thus,

27  even without the *Sprint San Diego* panel decision, there is a wealth of cases from the Ninth Circuit,

28  other Circuits, and district courts supporting NextG's Motion.

### a.    The New Ordinance Vests The City With Unlimited Discretion

NextG's Motion made clear that the New Ordinance reserves broad and unfettered discretion to the City throughout its complex process. *See NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at * 16 ("courts, including the Ninth Circuit in *City of Auburn*, have found this sort of unfettered discretion to be especially problematic"); *Los Angeles County*, 522 F. Supp. 2d at 1251. The City does not dispute that it will exercise such discretion, but rather defends it on three bases.

First, the City claims that its maps are not discretionary because they are easy to interpret and "simply reflect the previous determinations by the Planning and Rec/Park Departments of the protected locations." (Opp. at 16). While this is a disputed issue of fact, it is not relevant to NextG's Motion. Even if the City exercised no discretion at all over the creation of the maps or over whether a specific application is referred to the Planning Department or the Recreation and Parks Department, the New Ordinance would still be preempted under Section 253(a). Even if the process for identifying "protected" locations were completely ministerial, the New Ordinance still imposes a highly discretionary and burdensome procedure for certain wireless facilities in those locations. Indeed, the City concedes the discretionary nature of this review, asserting that the standards must be "flexible" and different for different locations. (Opp. at 9).[3]

Second, the City claims that "there is no evidence that NextG will need to include equipment in many, or even any, protected locations" and that Verizon has located 14 installations in non-protected locations. (Opp. at 7, 12). The alleged Verizon locations were pursuant to a settlement (Opp. at 8 (citing McKenna Decl. ¶ 27).) and thus prove nothing. Moreover, the City's assertion about the impact on NextG is belied by the City's admission that it would have subjected one-third of NextG's previously-constructed Nodes to its heightened requirements for "protected locations." (Opp. at 8).

---

[3] The City asserts that certain historic locations on its maps were previously identified pursuant to "its obligations under the California Environmental Quality Act ('CEQA')." (Opp. at 5). While apparently not the case, if the City means to suggest that CEQA somehow requires or authorizes its more onerous restrictions on telecommunications providers, it is incorrect. As the California Public Utilities Commission ("CPUC") held in the City's rejected attack on NextG's authority in the prior litigation, the CPUC is the lead agency controlling NextG's deployment; it, not the City, determines CEQA compliance requirements. *City and County of San Francisco v. NextG Networks of Calif., Inc.*, Decision 06-01-006 at 7-9 (CPUC Mar. 9, 2005) (Complaint Exh. B).

1    More importantly, the City's arguments are not relevant to NextG's facial challenge. NextG

2    need not prove how many of its future sites will be subject to the requirements for "protected locations."

3    Rather, it need only allege that it *may* be subject to them. *See Qwest Corp. v. City of Portland*, 385 F.3d

4    1236, 1241 (9th Cir. 2004) (plaintiff not "required to make an actual showing of 'a single

5    telecommunications service that it . . . is effectively prohibited from providing,'" because "regulations

6    that may have the effect of prohibiting the provision of telecommunications services are preempted");

7    *Verizon Wireless (VAW) LLC v. City of Rio Rancho*, 476 F. Supp. 2d 1325, 1331 (D.N.M. 2007)

8    (allegations of plans to construct sufficient to establish standing for § 253(a) claim). It is undisputable

9    that under the Ordinance, for many locations in the City, an application will be referred to the Planning

10   or Parks Departments and the Department will subject the application to discretionary review – a point

11   confronting any entity looking to deploy in the City. The purpose of Section 253 was to prevent cities

12   from imposing requirements that may deter an entity from deploying because of the uncertainty and risk

13   of subjective denial by the City.

14       Third, while the City admits that its process is discretionary, it claims that this is not enough to

15   render the New Ordinance impermissible because the decisions are made by staff "experts" and subject

16   to vague guidance, such as "consistent with the health, safety, convenience and general welfare and will

17   not unreasonably affect, intrude upon or diminish any of the identified City resources." (Opp. at 17-18).

18   However, the City's argument simply identifies *who* will be exercising this discretion; it does nothing to

19   limit the discretion. The fact that the staff members are self-styled "experts" does not alter the

20   discretionary nature of the review. (*E.g.,* Ord. No. 214-07 § 11.9(b)(2)(A) (the Planning Department

21   "shall not recommend approval ... unless [it] determines that a Personal Wireless Service Facility in the

22   proposed location is *consistent with the public health, safety, convenience and general welfare* and will

23   *not unreasonably affect, intrude upon or diminish any of the identified City resources*" (emphasis

24   added)); (Ord. No. 214-07 § 11.9(b)(2)(B) (Recreation and Park Department "shall not recommend

25   approval . . . unless [it] determines that a Personal Wireless Service Facility in the proposed location will

26   not unreasonably affect, intrude upon or diminish a City park or open space").

27       The New Ordinance "standards" are precisely the type of open-ended, arbitrary, subjective,

28   discretionary standards that were preempted by this Court in *NextG San Francisco* as well as other cases

1  in the Ninth Circuit. *See, e.g., NextG San Francisco*, 2006 U.S. Dist. LEXIS 36101 at *11-21; *Auburn*,

2  260 F.3d at 1179; *T-Mobile USA, Inc. v. City of Anacortes*, 2008 U.S. Dist. LEXIS 37481 at *13 (W.D.

3  Wa. May 6, 2008). The Planning Department's evaluation of whether a proposed facility will

4  "unreasonably affect, intrude upon or diminish any of the identified City resources" is a purely

5  subjective, discretionary matter pursuant to which City can deny an application for *any* reason as long as

6  it is stated as one of these generalized concerns. *See TCG New York, Inc. v. City of White Plains*, 305

7  F.3d 67, 76 (2d Cir. 2002) (ability to deny based on "public interest factors" violates Section 253(a)),

8  *cert. denied*, 538 U.S. 923 (2003).

9        In addition to the subjective "standards," there is no apparent process dictating how the

10  applications will be treated by either Department, and public hearings and additional submissions of

11  information may be required. *See Auburn*, 260 F.3d at 1176; *Los Angeles County*, 522 F. Supp. 2d at

12  1251. The City asserts the *legal conclusion* that the Ordinance does not require hearings (Opp. at 9), but

13  nothing on the face of the Ordinance prohibits either the Planning Department or the Parks Department

14  from having hearings or any other process they choose. In any event, even if there were no hearing

15  before the Planning Commission, that alone would not save the fact that the City will still be exercising

16  unfettered discretion based on standards that have been preempted by the Ninth Circuit.

17        The City has attempted to raise factual issues around the periphery of its Ordinance, but has not

18  refuted NextG's showing that the New Ordinance, at core, provides no certainty regarding the process

19  and no objective standards that NextG can satisfy to ensure its applications will be granted. The City's

20  discretionary control over NextG's deployment is precisely that "ultimate cudgel" identified as the key

21  issue for preemption in *Auburn*.

22             **b.    The New Ordinance Is Impermissibly Burdensome**

23        In response to NextG's showing that the New Ordinance is impermissibly burdensome, as it

24  governs "protected locations," the City argues that "[n]one of the factors justifying preemption of the

25  local laws at issue in those cases … are present for applications to install Wireless Facilities in

26  *unprotected* locations." (Opp at 16-17 (emphasis added)).

27        While the City may have done away with some of the more obvious burdens of its prior

28  requirements with respect to only some areas of the City, the New Ordinance nonetheless requires

NextG and certain others to overcome multiple burdensome steps, which are in at least some cases identical to those requirements that were previously struck down. First, NextG must obtain a Utilities Condition Permit ("UCP"). Ord. No. 214-07 § 11.9(a). Under the UCP process, DPW must "include in a UCP such conditions, in addition to those already set forth in Applicable Law, as may be required to … protect and benefit the public health, safety and welfare." *Id.* And applicants must pay "a non-refundable application fee of two thousand dollars" for the UCP. (Ord. No. 214-07 § 11.9(a)(2)).

The requirements for NextG's competitors who do not incorporate certain wireless elements stop there, but NextG must, second, obtain a Wireless Permit. The Wireless Permit involves submission to DPW, then, in the vast majority of cases, review by the Planning or Recreation & Park Departments. If DPW denies the permit, NextG must appeal to the Board of Permit Appeals ("BPA"), and there face briefings, submission of additional evidence, and open public hearings without standards. (Opp. at 13); *see* DPW Order No. 177,163; Rules of the BPA, Arts.1, 5, 6. Indeed, even DPW's *approval* can then be appealed to the BPA. (Opp. at 13; DPW Order No. 177,163 § V). This adds another burdensome and discretionary stage to the permitting process, including, *inter alia*, a public hearing at which other "interested parties" may testify. San Francisco Business & Tax Regulations Code, Art. 1, §§ 8, 14; Rules of the BPA, Art. 1, §§ 1, 2, 5.

Moreover, while the City asserts that it has lowered the related fees, it is clear that the ordinance requires payment of several fees for each "Wireless Service Facility," including discretion to require the applicant to pay "a sum in excess of the amount charged pursuant to this section." (Ord. No. 214-07 §§ 11.9(b)(3)(A), (B), (D)).

Thus, while the initial paperwork required for an "unprotected" location may have been decreased some amount, in reality, for some significant number of NextG's locations, NextG will be required to overcome multiple layers of City review and will be subject to the same burdensome, discretionary process this Court properly struck down.

## IV. THE CITY'S REQUIREMENTS ARE NOT SAVED BY SECTION 253(b), 253(c), OR SECTION 332(c)(7)

The City's primary defense is that the New Ordinance is "saved" by Section 253(b) and (c) and Section 332(c)(7). The City's assertions fail on multiple grounds.

**A.    The City's Requirements Do Not Fall within the Authority Reserved by Section 253(b) or (c).**

The City claims that the New Ordinance is shielded by both Section 253(b) and 253(c), though it only discusses the latter. NextG's Motion explained, in detail, that the City's requirements do not fall within the City's limited Section 253(c) authority because the City's procedures are discriminatory and encompass concerns and criteria unrelated to the management of the rights-of-way. (Motion 19-20.) The City has not satisfied its obligation to establish that the challenged provisions are within its authority under Section 253(c). The thrust of the City's response is that it is not regulating the company, but rather exercising discretion over what facilities are located in the public rights-of-way. (Opp. at 19). However, the Ninth Circuit has definitively held that Section 253(c) "saves" only those municipal requirements that are "directly related" to management of the public rights of way. *Auburn*, 260 F.3d at 1177-78; *see also White Plains*, 305 F.3d at 81-82; *TC Sys. Inc. v. Town of Colonie*, 263 F. Supp. 2d 471, 484-85 (N.D.N.Y. 2003). In *Berkeley*, the Ninth Circuit explained that proper "management" activities include "coordination of construction schedules, determination of insurance, bonding and indemnity requirements, establishment and enforcement of building codes, and keeping track of the various systems using the rights-of-way to prevent interference between them." 433 F.3d. at 1258. This can be contrasted with demands for "information on the nature of the requested use, the uses of adjacent buildings and structures, [and] the location and dimensions of all structures, yards, walls, fences, parking and loading facilities," which have "little to do with managing the physical integrity of the rights-of-way … and cannot be viewed as management of the rights-of-way preserved by section 253(c)." *Los Angeles County*, 522 F. Supp. 2d at 1254-55.

The City's requirements do not fall within the City's limited Section 253(c) authority because they encompass concerns and criteria unrelated to the management of the rights-of-way. For example, the City's procedures permit the City to deny or condition a permit approval on the basis of location, aesthetics, and harmony with adjacent uses. (Ord. No. 214-07 § 11.9(b)(2)(A)). Those requirements are not "coordination of construction," or the other right-of-way management activities authorized by Section 253(c). Likewise, the Ordinance allows the City to deny a permit because the City thinks it will "unreasonably affect, intrude upon or diminish," in some undefined way, "any of the identified City resources." *Id.* In *Auburn* and *Berkeley*, the Ninth Circuit struck down the requirements based on just

1  this type of unfettered discretion. *Auburn*, 260 F.3d at 1179; *Berkeley*, 433 F.3d at 1258; *see also White*

2  *Plains*, 305 F.3d at 76-77; *Los Angeles County*, 522 F. Supp. 2d at 1254; *NextG San Francisco*, 2006

3  U.S. Dist. LEXIS 36101 at *14-16. The premise of Section 253(c) is that contruction in the ROW is

4  allowed, but that the City can only manage the mechanical details of "how" and "when" – not exclude

5  installation altogether based on subjective judgments about a particular piece of equipment.

6      In addition, the City's requirements are not saved by Section 253(c) because they are not

7  competitively neutral and nondiscriminatory. Indeed, the thrust of the City's position is that it must be

8  permitted to discriminate against certain providers who choose to provide telecommunications service

9  using wireless facilities. (Opp. at 21). However, Section 253 does not differentiate between wireless

10 and wireline telecommunications; it applies to "any interstate or intrastate telecommunications service."

11 47 U.S.C. § 253(a); *see, e.g., Auburn*, 260 F.3d at 1174-75 (applying Section 253 to "wireless" portion

12 of ordinance). Yet, the City insists that wireless facilities are somehow inherently more intrusive than

13 other telecommunications equipment. The City's assertion reveals an unjustified general bias against

14 wireless facilities.

15      The City also claims, with no argument or authority in support, that it is shielded by Section

16 253(b). NextG objects to the City's "incorporation by reference" gambit, which effectively allows the

17 City to exceed the page limits on its Opposition. As NextG demonstrated in its Opposition to the City's

18 Motion For Summary Judgment, Section 253(b) is not applicable to the City. Section 253(b), by its

19 plain terms, reserves authority only for the State. 47 U.S.C. § 253(b); *Southwestern Bell Wireless, Inc.*

20 *v. Johnson County Bd. of County Comm'rs*, 199 F.3d 1185, 1192 (10th Cir. 1999), *cert. denied*, 530 U.S.

21 1204 (2000). Moreover, even if Section 253(b) *could* be delegated to the City, and even if it *had* been

22 delegated to the City, the City's targeted control over a segment of the wireless industry is not necessary

23 for the protection of the public safety and welfare nor is it competitively neutral and nondiscriminatory.

24      **B.    Section 332(c)(7) Is Not A Safe Harbor From Preemption.**

25      In its Opposition, the City claims that the New Ordinance is protected from preemption under

26 Section 253(a) by Section 332(c)(7) of the Communications Act. The City claims that "Section

27 332(c)(7) is an overriding safe harbor provision for the exercise of local land use authority over wireless

28 facilities. It applies to the entire Communications Act, including § 253." (Opp. at 22).

The City's argument is overstated and unsupported. With Section 253, Congress created "a broad prohibition against state and local regulation," qualified by "certain narrow exceptions that leave a 'safe harbor' for limited local regulation." *Auburn*, 260 F.3d at 1170. Had Congress harbored a concern that Section 253(a) could negate the protections allegedly extended by Section 332(c)(7), it could have included an exemption for Section 332(c)(7) similar to those that it created in Sections 253(b) and (c), but it did not do so. *Indeed, Congress did include an exception for Section 332(c)(3).* 47 U.S.C. § 253(e). Because the series of exclusions in Section 253 demonstrates Congress' awareness that Section 253 could affect Section 332, and because the existing exclusions address traditionally local provinces such as the management of rights-of-way, under the principle of *expressio unius est exclusio alterius*, Congress' failure to omit Section 332(c)(7) from the reach of Section 253(a) must be interpreted as an affirmation of Section 253(a)'s applicability to state and local wireless zoning ordinances.

Contrary to the City's assertion, NextG's argument is not limited to the *Sprint San Diego* panel decision. (Opp. at 24). Several other cases have held the same based on solid reasoning and analysis. For example, the court in *Verizon Wireless (VAW), LLC v. City of Rio Rancho*, 476 F. Supp. 2d 1325, 1336-39 (D.N.M. 2007), confirmed that wireless providers are not limited to Section 332(c)(7) as the sole mechanism for challenges to local zoning requirements. *See also Anacortes*, 2008 U.S. Dist. LEXIS 37481 at *21.

Rejection of the City's argument is consistent with the policy of the Act. Congress' intention in adopting Section 253 and Section 332(c)(7) was to limit the ability of cities to hamper deployment of telecommunications services and technologies. As the Supreme Court recognized, Section 332(c)(7) is not a broad grant of local authority, but rather "[o]ne of the means" by which Congress sought to reduce impediments imposed by local governments, and it imposes "specific limitations on the traditional authority of state and local governments. . . ." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (emphasis added) (internal citations omitted); *see also id.* at 127-28 (Breyer, J., concurring) (quoting H.R. Rep. No. 104-204, pt. 1, p.94) ("Congress saw a national problem, namely an 'inconsistent and, at times, conflicting patchwork' of state and local siting requirements, which threatened 'the deployment' of a national wireless communications system").

1    Relying further on Section 332(c)(7), the City argues that Congress intended to allow localities

2    to discriminate between wireless and wireline providers. (Opp. at 21). Again, the City's argument is

3    meritless. As a threshold matter, Section 253(c) does not include the "unreasonably discriminate among

4    providers of functionally equivalent services" language of Section 332(c)(7)(B)(1). Thus, all of the

5    Section 332 cases cited by the City are inapplicable. Moreover, the City's argument is based on a

6    factual premise that is unsupported and wrong. The FCC has recognized that wireless service is

7    functionally equivalent to wireline services, particularly given the increasing percentage of Americans

8    who have given up having a "wired" home phone and switched exclusively to wireless communications.

9    *See, e.g., 12th Annual Wireless Competition Report*, 23 F.C.C.R. 2241, 2249, 2008 FCC LEXIS 1045

10   (2008) ("During the second half of 2006, 11.8 percent of U.S. adults lived in households with only

11   wireless phones, up from 7.8 percent in the second half of 2005, and triple the percentage (3.5 percent)

12   in the second half of 2003") ("*Wireless Competition Report*").

13   Ultimately, the City's argument is clearly misguided in this case, where the New Ordinance

14   concerns facilities to be installed in the public right-of-way ("ROW"). The concerns that may arguably

15   underlie the reservation of zoning authority in Section 332 are not present in the ROW context because

16   the ROW is *already* dedicated to utility/communications uses and the City is reserved "management"

17   authority in 253(c). For example, the legislative history reference by the City was clearly addressing the

18   installation of "towers" on private property – not the installation of facilities on utility poles in the

19   ROW. (Opp. at 23-24 (citing H.R. Conf. Rep. No. 104-458 at 207-208)). Ultimately, Congressional

20   intent that existing ROW be used for telecommunications deployment is demonstrated by 47 U.S.C. §

21   224(f)(1), for example, which was added in the Telecommunications Act of 1996 and requires utilities to

22   give access to poles in the ROW for both wired and wireless telecommunications facilities. *NCTA v.*

23   *Gulf Power Co.*, 534 U.S. 327, 340-41 (2002) (Section 224 pole access extends to wireless

24   telecommunications). Moreover, the legislative history of Section 253(c) cited by the City (Opp. at 19)

25   further undermines its argument. As the City's quote points out, Senator Feinstein's list of ROW

26   management functions revealed the understanding that municipal actions would be imposed "consistent

27   with the requirements imposed on other utility companies." (Opp. at 19.) The fact that the City does not

28   subject all other ROW users to the requirements of its New Ordinance demonstrates that the City is

14

1  regulating a particular service and market segment based on the technology employed, not managing the

2  ROW.

3  **V.    THE CITY DID NOT ADDRESS NEXTG'S SHOWING THAT NEW ORDINANCE VIOLATES UNAMBIGUOUS STATE LAW**

4

5  Finally, NextG's Motion demonstrated, in detail, that the City's New Ordinance violates Section

6  7901 of the California Public Utilities Code, which grants telephone corporations broad authority to

   install necessary wires and fixtures, so long as they do not interfere with public use of the roads.  (Mot.

7  at 21).  The City's Opposition offers nothing in response, beyond saying that it "incorporates Section

8  IV.B. of its summary judgment motion herein by reference."  (Opp. at 25).  NextG objects to the City's

9  attempt to incorporate *four and one-half* pages into its official "opposition" to NextG's Motion (which

10 Opposition is already at 25 pages), and requests that the City be treated as having not responded on this

11 point.  To the extent the Court declines NextG's request, NextG incorporates by reference its Opposition

12 to the City's motion.

13 **VI.    CONCLUSION**

14 NextG presented a facial challenge to the City's New Ordinance, and the City responded by

15 quibbling with and injecting nonessential facts and meaningfully defending only the least restrictive

16 provisions of the New Ordinance – those dealing with "unprotected locations."  The City has not refuted

17 NextG's showing that the requirements of the New Ordinance are discretionary and burdensome and

18 thus preempted by Section 253.  Nor does the City meaningfully respond to NextG's showing that its

19 New Ordinance violates California law.  For these reasons, NextG respectfully submits that its Motion

20 for Judgment on the Pleadings should be granted.

21 Dated:  May 23, 2008.

22

23                                            Respectfully Submitted,

24                                            **DAVIS WRIGHT TREMAINE LLP**

25

26                                            By: /s/_____
                                                  T. Scott Thompson
27                                               Attorneys for Plaintiff
                                                  NextG Networks of California, Inc.

28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 06-550-JVS (ANx) | Date | March 10, 2008 |

| | |
|---|---|
| Title | Newpath Networks LLC v. The City of Irvine, California, et al. |

| | | |
|---|---|---|
| Present: The Honorable | James V. Selna | |
| Karla J. Tunis | | Not Present |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers)   Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment as to Counts I, II, VI, VII (fld 1-23-08)

Plaintiff Newpath Networks, LLC ("NewPath") filed this action on June 12, 2006, requesting declaratory and injunctive relief against Defendants City of Irvine, et al. (collectively "Irvine"). NewPath now moves this Court for an order granting summary judgment on the following issues: (1) whether Irvine's Wireless Communications Ordinance ("WCO") is preempted by 47 U.S.C. § 253(a); (2) whether the WCO is valid under the safe harbor provision of 47 U.S.C. § 253(c); whether the WCO is preempted by Cal. Pub. Util. Code §§ 7901 and 901.1; and (4) whether Irvine's actions violate the Fourteenth Amendment's Equal Protection Clause.

## I.   BACKGROUND

NewPath is a competitive local exchange carrier which provides service to wireless communications carriers, and has been attempting to construct a distributed antennae system ("DAS") in Irvine's Turtle Rock subdivision. On July 12, 2005, the Irvine City Council adopted Ordinance No. 05-13, (the "WCO"), "to establish citywide regulations for wireless communications facilities." (Newpath Request for Judicial Notice, Ex. 2 p. 4.) The ordinance revised Irvine's Zoning Ordinance to establish new regulations for wireless communications facilities citywide. (Id. p. 1; see, Irvine Zoning Ordinance ("IZO") §§ 2-9, 2-23, 2-37.5 and 3-8.)

After unsuccessful attempts to negotiate with the city, NewPath withdrew a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 06-550-JVS (ANx)                    Date    March 10, 2008

Title    Newpath Networks LLC v. The City of Irvine, California, et al.

pending application for approval under the WCO, and filed the instant action requesting declaratory and injunctive relief. (See Mot. at 1-2, 5-10.)

## II.    LEGAL STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (Id. at 248.) In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (Id. at 255.)

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If and only if the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. (See id. at 322-23.) If the non-moving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

## III.    DISCUSSION

A.    Preemption Under the Federal Telecommunications Act

1.    47 U.S.C. § 253(a)

As the Ninth Circuit found in City of Auburn v. Qwest Corp., 260 F.3d 1160, 1175 (9th Cir. 2001), the Federal Telecommunications Act of 1996 (the "Telecom Act" ) expressly preempted state or local statutes and regulations regarding telecommunications services in stating that '[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a); Auburn, 260 F.3d at 1175.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 06-550-JVS (ANx)                    Date   March 10, 2008

Title   Newpath Networks LLC v. The City of Irvine, California, et al.

Accordingly, the Court must determine whether Irvine's regulations interfere with or are contrary to the Telecom Act, and are therefore preempted. See, Auburn, 260 F.2d at 1175. "Section 253(a) preempts regulations that not only prohibit outright the ability of any entity to provide telecommunications services, but also those that may have the effect of prohibiting the provisions of such services." Id. (internal quotations and citations omitted.)

NewPath argues that the WCO is so restrictive as to amount to effective prohibition and is therefore preempted on its face by § 253(a).[1]  The relief NewPath requests pursuant to this claim is 1) a finding that the WCO, as codified in Irvine's Zoning Ordinance, is preempted by § 253(a) and therefore, invalid; and (2) a permanent injunction barring Irvine from enforcing the WCO.  While the parties strongly disagree about the standard for mounting such a challenge,[2] the Court believes the authoritative

---

[1] NewPath is required to mount a facial challenge under § 253(a) because it withdrew its application before Irvine could issue a final approval or denial of the permit, which NewPath could have challenged as an individual decision prohibiting or having the effect of prohibiting the provision of wireless services under §232(c)(7).  See, Sprint Telephony PCS v. County of San Diego, ("Sprint II") 490 F.3d 700, 707 (9th Cir. 2007).

[2] Irvine argues that a plaintiff mounting a facial challenge must show that "the applicable law can never be applied consistent with federal law"; or, in other words, "that no set of circumstances exists under which the Act would be valid." (Opp'n at 7.)

Irvine's citation to City of Chicago v. Morales, 527 U.S. 41, 55 & n.22 (1999), is patently misleading. The cited language in Morales is part of a footnote criticizing the dissent's application of the Salerno formulation and specifically noting that is most likely inappropriate for federal courts to apply this standard. Morales, 527 U.S. at 55, n. 22, citing United States v. Salerno, 481 U.S. 739, 745 (1987.) While the Court is aware that the Ninth Circuit also quoted the Salerno formulation in Sprint II, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 06-550-JVS (ANx)                    Date   March 10, 2008

Title      Newpath Networks LLC v. The City of Irvine, California, et al.

cases are consistent in their analysis of §253(a) preemption. See Sprint Telephony PCS v. County of San Diego, ("Sprint II") 490 F.3d 700, 715-716 (9th Cir. 2007); Auburn, 260 F.3d at 1175-76.

   In order to mount a facial challenge, NewPath must demonstrate that the law on its face prohibits, or has the effect of prohibiting, the provision of wireless services and is therefore barred by §253(a). A list of possible factors for the Court's consideration in examining a facial challenge to an ordinance was approved by the Ninth Circuit in Sprint II. See Sprint II, 490 F.3d at 715-16. Though the court did not attempt to formulate an exhaustive list of applicable considerations, it did note that the following factors were of concern to its preemption analysis in both Sprint II and Auburn:

> (1) an onerous application process imposing burdensome requirements on telecommunications companies and giving significant discretion to local government officials to grant or deny permission to use the right-of-way;
> (2) a requirement to obtain a franchise;
> (3) the threat of criminal or civil penalties for failure to meet municipal requirements, or obtain municipal consent; and
> (4) a combination of these factors; for example, regulations coupled with a lengthy approval process.

See Sprint II, 490 F.3d at 716 (noting that the Ninth Circuit identified the relevant factors in Auburn and finding that its concerns in Sprint II were "almost identical"); Auburn, 260 F.3d at 1175-76 (summarizing the requirements other cases have looked to in evaluating § 253(a) preemption).

   The WCO categorizes wireless communication facilities and their equipment into eleven separate classes of "antennas" based on "observed aesthetic impacts." (See, IZO §

---

quotation was _dicta_ and, more importantly, is not the cite Irvine provided to support its use of the standard. See Sprint II, 490 F.3d at 711 (noting that there is a high burden for parties asserting facial challenges and quoting language from Salerno in a parenthetical citation).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 06-550-JVS (ANx)                    Date    March 10, 2008

Title    Newpath Networks LLC v. The City of Irvine, California, et al.

1-2.)  These distinctions are based on criteria such as how the antennae is mounted, how it is camouflaged, the size of the antennae, whether it is "co-located" with other antennas or on an approved wireless communications facility, and the extent to which the antennae is still visible after camouflage techniques.  (IZO, § 1-2.)   The WCO then links the various antenna classes to a matrix of possible locations, in order to assign each class of antenna in a location group to a specific kind of Conditional Use Permit ("CUP").  (IZO, § 2-37.5.2)

For example, a Class 2 Antenna in a non-residential district within 150 to 400 feet of a residential, open space district or public park only requires a Wireless Communication Facility Permit ("WCFP"), which can be awarded with staff-level review.  (Id.)  Some wireless communications facilities require Minor Conditional Use Permits ("ZA") and are reviewed by the Zoning Administrator, while the majority require Major Conditional Use Permits ("PC") and are reviewed by the Planning Commission. (Id.)  Still other types of antennas are barred outright in particular location classes.  (Id.)

When applying for a WCFP, an applicant must submit, among other things:

1.    A deposit fee;
2.    A letter of justification describing the proposed facility and explaining how it will satisfy Section 2-37.5-5 (which requires, among other things, findings on the facility's visual compatibility with surroundings);
3.    Notice materials for public meetings and hearings;
4.    Proof that the carrier has not entered into any agreement prohibiting co-location at the proposed site;
5.    A map indicating the proposed side and detailing existing facilities owned and operated by the applicant, as well as a disclosure of all facility locations planned for the next 12 months;
6.    Technical information that justifies the proposed height of the antenna mount;
7.    Alternative site analysis that assesses the feasibility of alternative sites, as deemed necessary by the city, which should include an explanation of why other sites were not selected;
8.    Alternative configuration analysis, assessing the feasibility of alternative antenna construction configurations, at the proposed site and in the surrounding vicinity, as deemed necessary by the city;
9.    A projection of the carrier's anticipated future site needs within the city;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 06-550-JVS (ANx)                    Date   March 10, 2008

Title   Newpath Networks LLC v. The City of Irvine, California, et al.

10.   Other information as may be required by the Director of Community
      Development.[3]

(See IZO, § 2-37.5-4.)

Before a permit application can be approved by the appropriate body, either the
Zoning Administer or the Planning Commission must make a series of findings, in
addition to the findings required for other ZAs and PCs.  (IZO, § 2-37.5-5.)  These
findings must include the following:

1.   The proposed Wireless Communication Facility is visually compatible with the
     surrounding neighborhoods.
2.   The proposed Wireless Communication Facility is not detrimental to the public
     health, safety, or general welfare.
3.   The proposed Wireless Communication Facility is proposed to function in
     compliance with all applicable regulations of the Federal Communications
     Commission.
4.   The proposed Wireless Communication Facility complies with the provisions of
     Chapter 3-8, Wireless Communications Facilities, Satellite Dish and Antenna
     Standards, as modified by this Ordinance.
5.   An alternative site(s) located further from a Residential District or Public Park
     cannot feasibly fulfill the coverage needs fulfilled by the installation at the
     proposed site.
6.   An alternative antenna construction plan that would result in a lower "Antenna
     Class" category for the proposed facility is not reasonably feasible and desirable
     under the circumstances.

(Id.)  No guidelines are given as to how the appropriate entity should arrive at these
findings, and the subjective nature of the approval criteria is further reflected in the

---

[3] The fact that the Court has underlined certain
language in the summary does not necessarily indicate
that such language represents the only offending
portions of the ordinance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 06-550-JVS (ANx)                    Date    March 10, 2008

Title    Newpath Networks LLC v. The City of Irvine, California, et al.

ordinance's "Intent" section.  (Id., §3-8-1.)[4]

While the WCO has additional provisions, the above summary is sufficient for the
Court to find that the "these requirements, particularly when considered together, are
patently onerous and have the effect of prohibiting . . . telecommunications companies
from providing telecommunications services." See Quest Communications v. City of
Berkeley, 433 F.3d 1253, 1258 (9th Cir. 2006); Auburn, 260 F.3d at 1176.  Moreover,
Irvine has the power to build into any approval an undefined requirement for subsequent
reconsideration, rendering such "approvals" uncertain.  (IZO, § 2-37.5-9.)

The requirements for filing an application are lengthy, time consuming and
certainly expensive.  Successful applicants must submit information regarding alternative
sites and configurations, must agree not to prohibit co-habitation at the proposed site, and
describe all anticipated future locations for use within the next year, as well as any
"[o]ther information as may be required."  (IZO, § 2-3-75.4).  This last requirement is
particularly onerous as it does not appear to place any limitation on the what the Director
of Community Development may require, or when he may require it.

Moreover, before a permit can be approved, the proper entity must make a series of
patently discretionary findings regarding the facilities visual compatibility with
surrounding areas and the feasibility of alternate cites or constructions.  (IZO, § 2-37.5-
5.)  At any point, and with no limitation, the Director of Community Development may
forward the permit to the Zoning Administrator for review, at which point a public
hearing may also be required.  (IZO, § 2-37.5-7.)

The Court finds that these regulations are burdensome and prohibitive and, in
combination, have the effect of prohibiting the provision of telecommunications services,
and "create a substantial and unlawful barrier to entry into participation" in Irvine's
telecommunications market.  See Auburn, 260, F.3d at 1176.  While the Court is
sympathetic to Irvine's argument that judicial decisions in this area have not been
particularly instructive in telling municipalities how they may regulate in accordance with

---

[4] For example, the ordinance expresses concern
about a "viewer's perception of the community," "visual
eyesores," and "unpleasant impressions."  (IZO, § 3-8-
1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 06-550-JVS (ANx)                    Date    March 10, 2008

Title    Newpath Networks LLC v. The City of Irvine, California, et al.

the Telecom Act, it is not for the Court to craft Irvine's zoning code. Accordingly, the Court finds that the WCO is preempted by § 253(a).

        2.    "Safe Harbor" Provision of 47 U.S.C. § 253(c)

    Irvine argues that any provisions of the WCO not in compliance with § 253(a) may be saved by the "safe harbor" provision of § 253(c). Section 253(c) states that "[n]othing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclose by such government."

    Beyond the statement that it may "prevail by demonstrating that the regulation falls within the right-of-way management safe harbor" provision, however, Irvine fails to make a single argument concerning how the WCO qualifies for protection under this provision. (Opp'n. at 8.)

    As the Ninth Circuit has noted, "[t]he Telecom Act does not define management of the public rights-of-way." Auburn, 260 F.3d at 1177. Accordingly, the court in Auburn relied on a rulings by the Federal Communications Commission and the Telecom Act's legislative history for guidance when if found that "right-of-way management means control over the right-of-way itself, not control over companies with facilities in the right-of-way." Id. According to the FCC,

        the types of activities that fall within the sphere of appropriate rights-of-way management . . . include coordination of construction schedules, determination of insurance bonding and indemnity requirements, establishment and enforcement of building codes, and keeping track of the various systems using the rights-of-way to prevent interference between them.

Id.

    Thus, Auburn held that regulations requiring a company to submit proof of its financial, technical and legal qualifications for providing telecommunications services

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 06-550-JVS (ANx)                    Date    March 10, 2008

Title    Newpath Networks LLC v. The City of Irvine, California, et al.

were not aimed at regulating the public rights-of-way. Id. Further, the court noted that regulations requiring a company to submit descriptions of the services to be provided did not "directly relate to management of the rights-of-way" because a city "does not have the authority to request information regarding systems, plans, or purposes of the telecommunications facilities." Id.

Here, the Court finds that many of the WCO requirements cannot be described as directly related to management of the public rights-of-way. For example, many of the permit classifications are determined by the cosmetic properties of the structure and the structure's proximity to residential or public spaces. (IZO, §1-2, 2-37.5-3.) The WCO also requires a letter of "justification describing the proposed wireless communication facility," a description of the "communication services, equipment, or facilities that the applicant will offer or make available to the City or other public, educational and government institutions," and a finding that the facility is "visually compatible with the surrounding neighborhood." (Id. at §2-37.5-4, 2-37.5-6.)

As is apparent, these provisions have more to do with regulating the appearance of the telecommunications facilities than regulating the public rights-of-way. Accordingly, the Court finds that the WCO is not saved by the safe harbor provision of § 253(c).

3.    Severability

"To determine whether invalid portions of the ordinances are severable, we look to state law." Auburn, 260 F.2d at 1180. In California,

> the presence of a severability clause coupled with the ability functionally, mechanically, and grammatically to sever the invalid portion from the valid portions of an enactment ordinarily will allow severance but only if the remainder of the enactment is complete in itself and would have been adopted without the invalid portion.

Qwest Communications v. City of Berkeley, 433 F.3d 1253, 1259 (9th Cir. 2006).

Given the number and variety of provisions of the WCO that are preempted by the Telecom Act, the Court finds that "attempting to sever the invalid from the valid provisions would not be appropriate. See Auburn, 260 F.3d at 1180 (applying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 06-550-JVS (ANx)                Date   March 10, 2008

Title   Newpath Networks LLC v. The City of Irvine, California, et al.

Washington law). As in Auburn, the Court "cannot say that the objectionable portions of the present ordinance may be excised without rendering the end product a Swiss cheese regulation that would not be capable of accomplishing the ordinances legislative purposes." Id. at 1180-81 (applying Washington law). Moreover, Irvine failed to request that the Court sever any invalid potions of the WCO, and failed to make any argument regarding severability, in its opposition to this motion.[5]

Accordingly, the Court finds that the WCO is preempted by §253(a) in its entirety and is therefore invalid. However, the Court declines to issue an order requiring Irvine to issue all necessary permits for the construction of NewPath's DAS. As Irvine argued at the hearing on this motion, NewPath chose to raise a facial challenge to the WCO, rather than wait for a final determination of its permit application. For that reason, the relief available under § 332(7) is not available here.

B.    Preemption by Cal. Pub. Util. Code §§ 7901 and 7091.1

NewPath also requests that this Court find the WCO preempted by Cal. Pub. Util. Code §§ 7901 and 7091.1.

The Court notes that the Ninth Circuit has twice requested that the Supreme Court of California decide the question of whether "§§ 7901 and 7901.1 permit public entities to regulate the placement of telephone equipment in public rights of way on esthetic grounds." See Sprint PCS Assets v. City of Palos Verdes Estates, 508 F.3d 897, 897 (9th Cir. 2007); Sprint PCS Assets v. City of Palos Verdes Estates, 487 F.3d 694, 695 (9th Cir. 2007). In light of the Ninth Circuit's statement that "[t]he decisions of the Supreme Court of California and the California Courts of Appeal provide no answer," the Court declines to exercise supplemental jurisdiction over NewPath's state law claims. 28 U.S.C. §1367(c)(1).[6]

----

[5] Only the opposition brief filed on February 25, 2008 by Amicus discusses severability. (See Docket No. 98, p. 8.)

[6] The Court recognizes the Ninth Circuit's finding in Sprint PCS v. City of La Cañada Flintridge, 250 Fed. App. 688, 691 (9th Cir. 2006), that a city's regulatory power "is functional, and does not extend to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 06-550-JVS (ANx)          Date    March 10, 2008

Title    Newpath Networks LLC v. The City of Irvine, California, et al.

C.    Equal Protection Claim

The parties appear to agree that NewPath is not a member of a suspect class, and that Irvine's actions have not infringed on any fundamental rights. (See Mot. at 23; Opp'n at 16; NewPath's Reply at 10.) Accordingly, NewPath argues only that Irvine's conduct cannot meet the requirements of the rational basis test, because there is no legitimate government interest requiring NewPath to submit to the WCO's provisions.

Because rational basis review applies, the Court presumes that the WCO's requirements are valid and sustains their application if the WCO "is rationally related to a legitimate state interest." Berger v. City of Seattle, 512 F.3d 582, 606-07 (9th Cir. 2008). During oral argument, NewPath argued that it should not be subject to the provisions of the WCO because it is a competitive local exchange carriers that utilize antennas, and not a wireless communications provider. Accordingly, NewPath argues that treating exchange carriers that utilize antennas differently than traditional exchange carriers that do not, is irrational and amounts to an equal protection violation.[7] The first argument is irrelevant, as the question here is not whether the WCO is preempted, but whether it is rationally related to a legitimate state interest. The second argument also is unavailing.

The WCO explicitly states that it is designed to "ensure all Wireless Communication Facilities are appropriately located, designed and maintained to protect the public health, safety, and welfare, while minimizing their adverse visual and environmental effects." (IZO § 2-37.5.1.) The Ninth Circuit has specifically held that

---

aesthetics" under Cal. Util. Code. §§ 7901 and 7091.1. However, the La Cañada Flintridge opinion is unpublished, and therefore provides no guidance for this Court. See id. at 689.

[7] During oral argument, NewPath correctly pointed out that the Court mis-characterized Newpath as a "wireless carrier" in its tentative opinion, and further, mis-characterized the basis of its equal protection claim. The Court has corrected this error; however, reclassifying NewPath as an "exchange carrier" does not make the argument meritorious.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   SACV 06-550-JVS (ANx)                    Date   March 10, 2008

Title      Newpath Networks LLC v. The City of Irvine, California, et al.

"improving safety and aesthetics are substantial government interests." Honolulu
Weekly, Inc. v. Harris, 298 F.3d 1037, 1048 (9th Cir. 2002).

    Thus, the Court finds that NewPath has failed to demonstrate that Irvine's
treatment of exchange carriers that utilize antennas amounts to a violation of NewPath's
civil rights. NewPath's motion for summary judgment on its equal protection claim is
accordingly denied.[8]

    Although the instant motion was filed by NewPath, the Court finds that the issue
has been fully ventilated, and awards summary judgment in favor of Irvine on NewPath's
equal protection claim. See Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311-12 (9th Cir.
1982).

IV.   CONCLUSION

    For the foregoing reasons, the Court:

    1.   Grants NewPath's motion for summary judgment on the federal preemption
         claim, and finds that the WCO is preempted by § 353(a);

    2.   Declines to exercise supplemental jurisdiction over NewPath's state law
         claims;

    3.   Denies Newpath's motion for summary judgment and awards summary
         judgment in favor of Irvine on NewPath's equal protection claim; and

    4.   Orders NewPath to submit a proposed order detailing the requested
         permanent injunction, in accordance with the above holding, within 10 days.

---

[8] To the extent Newpath's 42 U.S.C. §§ 1983 and
1988 claims are premised on violations of the Telecom
Act, the law is clear that § 253(a) does not create a
private right of action enforceable through §1983. See
Sprint II, 700 F.3d at 717. To the extent they are
based on equal protection violations, the Court rules
against NewPath for the reasons stated above.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-550-JVS (ANx) | Date | March 10, 2008 |

| | |
|---|---|
| Title | Newpath Networks LLC v. The City of Irvine, California, et al. |

| | | : | 00 |
|---|---|---|---|
| | Initials of Preparer | kjt | |