1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  THERESA L. MUELLER, State Bar #172681
   Chief Energy and Telecommunications Deputy
3  WILLIAM K. SANDERS, State Bar #154156
   THOMAS J. LONG, State Bar #124776
4  Deputy City Attorneys
   City Hall, Room 234
5  1 Dr. Carlton B. Goodlett Place
   San Francisco, California 94102-4682
6  Telephone:      (415) 554-6548
   Facsimile:      (415) 554-4757
7  E-Mail:         thomas.long@sfgov.org

8  Attorneys for Defendants
   THE CITY AND COUNTY OF SAN FRANCISCO and
9  THE DEPARTMENT OF PUBLIC WORKS OF THE
   CITY AND COUNTY OF SAN FRANCISCO

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15  NEXTG NETWORKS OF CALIFORNIA,        Case No. CV-08-0985-MHP
    INC., a Delaware corporation,
16                                        **REPLY MEMORANDUM OF POINTS
              Plaintiff,                   AND AUTHORITIES IN SUPPORT OF
17                                         DEFENDANTS' MOTION FOR
         vs.                               SUMMARY JUDGMENT**
18
    THE CITY AND COUNTY OF SAN           Hearing Date:  June 9, 2008
19  FRANCISCO and THE DEPARTMENT         Time:          2:00 p.m.
    OF PUBLIC WORKS OF THE CITY OF       Place:         Courtroom 15
20  SAN FRANCISCO,

21            Defendants.

22

23

24

25

26

27

28

REPLY MEMORANDUM
Case No. CV-08-0985-MHP

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II.   REPLY STATEMENT OF FACTS ................................................................. 2

    A.   The Regulations Do Not Bar NextG's Entry Into the
        Telecommunications Market ................................................................. 2

    B.   The Department Maps Are Clear and Do Not Require Discretion To
        Use ........................................................................................................ 3

    C.   The Application Requirements Are Reasonable ................................... 4

    D.   Hearings Are Not Required ................................................................... 5

    E.   Grants or Denials of Wireless Permits May Be Appealed ................... 6

    F.   The Requirements for a UCP Are Clear ............................................... 6

III.  STANDARD OF REVIEW ............................................................................. 7

IV.   ARGUMENT .................................................................................................. 8

    A.   The Court Should Grant Summary Judgment for the City on NextG's
        Claim that § 253(a) Preempts the City's Wireless Permit Regulations ....... 8

    B.   The Regulations Are Saved by § 253(c) ............................................ 11

    C.   The Regulations Are Saved by § 253(b) ............................................ 12

    D.   Section 332(c)(7) Provides an Additional Basis for Granting Summary
        Judgment to the City on NextG's Facial Challenge ......................... 12

    E.   This Court Should Grant the City Summary Judgment on NextG's State
        Law Claim .......................................................................................... 14

V.    CONCLUSION ............................................................................................ 15

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Chemical Specialties Manufacturers Association, Inc. v. Allenby*
    958 F.2d 941 (9th Cir. 1992) ..................................................................................7

4

*City of Auburn v. Qwest Corp.*
    260 F.3d 1160 (9th Cir. 2001) ................................................................................8

5

6

*Cox Communications v. City of San Marcos*
    204 F. Supp. 2d 1260 (S.D. Cal. 2002) ...............................................................13

7

*GTE Mobilnet of California v. San Francisco*
    2007 U.S. Dist LEXIS 8801 (N.D. Cal. 2007) ...................................................10

8

9

*Nextel Communications of the Mid-Atlantic, Inc. v. City of Cambridge*
    246 F. Supp. 2d 118 (D. Mass. 2003)...................................................................10

10

*NextG Networks of California, Inc. v. City of San Francisco*
    2006 U.S. Dist. LEXIS 36101 (N.D. Cal. 2006) ...............................................1, 6

11

12

*NextG Networks of California, Inc. v. County of Los Angeles*
    522 F. Supp. 2d 1240 (C.D. Cal. 2007) .................................................................8

13

14

*Qwest Communications, Inc. v. City of Berkeley*
    433 F.3d 1253 (9th Cir. 2006) ...............................................................................9

15

*Qwest Corp. v. City of Portland*
    385 F.3d 1236 (9th Cir. 2004) ...............................................................................9

16

17

*Salerno v. United States*
    481 U.S. 739 (1987).................................................................................................7

18

19

*Southwestern Bell Mobile Systems, Inc. v. Todd*
    244 F.3d 51 (1st Cir. 2001).....................................................................................10

20

*Sprint PCS Assets, L.L.C. v. City of Palos Verdes*
    487 F.3d 694 (9th Cir. 2007) ...............................................................................15

21

22

*Sprint Telephony PCS v. County of San Diego*
    2008 U.S. App. LEXIS 10421 (9th Cir. 2008) .....................................................13

23

24

*T-Mobile USA, Inc. v. City of Anacortes*
    2008 U.S. Dist. LEXIS 37481(W.D. Wash. 2008)................................................14

25

*Verizon Wireless v. City of Rio Rancho*
    476 F. Supp. 2d 1235 (D.N.M. 2007)...................................................................13

26

27

28

**Federal Statutes**

28 United States Code
  Section 367(a) ..................................................................................................14

47 United States Code
  Section 253 ...............................................................................................passim
  Section 253(a) ...................................................................................1, 8, 12
  Section 253(b) .........................................................................................1, 12
  Section  253(c) ...............................................................................1, 11, 12
  Section 332(c)(7) .....................................................................................passim
  Section 332(c)(7)(A) ........................................................................................12
  Section 332(c)(7)(B) ........................................................................................13
  Section 332(c)(7)(B)(i)(II) ...............................................................................13
  Section 332(c)(7)(B)(iii) .................................................................................13

**State Statutes & Codes**

Public Utilities Code
  Section 2902 ....................................................................................................12
  Section 7901 ...........................................................................................14, 15
  Section 7901.1 ................................................................................................15

**San Francisco Codes and Charter**

San Francisco Administrative Code
  Section 11.9 ........................................................................................................1
  Section 11.9(a) ..................................................................................................7
  Section 11.9(b)(3) ...........................................................................................5
  Section 11.9(b)(3)(D) ....................................................................................5

San Francisco Charter
  Section 4.106(b) .............................................................................................6

San Francisco Planning Code
  Section 1001 ....................................................................................................12

1

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

2        Rather than imposing barriers to market entry, the City's new regulations for personal

3    wireless service facilities ("Wireless Facilities") facilitate market entry by opening up many parts of

4    San Francisco to the installation of such facilities through a procedure that is quick, easy, and

5    inexpensive.  In its opposition to the City's motion for summary judgment, NextG admits that the

6    City's process for obtaining personal wireless service facilities site permits ("Wireless Permits") in

7    unprotected locations satisfies federal law.  This feature of the City's regulations is a sufficient basis

8    to deny NextG's *facial* challenge because it ensures that providers who site their antennas in

9    unprotected locations will not be prohibited from providing telecommunications services in San

10   Francisco.  The Court need look no further to grant summary judgment to the City.

11       If the Court chooses to go beyond this dispositive issue, it will see that NextG's facial

12   challenge to San Francisco Administrative Code § 11.9 and the Department of Public Works

13   ("DPW") implementing regulations (DPW Order No. 177,163) (collectively "Regulations") boils

14   down to one undisputed fact:  that in parts of the City where important scenic, historic or architectural

15   resources are present (a "protected location") the City has reserved the right to deny an application for

16   a Wireless Permit based on aesthetic concerns.  NextG misconstrues controlling authority when it

17   argues that the City's ability to exercise this discretion is alone sufficient to warrant preemption of the

18   Regulations under 47 U.S.C. § 253(a).  No Ninth Circuit decision supports such a construction of §

19   253(a).  Furthermore, in *NextG Networks of California, Inc. v. City of San Francisco*, 2006 U.S. Dist.

20   LEXIS 36101 (N.D. Cal. 2006) ("*NextG I*"), this Court rejected such a construction by recognizing

21   that the City could take steps to insure that Wireless Facilities do not "proliferate without regard for

22   public convenience, the negative views of residents, or aesthetic guidelines."  NextG also fails to

23   recognize that, in 47 U.S.C. § 253(b) and § 253(c), Congress saved local regulations of this kind from

24   preemption by § 253(a), and that in 47 U.S.C. § 332(c)(7) Congress expressly authorized local

25   governments to regulate the construction of Wireless Facilities in this manner.

26       Because NextG's federal law claim fails as a matter of law, this Court should grant the City's

27   motion for summary judgment as to that claim.

28

REPLY MEMORANDUM                                    1
Case No. CV-08-0985-MHP

## II.    REPLY STATEMENT OF FACTS

### A.    The Regulations Do Not Bar NextG's Entry Into the Telecommunications Market

The City granted NextG entry into the telecommunications market in San Francisco when it issued NextG a utility conditions permit ("UCP").  *See* Reply Declaration of Daniel McKenna in Support of the City's Motion ("McKenna Reply Dec."), ¶ 11.  The City only requires NextG to obtain Wireless Permits in order to install Wireless Facilities in the public rights-of-way.  NextG does not allege that § 253 somehow preempts the City's authority to require Wireless Permits.  In fact, NextG admits that "the City clearly knows what a permissible permitting scheme would look like, because it has created what appears to be a permissible scheme to govern 'unprotected' locations." NextG's Opposition to Defendants' Motion for Summary Judgment ("NextG Opp."), p. 16.  Wherever NextG can locate sites for its proposed Wireless Facilities that are in unprotected locations -- which the Department Maps show exist throughout San Francisco – it can install those facilities without any review by the Planning or Recreation and Park ("Rec/Park") Departments.  This undisputed evidence is sufficient for the Court to grant summary judgment to the City on NextG's facial challenge.

Perhaps because it recognizes that the streamlined permitting process for unprotected locations undermines its case, NextG has tried to inject an issue that is beyond the scope of a facial challenge.  NextG first alleged that "*at least 90%* of NextG's anticipated new facility installations will be subject to review by the Planning Department and/or Recreation and Park Department." Complaint, ¶ 49 (emphasis added).  After the City denied that allegation (Answer, § 49), NextG backtracked, arguing (without any evidentiary support) that "[i]n the *vast majority* of the City," NextG's applications would be subject to review by these departments.  NextG's Motion for Judgment on the Pleadings ("NextG Motion"), pp. 6-7 (emphasis added).  As this was an unsupported (and erroneous) factual assertion, the City showed in its motion, based on NextG's *actual, prior* construction activities in San Francisco, that NextG could have erected two-thirds of its Wireless Facilities without approval from those departments.[1]  *See* Declaration of Dan McKenna in Support of

---

[1] NextG's claim that it is ignorant of the document Mr. McKenna referred to in his declaration (Alford Dec., ¶ 4) is puzzling, in light of the fact that Mr. McKenna presented the same analysis and the City filed the supporting document in *NextG I*.  McKenna Reply Dec., ¶¶ 13-14.

1  Defendants' Motion ("McKenna Dec."), ¶¶ 25-26.  In its opposition, NextG has now offered

2  speculative statements about potential future projects (in some unspecified part of San Francisco to

3  serve an unidentified customer) and how many applications might require Planning Department

4  review.  *See* Declaration of Robert Alford in Opposition to the City's Motion ("Alford Dec."), ¶ 7.[2]

5      The sole factual focus of NextG's facial challenge should be the Regulations themselves.

6  Issues regarding how the regulations will apply to potential future NextG projects and applications

7  cannot and should not be addressed unless and until NextG actually submits Wireless Permit

8  applications.[3]  If and when that happens, the parties should be allowed to conduct discovery regarding

9  the applications, City actions in response, and the impact on NextG.  For now, the City has

10  established by undisputed evidence that the Regulations allow NextG to use the streamlined process

11  wherever there are unprotected locations as shown on the Department Maps.[4]

12  **B.    The Department Maps Are Clear and Do Not Require Discretion To Use**

13      In its motion, NextG argued that the maps the City intended to use to determine whether a

14  proposed location for a Wireless Facility was a protected location were "illegible" and "based entirely

15  on DPW's discretionary, subjective notions."  NextG Motion, p. 8.  In the City's motion, the City

16  introduced competent testimony that showed NextG had based its argument on maps that NextG

17  knew or should have known that the City did not intend to use.  The City presented updated maps –

18

19      [2]  The City has filed objections to paragraph 7 of the Alford Declaration on the grounds that
20  his statements are irrelevant to and beyond the scope of a facial challenge, speculative, and lack the
    proper evidentiary foundation.  In the event the Court denies this motion, Mr. Alford's statements do
21  not help NextG's case.  He admits that, for one planned project, nine out of 18 potential sites would
    be able to use the streamlined process for unprotected locations. Alford Dec., ¶ 7.

22      [3]  The City reserves the right to argue that "decisions" to deny applications for Wireless
    Permits must be challenged under § 332(c)(7).

23      [4]  In another example of the evolving nature of NextG's claim in this case, NextG now
    alleges that it can prevail in this case upon proof that it may use protected locations for "even a
24  fraction" of its large wireless networks.  *See* NextG Opp., p. 17.  To support this argument, NextG
    relies on the brand new theory (never mentioned in its Complaint or motion), articulated in the
25  declaration of David M. Cutrer, that Planning Department review of even a few sites of some future
    unidentified networks (without any specifics regarding location or number of sites, would have a
26  vaguely phrased "significant negative impact" (without indicating whether that means canceling a
    project or lesser impacts such as increased costs or delayed project implementation).  The City has
27  filed accompanying objections to the Cutrer declaration on the grounds that it is irrelevant to and
    beyond the scope of a facial challenge, and lacks the proper evidentiary foundation.

28

1    available to NextG before it filed its Complaint – that clearly identified the protected locations. The

2    City further showed that every protected location had been identified either by the Planning or

3    Rec/Park Department long before the City enacted Ordinance No. 214-07, and that DPW had nothing

4    to do with those designations. *See* City's Motion for Summary Judgment ("City Motion"), pp 5-6.

5         In its opposition to the City's motion, NextG admitted (as it must) that the maps the City

6    intends to use are "at least readable." NextG Opp., p. 6. NextG still quibbles, however, that NextG

7    finds the maps unclear in certain intersections. Alford Dec., ¶ 6. NextG cites as an example its

8    uncertainty about a location that is *15 feet from a protected street*. *See* NextG Opp., p. 2, 6; Alford

9    Dec., ¶ 6. DPW has no intention of construing the maps in a manner that is inconsistent with the

10   Regulations, as NextG appears to suggest.[5] If a proposed location for a Wireless Facility is *not*

11   identified as a protected location, DPW will issue the permit without any reference to other City

12   agencies, as required by the Regulations. In any event, if an applicant for a Wireless Permit cannot

13   determine whether Planning Department approval would be required, DPW is willing to meet with

14   the applicant *prior to filing the application,* so that the applicant and DPW can jointly determine

15   whether the proposed location is within a protected area. McKenna Reply Dec., ¶¶ 6-7.

16        The City also showed in its motion – and NextG does not dispute -- that each of the protected

17   locations identified on the Department Maps were designated as scenic, historic or architectural

18   resources by a national, state or local agency that is responsible for such matters *for purposes*

19   *unrelated to the Regulations.* *See* Declaration of Amit K. Ghosh in Support of Defendants' Motion

20   ("Ghosh Dec."); Declaration of Mark Luellen in Support of Defendants' Motion.

21        **C.    The Application Requirements Are Reasonable**

22        The requirements for applications for Wireless Permits are contained in the Order (Section

23   III.C) and summarized in the City's motion. *See* City Motion, pp. 6, 7. Nowhere in its motion or

24

25        [5] DPW prepared the Planning Department maps from information contained in databases that
26   the Planning Department provided to DPW. Those databases contain the specific location of all of
     the City's protected resources. DPW will resolve any doubts as to whether a location is protected
27   after reviewing the map by referring to the MapView map, which shows the parcel numbers and
     street segments of all the protected locations. McKenna Reply Dec., ¶ 5.

28

opposition has NextG even asserted that the City has required applicants for Wireless Permits to provide the City with information that is not necessary for the City to review the application.

The Regulations also specify reasonable, cost-based fees. S.F. Admin. Code § 11.9(b)(3). Nowhere has NextG claimed that these fees are excessive. The only argument NextG can muster with respect to the fees is the "City has left itself an opening to charge unlimited fees." NextG Opp., p. 15 (citing § 11.9(b)(3)(D)). While it is true that the Regulations allow for additional fees, they must be related to the City's review of an application for a Wireless Permit, based on "actual costs," and charged on a "time and material basis." Section 11.9(b)(3)(D).

### D.    Hearings Are Not Required

In its motion, NextG speculated that hearings are "possible" (NextG Motion, p. 9), even though there is no language in the Regulations to support such speculation. In its motion, the City introduced competent testimony that showed that neither DPW, the Planning Department, nor the Rec/Park Department intends to conduct hearings to determine whether to grant or deny a Wireless Permit. McKenna Dec., ¶ 28; Ghosh Dec., ¶ 25; Declaration of Daniel LaForte in Support of Defendants' Motion, ¶ 3. Unable to refute this testimony, NextG simply resorts to asking this Court to exclude this competent testimony based on a frivolous argument that the City employees making these statements are offering legal opinions.[6]

NextG's efforts to exclude this evidence is not surprising, because the absence of hearings is a critical fact that differentiates the Regulations from all the other local ordinances the courts have found were preempted by federal law, including the City's major encroachment permit ("MEP") ordinance. *See NextG I*, 2006 U.S. Dist. LEXIS 36101, *14-16. The absence of a public hearing requirement and the fact that elected officials are not involved in the decision-making process prove that the discretion authorized by the Regulations is of a different character than the discretion exercised by elected officials without any guiding standard, as under the MEP process that this Court found was preempted.[7]

---

[6]  The City has filed a separate opposition to NextG's objections.

[7]  NextG attempts to refute the City's assertion that City "experts" will be making these decisions by arguing that the City has not asked the Court to "qualify any of its experts or produced (continued on next page)

E.    **Grants or Denials of Wireless Permits May Be Appealed**

In its motion, NextG argued that federal law preempts the City's Regulations in part because the Regulations do not allow appeals of permit denials. NextG Motion, p. 16. In the City's motion, the City showed that NextG had erred and that the grant or denial of a Wireless Permit was appealable to the San Francisco Board of Appeals. City Motion, p. 5 (citing Order, § VI). In the moving target that is NextG's federal preemption claim, NextG now asserts that federal law preempts the Regulations because the opportunity to file an appeal "amplifies the problem by adding another burdensome, discretionary stage to the permitting process." NextG Opp., p. 16. NextG cannot have it both ways. It cannot assert that it needs the right to appeal a permit denial, but complain that allowing others to appeal granted permits justifies preemption. In any event, the right to appeal cannot be addressed in the Regulations because it is a right that is contained in the San Francisco Charter, which can only be amended by the voters. *See* S.F. Charter § 4.106(b).

F.    **The Requirements for a UCP Are Clear**

Since 2000, the City has required telecommunications carriers to obtain UCPs. McKenna Reply Dec., ¶¶ 10. In fact, NextG sued the City in 2005 because the City denied NextG's application for a UCP. *See NextG I*, 2006 U.S. Dist. LEXIS 36101, *4-5. After NextG prevailed on summary judgment, this Court entered the judgment proposed by NextG and ordered the City to issue NextG a UCP in the form proposed by NextG, which contained few changes from the City's standard form. *See NextG I*, Document No. 61, filed 6/28/06. The City issued NextG a UCP as required by the Court. McKenna Reply Dec., ¶ 10.

In opposition to the City's motion, NextG asserts *for the first time* that the application requirements for a UCP are "vague." NextG Opp., p. 6.[8] They are not. All that is required from a

---

(footnote continued from previous page)
an expert report" (NextG Opp., p. 2). That argument makes no sense. The City will rely on these "experts" to determine whether to grant or deny applications for a Wireless Permit in a protected location – not to testify in support any of the City's defenses in this case. Only in the later case must this Court qualify a person as an "expert."

[8] NextG appears to have made this assertion in order to support its unfounded argument that NextG has to "overcome multiple levels of burden" in order to construct telecommunications facilities in San Francisco. NextG Opp., p. 14.

1   carrier like NextG is proof that the California Public Utilities Commission has issued the carrier a

2   certificate of public convenience and necessity ("CPCN"). *See* § 11.9(a); McKenna Reply Dec., ¶ 8.

3   NextG alleges that it has a CPCN, and the City has not denied those allegations. *See* Complaint, ¶¶

4   10-11; Answer, ¶¶ 10-11. NextG, therefore, readily meets all of the requirements for a UCP.[9] The

5   City has a form UCP.[10] If NextG believes that any of the requirements in the UCP are preempted, it

6   was incumbent on NextG to identify those for the Court, not to simply argue that the City could

7   impose requirements that might be preempted.

8  **III.   STANDARD OF REVIEW**

9       In support of its motion, the City cited *Salerno v. United States*, 481 U.S. 739, 745 (1987), for

10  the proposition that, to prevail on its facial challenge, NextG must show that there is no set of

11  circumstances under which the Regulations would be valid. (City Motion, p. 10). NextG asks this

12  Court to reject *Salerno* because it only applies to constitutional challenges. NextG Opp., p. 10.

13  However, the Ninth Circuit has cited *Salerno* in cases claiming federal *statutory* preemption. *See,*

14  *e.g., Chemical Specialties Manufacturers Association, Inc. v. Allenby*, 958 F.2d 941 (9th Cir. 1992).

15  In that case, the Ninth Circuit held that, for the plaintiff to prevail on its claim that federal law

16  preempts the California Safe Drinking Water and Toxic Enforcement Act (Proposition 65), the

17  plaintiff must prove that "all possible consumer product warnings that would satisfy Proposition 65

18  conflict with provisions of the federal statutes." *Id.* at 943. Consequently, NextG cannot prevail on

19  its facial challenge merely by conjuring a situation under which the denial of one or more permits

20  could have the effect of barring its telecommunications services in the City. Under *Salerno* and

21  *Allenby*, the opposite is true – the City need only show that there are circumstances under which the

22  Regulations could not have the effect of barring telecommunications. One such circumstance is

23

24

---

25     [9] In fact, the City has offered to issue NextG a new UCP after the Court-ordered UCP
expires. *See* Declaration of Nicole Mason in Opposition to Defendants' Motion, ¶ 3 and Ex. A;
26  McKenna Reply Dec., ¶ 10.

27     [10] The form the City uses is substantially the same for all telecommunications carriers.
McKenna Reply Dec., ¶ 9.

28

1    readily apparent – applicants who site all of their Wireless Facilities in unprotected locations cannot

2    be barred from providing telecommunications services in San Francisco.

3    IV.    ARGUMENT

4    　　　A.    **The Court Should Grant Summary Judgment for the City on NextG's Claim that**
           **§ 253(a) Preempts the City's Wireless Permit Regulations**

5

6    　　　NextG attempts to liken the Regulations to: (1) the local ordinances in *City of Auburn v.*

7    *Qwest Corp.*, 260 F.3d 1160 (9th Cir. 2001); (2) the MEP ordinance in *NextG I*; and (3) the

8    conditional use permit ordinance in *NextG Networks of California, Inc. v. County of Los Angeles*, 522

9    F. Supp. 2d 1240 (C.D. Cal. 2007). *See* Next Opp., pp. 10-13. In each attempt, NextG fails.

10   　　　In *Auburn*, the Ninth Circuit considered a number of local ordinances, all of which required a

11   telecommunications carrier to obtain a franchise for the privilege of providing telecommunications

12   services. *See Auburn*, 260 F.3d at 1176. In finding that § 253(a) preempted the ordinances, the court

13   found that "several features" of those ordinances "in combination, have the effect of prohibiting the

14   provision of telecommunications services." *Id*. Those features included: (1) "a lengthy and detailed

15   application form, including maps, corporate policies, documentation of licenses, certain specified

16   items;" (2) "a public hearing before granting or revoking a franchise;" (3) the authority to consider

17   "discretionary factors" before granting a franchise "that have nothing to do with the management or

18   use of the right-of-way;" (4) the authority to "regulate transferability of ownership, even requiring

19   franchises to report to stock sales;" (5) "non-tax fees" that "are not based on the costs of maintaining

20   the right of way;" (6) the "discretion to grant, deny, or revoke the franchises;" and (7) the authority to

21   invoke civil and criminal penalties. *Id*.

22   　　　While NextG asserts that the City's Regulations are "directly on point with those struck down

23   in *Auburn*," (NextG Opp., p. 9), NextG fails to address the significant differences between the

24   ordinances at issue in *Auburn* and the Regulations. First and foremost, unlike *Auburn*, the City does

25   not require telecommunications carriers to obtain franchises. The City only requires a UCP, which is

26   easily obtained. While the City requires Wireless Permits, NextG does not dispute that they are

27   easily obtained in unprotected areas. Second, NextG does not even allege that the City's application

28   requirements for either UCPs or Wireless Permits are onerous. Third, there is no public hearing

required for either a UCP or a Wireless Permit.  Fourth, any discretionary factors the City may consider in granting Wireless Permits in protected areas are directly related to a carrier's use of the public rights-of-way for its Wireless Facilities.  Fifth, NextG does not allege that the City is regulating corporate ownership.  Sixth, NextG does not allege that the City's fees are not cost-based or unrelated to the City's management of the public rights-of-way.  Seventh, the discretion exercised by the City relates to individual Wireless Permits in protected areas only.[11]  Eighth, the Regulations do not include criminal penalties.

Thus, out of all the factors identified in *Auburn*, the one and only similarity in the Regulations is the process for obtaining Wireless Permits in protected locations.  In this regard, NextG asserts that the Regulations subject NextG to a "standardless, undefined and discretionary review process." NextG Opposition, p. 13.  While the City disagrees that the process is "standardless" and/or "undefined," the City admits that it is discretionary.  But that is not enough under *Auburn* for this Court to find preemption based on a facial challenge.  The *Auburn* court found that the ability to exercise discretion *to deny a franchise, combined with other suspect features*, warranted preemption. That NextG can serve much of San Francisco without Planning or Rec/Park Department reviews, and *the absence of any other suspect features*, distinguishes this case from *Auburn*.

Furthermore, a prominent issue here is that these Departments will exercise their discretion *based on aesthetic concerns. See* NextG Opp., p. 13.  There is no controlling authority that local governments cannot take aesthetic concerns into account when regulating the construction of wireless facilities.  Indeed, NextG has failed to address this Court's finding that the City could do just that:

> The court acknowledges the City's concern that absent regulation, wireless antennas will proliferate without regard for public convenience, the negative views of residents, or aesthetic guidelines. The City is not foreclosed from regulating wireless carriers through neutral, explicit conditions for access which permit carriers to install their antennas and are limited to what is necessary to promote effective management of the City's rights-of-way.

---

[11]  There is no controlling authority applying *Auburn* to right-of-way use permits like the City's Wireless Permits.  Instead, the other Ninth Circuit decisions only concern franchise or other permits required to enter the market. *See Qwest Communications, Inc. v. City of Berkeley*, 433 F.3d 1253, 1256-58 (9th Cir. 2006); *Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1238-41 (9th Cir. 2004).

1  *NextG I*, 2006 U.S. Dist. LEXIS 36101, at *27; *see also Southwestern Bell Mobile Systems, Inc. v.*

2  *Todd*, 244 F.3d 51, 61 (1st Cir. 2001) (nothing in the "TCA prevents municipalities from exercising

3  their traditional prerogative to restrict and control development based upon aesthetic considerations").

4  Where aesthetic regulations are allowed, they cannot be implemented without the exercise of

5  discretion. Aesthetic standards are also difficult to capture in objective requirements. As one court

6  noted in the context of 47 U.S.C. § 332(c)(7):

7              The problem . . . is that the application and enforcement of aesthetic standards
             involves judgments that *necessarily have a substantial subjective component.*
8            Beauty is in the eye of the beholder, and it is not uncommon for persons to
             form differing opinions about what is visually pleasing, especially in the mid-
9            range, rather than at the extremes, of the spectrum of possibilities.

10  *Nextel Communications of the Mid-Atlantic, Inc. v. City of Cambridge*, 246 F. Supp. 2d 118, 124 (D.

11  Mass. 2003) (emphasis added).

12        For similar reasons, NextG's reliance on *NextG I* and *County of Los Angeles* is misplaced.

13  While NextG asserted in its motion that the Regulations contain the "same" requirements as those

14  struck down by this Court (NextG Motion, p. 1), NextG now backs off that position and admits – as it

15  must – that the City has "done away with some of the prior burdens" (NextG Opp., p. 14). What

16  NextG ignores, however, is that the prior burdens the City has removed are not insignificant. Rather,

17  they were exactly the burdens this Court found were "too broad in scope, vague in . . . details, and

18  draconian in . . . effect to pass muster." *NextG I*, 2006 U.S. Dist. LEXIS 36101, at *27; *see also GTE*

19  *Mobilnet of California v. San Francisco*, 2007 U.S. Dist LEXIS 8801, *13-14 (N.D. Cal. 2007). The

20  City has enabled NextG to install its Wireless Facilities throughout much of the San Francisco

21  without Planning or Rec/Park Department reviews. The City has eliminated the requirement for a

22  hearing (let alone multiple hearings), removed approving authority from the Board of Supervisors,

23  established standards for reviewing Wireless Permit applications, and reduced fees substantially.

24        To obtain the conditional use permit required in *County of Los Angeles* for wireless facilities

25  throughout Los Angeles County, an applicant had to submit information concerning both its proposed

26  facilities and: (1) the "nature, condition and development of adjacent uses, buildings and structures;"

27  (2) the "dimensions and state of improvement of all adjoining streets;" (3) the "location and

28  dimensions of all structures, yards, walls, fences, parking and load facilities, landscaping and other

REPLY MEMORANDUM                            10
Case No. CV-08-0985-MHP

development features;" (4) all streets, adjacent lots and parcels and the uses all lots within a 500-radius foot radius; and (5) a certified list of the owners of all properties within 500 feet. *County of Los Angeles*, 552 F. Supp. 2d at 1249 (internal quotation marks omitted). To obtain a permit, the county required two public hearings. *Id.* at 1251. The county also required a fee of $5,000. *Id.* The ordinance further allowed county officials to impose numerous conditions of approval, relating to matters such as yards, open spaces, parking facilities, landscaping, and signs. *Id.* The only aspect of the county's ordinance similar to the Regulations is that the county would consider discretionary factors (albeit broader than the standards applicable to the Planning and Rec/Park Departments) before recommending approval of an application for a Wireless Permit in protected locations. *Id.* at 1250 (e.g., the proposed use may not "'[a]dversely affect the health, peace, comfort or welfare of persons residing or working in the surrounding area"). As noted above, however, under *Auburn,* the potential exercise of discretion to deny an application for a permit to construct a particular telecommunications facility – as opposed to an application for a franchise – is not enough to find based on a facial challenge that § 253 preempts the Regulations.

## B.    The Regulations Are Saved by § 253(c)

The City showed that management of the rights-of-way includes the discretion to deny an application to construct a Wireless Permit because of the effect such construction could have on the City's scenic, historic or architectural resources. City Motion, pp. 13-16. While NextG argues that the City's authority to regulate the rights-of-way is limited to construction schedules, insurance, indemnity, etc. (NextG Opp., pp. 18-19), there is no controlling authority limiting § 253(c) in this manner. Moreover, such a construction is inconsistent with the legislative history of the TCA. *See* City Motion, p.14.

NextG's effort to show that the Regulations are discriminatory is similarly misguided. A fair reading of § 253(c) is that its anti-discrimination provisions apply to discrimination among telecommunications carriers – not between telecommunications carriers and other utilities. For this reason, NextG's photographs of facilities used by electric utilities and cable television companies are

1    irrelevant to this analysis.[12]  Furthermore, NextG ignores the fact that the City imposes other

2    requirements on those entities via individual agreements.[13]  For example, the City requires them to

3    pay the City franchise fees.  Finally, the fact that Congress enacted in § 332(c)(7) a separate

4    legislative scheme that applies only to wireless facilities shows that there are fundamental attributes

5    of wireless facilities – such as their aesthetic impact and radio frequency emissions – that warrant

6    different treatment from other types of telecommunications facilities.

7    **C.      The Regulations Are Saved by § 253(b)**

8         NextG makes two points to attempt to refute the City's showing that § 253(b) saves the City's

9    Regulations.  First, NextG argues that § 253(b) does not apply to the City.  NextG Opp., p. 20.

10   However, NextG fails to address the City's argument that the State has delegated the protection of the

11   streets to local governments.  City Motion, p. 16 (citing Cal. Pub. Util. Code § 2902.)  Second, NextG

12   argues that keeping the public rights-of-way uncluttered is a § 253(c) issue, not a § 253(b) issue.

13   NextG Opp., p. 21.  This argument ignores at least one rationale for the City's protected locations.

14   The City's Planning Code recognizes that protecting the City's historic, scenic and architectural

15   resources "is essential to the health, safety and general welfare of the public."  S.F. Planning Code §

16   1001.

17   **D.      Section 332(c)(7) Provides an Additional Basis for Granting Summary Judgment
             to the City on NextG's Facial Challenge**

18

19        NextG argues that Congress's failure to include language in § 253 that exempts § 332(c)(7)

20   from the reach of § 253(a) makes § 332(c)(7) irrelevant to its § 253 challenge.  NextG Opp., p. 21.

21   This argument fundamentally misreads the relevant provisions.  As the City demonstrated in its

22   motion, § 332(c)(7)(A) states that "[n]othing in this chapter" – meaning the entire Communications

23   Act – shall limit the local authority that is preserved by § 332(c)(7).  City Motion, pp. 17-18.

---

24        [12]  NextG's assertion that it competes with wireline telephone companies or cable television
     providers for fiber-optic backhaul services (see Declaration of Robert Doherty in Opposition to

25   Defendants' Motion, ¶ 3), is irrelevant.  The City does not require NextG to obtain Wireless Permits
     to construct the fiber-optic portion of its network.  All NextG needs for that is its UCP.

26        [13]  While the City has been franchising cable television providers for many years, a new State

27   law makes the State the sole franchising authority for video services.  Cal. Pub. Util. Code § 5840(a).
     That law still requires video service providers to pay franchise fees.  Cal. Pub. Util. Code § 5840(q).

28

1    Congress could not have been more clear that it intended § 332(c)(7) to override any other provision

2    in the Communications Act that may be in conflict, including § 253.   Thus, including an exemption

3    for § 332(c)(7) in § 253 would have been pointless and redundant.   The "nothing in this chapter"

4    phrase has the exact same effect.

5         NextG implies that § 332(c)(7) is irrelevant because NextG chose to bring its claim under §

6    253.[14]   Again, NextG ignores the plain words of § 332(c)(7).   Section 332(c)(7) trumps all conflicting

7    provisions of the Communications Act – acting as an overriding safe harbor provision – and is

8    therefore extremely relevant to § 253.   For this very reason, the court in *Cox Communications v. City*

9    *of San Marcos*, 204 F. Supp. 2d 1260, 1267 (S.D. Cal. 2002), recognized that § 253 must be

10   interpreted in light of § 332(c)(7).   Applying this principle, the court determined that, because §

11   332(c)(7)(B) contemplates public hearings regarding placement of wireless facilities, construing §

12   253 to preempt public hearings would impermissibly "frustrate the purposes of [§] 332(c)(7)(B)."  *Id.*

13   at 1267-68.[15]   Likewise, as the City fully explained in its motion (pp. 18-21), the plain words and

14   legislative history of § 332(c)(7) show that Congress intended to allow local governments to make

15   case-by-case decisions regarding the placement of Wireless Facilities based on visual and aesthetic

16   concerns.   Just as one example, § 332(c)(7)(B)(iii) expressly contemplates local government

17   decisions to "deny a request to . . . construct . . . wireless service facilities." As a result, it would be

18   legal error for this Court to accept NextG's invitation to invalidate the Regulations because they

19   include the discretion to deny permits in protected locations.[16]

20        Citing *Verizon Wireless v. City of Rio Rancho*, 476 F. Supp. 2d 1235 (D.N.M. 2007), NextG

21   hints at an argument that § 332(c)(7) is inapplicable to facial challenges to local ordinances regulating

22        [14]   Because of a controlling Ninth Circuit opinion at the time the City filed its motion – which
23   the Ninth Circuit recently decided to rehear *en banc*, *Sprint Telephony PCS v. County of San Diego*,
     2008 U.S. App. LEXIS 10421 (9th Cir. 2008) – the City did not challenge NextG's right to bring its
24   claim under § 253.  However, the City reserves the right to argue in a subsequent motion that
     NextG's federal preemption claim should have been brought under § 332(c)(7), not § 253.

25        [15]   NextG surprisingly cites *City of San Marcos* for its position (NextG Opp., p. 21),
     notwithstanding the fact that the decision clearly supports the City's analysis.
26
          [16]   As noted in the City's motion, under § 332(c)(7) local governments may make case-by-
27   case decisions, but may not employ policies that have the effect of prohibiting wireless facilities.
     City Motion, p. 19 (citing § 332(c)(7)(B)(i)(II) and its legislative history).

28

wireless facilities and only applies to individual decisions. NextG Opp., pp. 21-22.[17] Such a

contention is without merit. It defies logic and common sense to recognize that state and local

governments have the protections of § 332(c)(7) when they make decisions on individual permit

requests, but to deny these same protections when the ordinance governing those individual decisions

is being challenged. In fact, the language of § 332(c)(7)(A) precludes such a result, because it refers

not only to "decisions," but to the "authority . . . over decisions." That authority is contained in

regulations that enable local governments to render decisions over wireless facilities siting.

Construing § 332(c)(7) to apply only to decisions, therefore, would impose conflicting legal standards

on the same behavior. Congress surely did not intend such a perverse and unworkable result.[18]

The core of NextG's facial challenge is that any regulations that include the discretion to deny

Wireless Permits based on aesthetic considerations are preempted under § 253. However, through

§ 332(c)(7), Congress expressly intended to allow case-by-case review (including denials) of

Wireless Permits in certain protected parts of San Francisco based on local land use concerns,

including aesthetics. Section 332(c)(7) is therefore fatal to NextG's main argument.

### E.    This Court Should Grant the City Summary Judgment on NextG's State Law Claim

This Court may decline supplemental jurisdiction over a state law claim if it concerns novel or

complex issues of state law. 28 U.S.C. § 1367(a). Despite that fact that the right granted to telephone

corporations in Public Utilities Code § 7901 has existed for over one hundred years, both state and

federal courts have been unable to resolve the central issue in this case: Whether California Public

Utilities Code § 7901 permits local governments to regulate the placement of telephone equipment in

public rights-of-way on aesthetic grounds. *See* City Motion, pp. 21-22. Indeed, as the Ninth Circuit

---

[17] The court in *Verizon Wireless* rejected the argument that § 332(c)(7) is the exclusive vehicle for challenging wireless facilities regulations. The City is not making that argument here. See n.14, *supra*. *Verizon Wireless* does not address the City's argument that § 253 must be interpreted to avoid a conflict with § 332(c)(7).

[18] *T-Mobile USA, Inc. v. City of Anacortes*, 2008 U.S. Dist. LEXIS 37481 (W.D. Wash. 2008), does not help NextG. That court relied explicitly on the Ninth Circuit panel's now vacated *Sprint* decision for its conclusion that § 332(c)(7) does not operate as a safe harbor from preemption. *Id.* at *21. Because it was following then-controlling precedent, the court in that case did not analyze the "nothing in this chapter" language (or any other provisions) of § 332(c)(7).

1  stated just last year: "The decisions of the Supreme Court of California and the California Courts of

2  Appeal provide no answer" to this question. *Sprint PCS Assets, L.L.C. v. City of Palos Verdes*, 487

3  F.3d 694, 696 (9th Cir. 2007). No published or citable court decision holds that local governments

4  cannot regulate aesthetics under § 7901. For this reason, this Court should decline to hear NextG's

5  state law claim.

6      If this Court is inclined to address this claim, the City showed in its motion that state law

7  preemption claims must undergo a detailed conflict analysis. The City further showed that this

8  analysis leads to the inescapable conclusion that § 7901 does not preempt the Regulations. *See* City

9  Motion, pp. 22-25. NextG completely ignores this analysis in its opposition, and instead focuses its

10  argument on Public Utilities Code § 7901.1. NextG claims that the City can only regulate the time,

11  place and manner in which NextG accesses the public rights-of-way. *See* NextG Opp., p. 24. No

12  court has ever construed the § 7901.1 as a limitation on authority reserved to local governments under

13  § 7901. Indeed, as the City showed in its, the Legislature enacted § 7901.1 to provide local

14  governments with additional regulatory authority over telephone corporations, not to limit their

15  authority under § 7901.

16  **V.    CONCLUSION**

17      For the reasons set forth above and in the City's motion, the Court should grant summary

18  judgment to defendants on NextG's facial challenge to the Regulations under § 253 and § 7901.

19  Dated: May 23, 2008

DENNIS J. HERRERA
City Attorney
THERESA L. MUELLER
Chief Energy and Telecommunications Deputy
WILLIAM K. SANDERS
THOMAS J. LONG
Deputy City Attorneys


By:_____/s/_____
THOMAS J. LONG

Attorneys for Defendants
THE CITY AND COUNTY OF SAN FRANCISCO and
THE DEPARTMENT OF PUBLIC WORKS OF THE
CITY AND COUNTY OF SAN FRANCISCO

REPLY MEMORANDUM                    15
Case No. CV-08-0985-MHP