LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

| | | |
|---|---|---|
| T. SCOTT THOMPSON<br>DIRECT (202) 973-4208<br>scottthompson@dwt.com | SUITE 200<br>1919 PENNSYLVANIA AVE NW<br>WASHINGTON, DC 20006 | TEL (202) 973-4200<br>FAX (202) 973-4499<br>www.dwt.com |

**VIA HAND DELIVERY AND E-FILING**

August 14, 2008

The Honorable Marilyn Hall Patel
U.S. District Court, Northern District of California
Federal Building
Courtroom 15
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *NextG Networks of California, Inc. v. City and County of San Francisco et al.*,
       No. CV-08-0985 MHP

Dear Judge Patel:

   Pursuant to the Joint Status Report submitted by NextG and the City in the above reference matter, NextG responds to the proposed judgment submitted by Defendants ("City") on August 8, 2008.

   As NextG indicated in its August 8, 2008 letter accompanying its proposed form of judgment, the City has badly misinterpreted the Court's June 23, 2008, Memorandum & Order Re: Cross Motions for Summary Judgment ("Memorandum & Order"). With its proposed judgment and its recent actions, the City has confirmed that it does not understand the Court's Memorandum & Order or is not willing to comply with Section 253 until it has first made NextG and the rest of the telecommunications industry suffer death by a thousand cuts (or by a thousand revised, but unchanged, ordinances).

*The City's Position Will And Has Led To An Indefinite Barrier To NextG's Ability To Provide Telecommunications Service*

   First, the City takes the position that only certain sentences in Sections 11.9(b)(2)(A) and 11.9(b)(2)(B) of its Administrative Code, setting forth the standards to be used by the Planning Department and Parks and Recreation Department, were preempted by the Court. The result according to the City is that the remaining Code requires the City to refer permit applications to the Planning Department or Parks Department, but because there are no standards, those applications would be placed on indefinite hold, pending the City's potential adoption of yet a

August 14, 2008
Page 2



new set of standards (addressed below). As a result of this interpretation, the City's Department of Public Works ("DPW") has referred to the Planning Department at least 4 permit applications submitted by NextG, and the DPW has informed NextG by letter dated August 12, 2008, that it will not process any permits that require referral to the Planning or Parks Departments unless and until the City adopts legislation amending Sections 11.9(b)(2)(A) and (B). In other words, the City has unilaterally begun enforcing its version of the Court's Memorandum & Order, even before the Court has had the opportunity to act on the proposed judgments. The result is that NextG cannot provide telecommunications services in those areas and cannot satisfy its customer obligations for an indefinite period of time. This prohibition on NextG's ability to provide service violates Section 253 and would be an illogical result of the Court's Memorandum & Order declaring that the City's challenged standards violate Section 253. As discussed below, it also violates fundamental tenets of the law of severability.

***The City's "Proposed Legislation" Demonstrates That The City Misunderstands Or Refuses To Comply With The Court's Memorandum & Order And Section 253***

Second, the City (and the Department) submit that the City has introduced legislation purporting to amend the City's Code to comply with the Memorandum & Order. However, the proposed legislation is not consistent with the Court's Memorandum & Order, and there is no certainty that it or any other new legislation will be adopted in September, 2008, as the City suggests, or ever.

In the Memorandum & Order, the Court held that the City's "standard" for review of applications by the Planning Department and Parks Department was preempted by Section 253 because the "aesthetic value" "is not articulated with specificity and detail and leaves too much room for discretion." (Memorandum & Order at 14). Yet, despite that clear holding by the Court, the City's "proposed legislation," which it supplied to NextG for the first time on the same day that the parties filed their joint status report, proposes "standards" that are wholly discretionary and fail to articulate any specificity or detail that would provide NextG or any other provider with reasonable predictability regarding how to comply or whether its proposed installations would be approved. For example, where the standard of Section 11.9(b)(2)(A) preempted by the Court provided that Planning could not approve an application unless it "*will not unreasonably affect, intrude upon or diminish any of the identified City resources,*" the City's proposed legislation changes would replace that open ended standard with one that requires Planning to determine whether the facility "*would not significantly degrade the aesthetic attributes*" of the specially designated building, street, or the like. (*E.g.* Proposed Ordinance at p. 8) (emphasis added). Likewise, for specially designated "views," the City's proposed new standard would be that be that the proposed facility "*would not significantly impair the views. . . .*" (*Id.*) (emphasis added). Other than changing the words ever so slightly, the City has changed nothing. The proposed standard fails to articulate any objective standard or detail and leaves the outcome to the Planning Department's unfettered discretion.

Yet, despite revealing its inability to learn from the Court's clear holding in the Memorandum & Order (or *NextG I*), the City proposes a form of judgment that would leave to

August 14, 2008
Page 3



the City to interpret the Court's Memorandum & Order. It is clear that it cannot be assumed that the City will enact legislation consistent with the Court's holdings, and, therefore, it is critical that the judgment entered be specific and direct.

Moreover, while the City asserts that new legislation could be adopted as early as late September 2008, in reality, there is no guarantee that the City will ever adopt new legislation much less that it will do so at the next Board of Supervisors meeting. (Or perhaps the City's confidence reflects that it has no intention of accepting any comments, input, or criticism by interested parties).

***The City's Proposed Judgment And Current Actions Violate Black Letter Law Regarding Severability***

Finally, as NextG noted initially, the City's proposed judgment and its interpretation of the Memorandum & Order fly in the face of the fundamental tenants of severability. As the Ninth Circuit has recognized

> [u]nder California law, the presence of a severability clause coupled with the ability functionally, mechanically, and grammatically to sever the invalid portion from the valid portions of an enactment ordinarily will allow severance ***but only if the remainder of the enactment is complete in itself and would have been adopted without the invalid portion***.

*Qwest Communications, Inc. v. City of Berkeley*, 433 F.3d 1253, 1259 (9th Cir. 2006) (emphasis added). Just as the Ninth Circuit held in *Berkeley*, severing the City's Code in the fashion proposed by the City would not be permissible because it leaves an incomplete scheme that would not have been adopted by itself and under which, as the City admits, the City is paralyzed with respect to processing permit applications requiring discretionary approvals of Parks and/or Planning.

According to the City's theory, the Court can and should sever the Code to leave a provision that requires the Department to refer certain applications to the Planning Department and the Parks Department, only to then have those applications languish unprocessed because the relevant departments lack any standards by which to process the applications. In other words, the City is suggesting that the City Board of Supervisors would have adopted an ordinance that contained a self-defeating dead end. That position is untenable. While it is true that the Court held that a referral to the Planning or Parks departments does not violate Section 253, *in the abstract*, this holding does not mean that the City can insist on referring applications to those departments if the departments cannot actually process the applications. (See attached letter confirming the suspended status of NextG's applications).

The only way for severability to work in this case is to sever Sections 11.9(b)(2)(A) and 11.9(b)(2)(B), in their entirety. With those sections severed, there is no referral to the Planning

August 14, 2008  
Page 4



or Parks departments and permit applications for facilities throughout the City are handled by the Department of Public Works only, subject to the standards of Section 11.9(b)(1) (pursuant to which companies, such as NextG, would have to obtain a Utilities Condition Permit from the City and then specific Wireless Permits from the Department). If the City contends that severing those sections in their entirety is not permissible, then the Court must hold that the entire Code is preempted and unenforceable. (Pursuant to such a holding, NextG would be able to install its facilities pursuant to the Utility Conditions Permit it was granted by the City after the Court's 2006 ruling against the City).

***Conclusion***

Accordingly, NextG requests that the Court clarify that the City's proposed legislation is not consistent with the Court's Memorandum & Order or Section 253, and that it enter judgment in the form submitted by NextG or in a form that makes clear that (1) the City Code cannot purport to require that certain applications be referred to the Planning Department or Parks Department only to have the applications indefinitely stayed because there are no standards for those departments to apply; and (2) the City cannot cure the defects in its Code by adopting slightly reworded "standards" that are wholly discretionary and fail to provide any clear, objective standards that entities can satisfy with reasonable predictability.

Finally, NextG requests that the Court retain continuing jurisdiction over this matter until the City adopts an amended ordinance that complies with the Court's holding and judgment regarding Section 253. *See, e.g., United States v. New York Telephone Co.*, 434 U.S. 159, 171-73 (1977) (The power of a federal court to protect and enforce its judgments is "unquestioned"); *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir 1971) (The equitable jurisdiction of a federal court "extends to supplemental or ancillary bills brought for the purpose of effectuating a decree of the same court"). The City has made multiple unsuccessful attempts to adopt standards and procedures for governing the deployment of telecommunications facilities. It would be inefficient for NextG, the City, and the Court to continue in the current pattern (*i.e.*, serial new legislation by the City, each requiring new complaints by NextG) without the Court's oversight and guidance.

Respectfully Submitted,

*[signature]*

T. Scott Thompson  
Martin L. Fineman

Counsel for NextG Networks of California, Inc.

cc: All Counsel on e-service list

Enclosure

**City and County of San Francisco**

Gavin Newsom, Mayor
Edward D. Reiskin, Director

(415) 554-5810
FAX (415) 554-5843
http://www.sfdpw.org

**Department of Public Works
Bureau of Street-Use and Mapping**
875 Stevenson Street, Room 460
San Francisco, CA 94103-0942

Barbara L. Moy, Bureau Manager

NextG Networks, Inc.
2216 O'Toole Avenue
San Jose, California 95131

Date: August 12, 2008

Dear Mr. Alford:

On July 7, 2008, the Department of Public Works ("Department") received Personal Wireless Permit Service Facilities Site Permit Application for Node #1 (4501 Douglass Street), Node #4 (646 Church Street), Node #10 (970 Elizabeth Street), and Node #17 (466 Collingwood Street). The Department then referred these applications to the Planning Department and/or the Recreation and Park Department as required by Administrative Code § 11.9(b).

This is to advise you that in an order dated June 23, 2008 in the matter entitled *NextG Networks of California, Inc. v. City and County of San Francisco* (Case No. C-08-00985-MHP), the court invalidated certain aspects of Administrative Code § 11.9(b), including the provisions that established the standards by which the Planning and Recreation and Park Departments were to review applications for Personal Wireless Service Facilities Site Permits.

The City and County of San Francisco is presently developing amendments to Administrative Code § 11.9(b) to comply with the court's order. Until the City adopts such amendments, the Department will not be processing any applications for Personal Wireless Service Facilities Site Permits that require review by the either the Planning or Recreation and Park Departments. Therefore, the Department will suspend any further review of the above-referenced applications until the new legislation is adopted. Once the law has been amended, if you so request, the Department will refer these applications to the Planning Department and/or Recreation and Park Department for review under the new standards.

If you have any questions about this letter, please contact Dan McKenna at 554-5520.

Very truly yours,

Rassendyll Dennis, P.E.
DPW-BSM